1
2
3
4
5
6
7

Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

8
9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| MITCHELL KATES, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FAT BRANDS INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN, <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>CLASS ACTION</u> <br><br> JURY TRIAL DEMANDED |

21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Mitchell Kates ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Fat Brands Inc. ("Fat Brands" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Fat Brands securities, including Fat Brands Class A common stock (ticker symbol: FAT), Fat Brands Class B common stock (ticker symbol: FATBB), Fat Brands 8.25% Series B Cumulative Preferred Stock (ticker symbol: FATBP), and Fat Brands Warrants (ticker symbol: FATBW) between March 24, 2022 and May 10, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

1

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Fat Brands securities during the Class Period and was economically damaged thereby.

7.      Defendant Fat Brands describes itself as "a leading multi-brand restaurant company that develops, markets, acquires and manages quick-service, fast casual, casual dining and polished casual dining restaurant concepts around the world[.]"

8.      Fat Brands is incorporated in Delaware and its principal executive offices are located at 9720 Wilshire Blvd., Suite 500, Beverly Hills, CA 90212. The Company's Class A common stock trades on the NASDAQ exchange under the ticker symbol "FAT." Fat Brands Class B common stock trades on the NASDAQ under the ticker symbol "FATBB." Fat Brands 8.25% Series B Cumulative Preferred Stock trades on the NASDAQ under the ticker symbol

2

"FATBP." Fat Brands warrants trade on the NASDAQ under the ticker symbol "FATBW."

9.      Defendant Andrew A. Wiederhorn ("Wiederhorn") founded the Company and served as the Company's CEO until May 5, 2023. After May 5, 2023, he continued serving as the Company's Chairman.

10.      Defendant Kenneth J. Kuick ("Kuick") served as the Company's Co-Chief Executive Officer ("CEO") and Chief Financial Officer from May 1, 2023 to the present and previously served as the Company's Chief Financial Officer.

11.      Defendant Robert G. Rosen ("Rosen") served as the Company's Co-CEO from May 1, 2023 to the present.

12.      Defendants Wiederhorn, Kuick and Rosen are collectively referred to herein as the "Individual Defendants."

13.      Each of the Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      was directly involved in the day-to-day operations of the Company at the highest levels;

(c)      was privy to confidential proprietary information concerning the Company and its business and operations;

(d)      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)      approved or ratified these statements in violation of the federal securities laws.

3

14.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Fat Brands under *respondeat superior* and agency principles.

16.     Defendant Fat Brands and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

17.     On March 23, 2022, after market hours, Fat Brands filed with the SEC its annual report on Form 10-K for the period ended December 26, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Wiederhorn and Kuick attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     The SOX certifications were false because Defendant Wiederhorn was not cooperating with a governmental investigation, concealing fraud whereby he used the Company's cash on his personal expenses, including on private jets, first class airfare, luxury vacations, rent and mortgage payments, shopping, and jewelry.

19.     The 2021 Annual Report contained the following statement:
The U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission informed the Company in December 2021 that they have opened investigations relating

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

to the Company and our Chief Executive Officer, Andrew Wiederhorn, and are formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between these entities and Mr. Wiederhorn, and compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family. ***The Company is cooperating with the government regarding these matters, and we believe that the Company is not currently a target of the U.S. Attorney's investigation***. At this early stage, the Company is not able to reasonably estimate the outcome or duration of the government investigations.

(Emphasis added).

20.     The statement in ¶ 19 was materially false and misleading because the Company did not meaningfully cooperate with the government, and because the statement understated the Company's litigation risk.

21.     On February 24, 2023, Fat Brands filed with the SEC its annual report on Form 10-K for the period ended December 25, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to SOX signed by Defendants Wiederhorn and Kuick attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

22.     The 2022 Annual Report contained the following statement:

In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had opened investigations relating to the Company and our Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities. ***Our Board of Directors has formed a Special Review Committee (the "SRC") comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations, reach findings and make a recommendation to the Board with respect to***

5

*these matters*. The SRC is authorized to review such documents and interview such persons, and retain legal counsel and other consultants on behalf of the Company, as the SRC deems necessary or appropriate to complete its review. ***The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC***. We believe that the Company is not currently a target of the U.S. Attorney's investigation. At this stage, we are not able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations.

(Emphasis added).

23.     The statement in ¶ 22 was materially false and misleading because the Company did not meaningfully cooperate with the government, and because the statement understated the Company's litigation risk. Further, the statement was materially false and misleading because it gave the impression that the Special Review Committee was empowered to meaningfully review the issues raised by the DOJ and SEC investigations.

24.     On April 3, 2023, the Company filed with the SEC a current report on Form 8-K, reporting for March 28, 2023. It stated the following:

On March 28, 2023, the holder of a majority of the voting power of the outstanding voting stock of FAT Brands Inc. (the "Company") ***took action to remove the following directors of the Company pursuant to Section 141(k) of the Delaware General Corporation Law and Section 5.04 of the Company's Certificate of Incorporation: Kenneth Anderson, Lynne Collier, Amy Forrestal, James Neuhauser and Edward Rensi***.

Following such action, the sole remaining director of the Company took action to increase the size of the Board of Directors (the "Board") and appointed the following individuals to fill vacancies on the Board: Donald Berchtold, Tyler Child, Kenneth Kepp, Carmen Vidal, ***Mason Wiederhorn, Taylor Wiederhorn and Thayer Wiederhorn***. In addition, on March 29, 2023, Lynne Collier was re-appointed as a director on the Board, and on April 1, 2023, Mark Elenowitz was appointed as a director on the Board. Edward Rensi was also re-appointed but subsequently decided not to re-join the Board.

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In connection with these actions, the size of the Board was increased to ten persons, and is currently comprised of Donald Berchtold, Tyler Child, Lynne Collier, Mark Elenowitz, Kenneth Kepp, Carmen Vidal, **Andrew Wiederhorn (Chairman), Mason Wiederhorn, Taylor Wiederhorn and Thayer Wiederhorn**. The members of the Audit Committee were re-appointed and consist of Lynne Collier, Mark Elenowitz and Kenneth Kepp, each of whom was determined to be independent under the applicable director independence standards of the Securities and Exchange Commission and The Nasdaq Stock Market.

In connection with these changes, the Company has elected "controlled company" status for purposes of the corporate governance rules of The Nasdaq Stock Market, which provide an exemption from the requirement to maintain a Board comprised of majority independent directors, and the Compensation Committee and Nominating and Corporate Governance Committee of the Board were dissolved.

The newly constituted Board also approved an amendment to the standard cash compensation for non-employee directors, changing such amount to $120,000 per year, from $80,000 per year plus $40,000 per year for service on Board committees. The non-employee directors will also continue to receive annual equity awards of stock options to acquire 30,636 shares of Class A common stock of the Company, with an exercise price set at fair market value at the time of grant and vesting over three years.

(Emphasis added).

25.    The statement in ¶ 24 was materially false and misleading because it omitted that Defendant Wiederhorn had removed the independent directors from the Company's Board because of their attempts to cooperate with government investigations into the Company and Defendant Wiederhorn's activities.

26.    On March 12, 2024, Fat Brands filed with the SEC its annual report on Form 10-K for the period ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Kuick and Rosen attesting to the accuracy of financial reporting, the disclosure of any material

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

changes to the Company's internal control over financial reporting and the disclosure of all fraud.

27.    The 2023 Annual Report contained the following statement on government investigations:

> In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had opened investigations relating to the Company and our former Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities prior to the merger. ***From August 23, 2022 until March 28, 2023, our Board of Directors maintained a Special Review Committee comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations***. ***The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC***. ***At this stage, we are not able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations***.
>
> On February 15, 2024, the Company, Andrew Wiederhorn and one current and one former officer of the Company each received a "Wells Notice" from the Staff of the SEC. The Wells Notice issued to the Company alleges violations of Securities Act Section 17(a)(2), and Exchange Act Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), 13(k), and 14(a) and Rules 10b-5(b), 12b-20, 13a-1, 13a-13, 14a-3, and 14a-9 thereunder, relating solely to conduct occurring during or prior to fiscal year 2020. A Wells Notice is neither a formal charge of wrongdoing nor a determination that the recipient has violated any law. ***The Company is continuing its efforts to cooperate with the SEC and maintains that its actions were appropriate, and intends to pursue the Wells Notice process, including submitting a formal response to the SEC***.

(Emphasis added).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

28. The statement in ¶ 27 was materially false and misleading because it understated the Company's liability, given the extent of Wiederhorn and the Company's criminal activity. Further, it was false because it omitted that after March 28, 2023, Wiederhorn removed every member of Fat Brands' board of directors other than himself, and reconstituted the Bard to have a majority of non-independent directors under his control. This action was taken after members of the Board communicated with the government regarding a criminal investigation into Wiederhorn and the Company's financial dealings.

29. On May 10, 2024, after market hours Fat Brands filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2024 (the "1Q24 Report"). Attached to the 1Q24 Report were certifications pursuant to SOX signed by Defendants Kuick and Rosen attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30. The 1Q24 Report contained the following statement on government investigations:

> In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had opened investigations relating to the Company and our former Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities prior to the merger. ***From August 23, 2022 until March 28, 2023, our Board of Directors maintained a Special Review Committee comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations. The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC. At this stage, we are not***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations*.

On February 15, 2024, the Company, Andrew Wiederhorn and one current and one former officer of the Company each received a "Wells Notice" from the Staff of the SEC. The Wells Notice issued to the Company alleges violations of Securities Act Section 17(a)(2), and Exchange Act Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), 13(k), and 14(a) and Rules 10b-5(b), 12b-20, 13a-1, 13a-13, 14a-3, and 14a-9 thereunder, relating solely to conduct occurring during or prior to fiscal year 2020. A Wells Notice is neither a formal charge of wrongdoing nor a determination that the recipient has violated any law. *The Company is continuing its efforts to cooperate with the SEC and maintains that its actions were appropriate, and is pursuing the Wells Notice process, including submitting a formal response to the SEC*.

(Emphasis added).

31.     The statement in ¶ 30 was materially false and misleading because it understated the Company's liability, given the extent of Wiederhorn and the Company's criminal activity. Further, it was false because it omitted that after March 28, 2023, Wiederhorn removed every member of Fat Brands' board of directors (the "Board") other than himself, and reconstituted the Bard to have a majority of non-independent directors under his control. This action was taken after members of the Board communicated with the government regarding a criminal investigation into Wiederhorn and the Company's financial dealings.

32.     The statements contained in ¶¶ 17, 19, 22, 24, 27, and 30 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants failed to disclose that Andrew A. Wiederhorn, the Company's Chairman and former CEO, had received improper payments from the Company, exposing Fat Brands to criminal liability

10

and; (2) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

## **THE TRUTH EMERGES**

33. On May 10, 2024, the United States Attorney's Office for the Central District of California issued a press release entitled "Former CEO and Controlling Shareholder of Fat Brands Inc., Former CFO, and a Tax Advisor Indicted in Alleged Scheme to Conceal $47 million Paid to CEO in the Form of Shareholder Loans." (the "Announcement").

34. The Announcement specified that the indicted parties were Fat Brands itself, Andrew Wiederhorn (the former CEO and current controlling Fat Brands shareholder), Rebecca Hershinger (the former Fat Brands CFO), and William J. Amon (a one-time managing director of Andersen's Los Angeles office, who provided tax-advisory services to Wiederhorn, Fat Brands, and Fog Cutter Capital Corporation, a former Fat Brands affiliate).

35. The Announcement further stated that "Andrew A. Wiederhorn, the former CEO and current controlling shareholder of [Fat Brands], has been indicted on federal charges alleging a scheme to conceal $47 million in distributions he received in the form of shareholder loans from the IRS, FAT's minority shareholders, and the broader investing public[.]"

36. It further stated that "Wiederhorn-assisted by FAT's [CFO] and his outside accountant at advisory firm Andersen – concealed millions of dollars in reportable compensation and taxable income and evaded the payment of millions of dollars in taxes, ***while causing FAT itself to violate the Sarbanes-Oxley Act's prohibition on direct and indirect extensions of credit to public-company CEOs in the form of a personal loan***." (Emphasis added).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

37.     The Announcement quoted United States Attorney Martin Estrada as stating the following:

> This defendant [. . .] is alleged to have engaged in a long-running scheme to defraud investors and the United States Treasury to the tune of millions of dollars[.] Instead of looking out for shareholders, the defendant allegedly treated the company as his personal slush fund, in violation of federal law.

38.     The Announcement quoted Krysti Hawkins, the Acting Assistant Director in Charge of the FBI's Los Angeles Field Office as stating that "[t]he indictment alleges that with the assistance of his co-defendants, Mr. Wiederhorn repeatedly evaded his taxes and the law as he engaged in a cover-up to avoid being accountable to shareholders[.]

39.     The Announcement stated that "[b]eginning no later than 2010 and continuing through early 2021, Wiederhorn allegedly caused employees [of Fat Brands] and [Fog Cutter Capital Corporation, or "FOG", a former Fat Brands affiliate] to compensate him by distributing to him approximately $47 million for his personal use and benefit." Further, "Wiederhorn, Amon, Hershinger and others miscategorized these distributions as 'shareholder loans' and failed to disclose as reportable compensation to the IRS, SEC and the broader investing public, the indictment alleges."

40.     The Announcement stated that "[n]either FAT nor FOG required Wiederhorn to post collateral, make interest payments or observe any of the other commercial requirements and realities of true loans."

41.     Attached to the Announcement was the indictment against Andrew Wiederhorn, William J. Amon, Rebecca D. Hershinger, and Fat Brands (the "Indictment").

42.     The Indictment stated, in pertinent part, the following:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

After defendant [Fat Brands] became an issuer of securities through its IPO, defendant [Wiederhorn] caused millions of dollars from defendant [Fat Brand's] accounts to be disbursed to defendant [Wiederhorn] and his family members for their personal benefit. ***These disbursements were used to fund the purchase of private-jet travel, vacations, a Rolls Royce Phantom, other luxury automobiles, jewelry, and a piano***. Defendant [Wiederhorn] caused employees of defendant [Fat Brands] to account for the disbursements directly from defendant [Fat Brands] to his accounts as: (i) an increase in an intercompany loan between defendant [Fat Brands] and FOG; and (ii) an increase in FOG's shareholder loan "balance" or "receivable" to defendant [Wiederhorn]."

(Emphasis added).

43.     The Indictment further stated the following:

On or around December 1, 2021, defendants [Wiederhorn] and [Fat Brands] learned that defendant Wiederhorn was the target of a federal criminal investigation into defendant [Wiederhorn's] and defendant [Fat Brands'] financial dealings. On or around February 22, 2022, defendant [Fat Brands] publicly claimed that it was "cooperating with the government regarding these matters." ***After members of defendant [Fat Brand's] Board communicated with the government regarding that federal criminal investigation, however, defendant [Wiederhorn] removed every director other than himself on or around March 28, 2023, and reconstituted defendant [Fat Brand's] Board with a majority of non-independent directors under his control***.

(Emphasis added).

44.     On the same day, the SEC filed a civil lawsuit against the Company, Defendant Wiederhorn, Ron Roe, and Rebecca Hershinger in the United States District Court for the Central District of California (the "SEC Complaint").

45.     The SEC Complaint stated the following:

***Between October 2017 and March 2021*** (the "Relevant Period"), [Wiederhorn] [. . .] used almost $27 million of FAT's cash on his personal expenses included private jets, first class airfare, luxury vacations, his rent and mortgage payments, shopping, and jewelry. During this time,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Wiederhorn falsely told the Company's auditors, board of directors, and investors that neither he nor his family members had any direct or indirect material interest in the FAT cash that Wiederhorn used for those personal expenditures.

(Emphasis added).

46.     On this news, the price of Fat Brands Class A common stock fell by $2.08 per share, or 27.73%, to close at $5.42 on May 10, 2024.  Fat Brands Class B common stock fell by $2.02 per share, or 28.85%, to close at $4.98 on May 10, 2024. Fat Brands 8.25% Series B Cumulative Preferred Stock fell by $1.08 per share, or 7.24% to close at $13.82 on May 10, 2024. Fat Brands warrants fell by $1.05 per warrant, or 21.6%, to close at $3.80 on May 10, 2024.

47.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate

14

discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

50.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

15

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

54. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

55.     Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

17

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

61. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

62. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

63. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class

relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

64.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

65.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

66.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

### <u>COUNT II</u>

### <u>Violations of Section 20(a) of the Exchange Act</u>

### <u>Against the Individual Defendants</u>

67.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

69.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

70.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

71.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 7, 2024                  **THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS