SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
12275 El Camino Real, Suite 100
San Diego, California 92130
Telephone:  858.720.8900
Facsimile:  858.509.3691
E mail:      jstigi@sheppardmullin.com

POLLY TOWILL, Cal. Bar No. 120420
MADALYN A. MACARR, Cal. Bar No. 301539
TORI KUTZNER, Cal. Bar No. 334057
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:  213.620.1780
Facsimile:  213.620.1398
E mail:      ptowill@sheppardmullin.com
              mmacarr@sheppardmullin.com
              tkutzner@sheppardmullin.com

Attorneys for Defendants FAT BRANDS, INC.,
ANDREW A. WIEDERHORN, KENNETH J.
KUICK and ROBERT G. ROSEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL KATES, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>FAT BRANDS, INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN,<br><br>        Defendants. | Case No. 2:24-cv-04775-MWF-MAA<br><br>The Hon. Michael W. Fitzgerald<br><br>CLASS ACTION<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>[*Request for Judicial Notice and Declaration of Madalyn Macarr filed concurrently herewith; [Proposed] Order submitted concurrently herewith*]<br><br>Hearing Date:  September 15, 2025<br>Time:              10:00 a.m.<br>Department:    5A<br>Trial Date:      None Set |

## **NOTICE OF MOTION AND MOTION**

TO LEAD PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 15, 2025, at 10:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 5A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, in the courtroom of the Honorable Michael W. Fitzgerald presiding, defendants FAT Brands, Inc., Andrew A. Wiederhorn, Kenneth J. Kuick and Robert G. Rosen will and hereby do move the Court pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, *et seq.*, for an order dismissing plaintiff Mitchell Kates's Amended Class Action Complaint for Violation of the Federal Securities Laws.

This motion is brought on the grounds that plaintiff fails to: (1) meet the PSLRA and Rule 9(b) heightened requirements for pleading a claim for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities & Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, due to plaintiff's failure to (a) specify actionable misstatements, (b) allege sufficient facts demonstrating the reasons defendants' statements were false or the alleged omissions misleading at the time they were made and (c) allege particularized facts giving rise to a strong inference that defendants made the allegedly false or misleading statements with scienter. Plaintiff's claim for violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), falls with plaintiff's Section 10(b) claim.

This motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on May 22, 2025. (Declaration of Madalyn Macarr ¶2.) Counsel for defendants met and conferred telephonically with plaintiff's counsel regarding the deficiencies in the Complaint and explained the reasons why the Complaint's claims are subject to dismissal. (*See id.*) Plaintiff declined to amend or dismiss any portion of his Complaint. (*Id.*)

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, defendants' Request for Judicial Notice and the Declaration of Madalyn Macarr filed in support thereof, as well as the pleadings and papers on file in this action, any other matters of which this Court may or must take judicial notice and such other oral and/or documentary evidence or argument as may be presented to the Court at or before the time of the hearing.

Dated: June 6, 2025                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                              By: _____
                                              */s/ John P. Stigi III*
                                          JOHN P. STIGI III
                                          POLLY TOWILL
                              Attorneys for Defendants FAT BRANDS, INC.,
                              ANDREW A. WIEDERHORN, KENNETH J.
                              KUICK and ROBERT G. ROSEN

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................................ 1

II.  RELEVANT ALLEGATIONS AND BACKGROUND ............................... 2

    A.  FAT Brands, Its Management and Ownership ...................................... 2

    B.  The *Harris* Derivative Action ............................................................. 2

    C.  The Alleged Wrongdoing at the Core of the Complaint........................ 3

    D.  The Allegedly False and/or Misleading Statements and Omissions ...... 3

    E.  The Alleged Corrective Disclosures .................................................... 5

III.  LEGAL STANDARDS ............................................................................... 6

    A.  Motions to Dismiss ............................................................................ 6

    B.  Elements of Plaintiff's Claims ............................................................ 6

    C.  Heightened Pleading Standards in Securities Actions .......................... 7

IV.  ARGUMENT ............................................................................................. 8

    A.  The Complaint's Opinion and Forward-Looking Statement Allegations Are Non-Actionable ......................................................... 8

    B.  The Complaint Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made ......... 10

        1.  No Undisclosed Intercompany Loan to FCCG Rendered Any Statement False or Misleading............................................. 10

        2.  The Company's Risk Disclosures Were Not Misleading........... 13

        3.  No Facts Show FAT Brands Became a Target of the U.S. Attorney's Investigation Before May 2024 ................................ 13

    C.  The Alleged Item 404 and GAAP Disclosure Violations Do Not State a Section 10(b) Claim ............................................................... 14

    D.  The Alleged Failure to Disclose Contingent Losses Under GAAP Fails ................................................................................................... 15

    E.  The Complaint Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter ............................................................... 16

        1.  No Alleged Facts Give Rise to a Strong Inference That Kuick Knew About the Unauthorized Intercompany

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Loans, Much Less That Loan Proceeds Went To
Wiederhorn ......................................................................... 16

    2.    No Alleged Facts Give Rise to a Strong Inference That
Any Defendant Knew That the Company Was a Target of
U.S. Attorney's Investigation ........................................ 18

F.    The Complaint Fails to State a Controlling Person Liability
Claim for Violation of Section 20(a) ..................................... 21

V.    CONCLUSION ......................................................................... 21

SMRH:4920-5855-1863.6        DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## TABLE OF AUTHORITIES

Page(s)

Cases

*Abadilla v. Precigen, Inc.*
   2022 U.S. Dist. LEXIS 96808 (N.D. Cal. May 31, 2022) ................................21

*In re Apple Sec. Litig.*
   886 F.2d 1109 (9th Cir. 1989) ................................................................... 10

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ...................................................................................6

*In re AXIS Capital Holdings Ltd. Sec. Litig.*
   456 F. Supp. 2d 576 (S.D.N.Y. 2006) ......................................................... 10

*Barron v. Reich*
   13 F.3d 1370 (9th Cir.1994) .........................................................................6

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ...................................................................................6

*Branch v. Tunnell*
   14 F.3d 449 (9th Cir. 1994) .........................................................................6

*Brody v. Transitional Hosps. Corp.*
   280 F.3d 997 (9th Cir. 2002) .................................................................. 6, 9

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*
   637 F.3d 1047 (9th Cir. 2011) .....................................................................7

*Carr v. Zosano Pharma Corp.*
   2021 U.S. Dist. LEXIS 166197 (N.D. Cal. Sept. 1, 2021) ............................ 12

*In re Connetics Corp. Sec. Litig.*
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ........................................................ 11

*Ernst & Ernst v. Hochfelder*
   425 U.S. 185 (1976) ...................................................................................7

*ESG Capital Partners, LP v. Stratos*
   2013 WL 12131355 (C.D. Cal. June 26, 2013) ............................................ 20

SMRH:4920-5855-1863.6

*In re Fusion-io, Inc. v. Sec. Litig.*
   2015 U.S. Dist. LEXIS 18304 (N.D. Cal. Feb. 12, 2015)...................................15

*Gamm v. Sanderson Farms, Inc.*
   944 F.3d 455 (2d Cir. 2019) .................................................................................10

*Geinko v. Padda*
   2002 WL 276236 (N.D. Ill. Feb. 27, 2002)..........................................................11

*Glazer Cap. Mgmt., LP v. Magistri*
   549 F.3d 736 (9th Cir. 2008) ...........................................................................8, 17

*In re Hansen Natural Corp. Sec. Litig.*
   527 F. Supp. 2d 1142 (C.D. Cal. 2007).................................................................12

*Harris v. Junger*
   No. 2021-0511-SG (Del. Ch.) (2022)............................................................*passim*

*Knox v. Yingli Green Energy Holding Co.*
   242 F. Supp. 3d 950 (C.D. Cal. 2017)...................................................................6

*Levi v. Atossa Genetics, Inc.*
   868 F.3d 784 (9th Cir. 2017) .................................................................................15

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*
   601 U.S. 257 (2024) ......................................................................................14, 15

*Mendoza v. HF Foods Grp., Inc.*
   2021 U.S. Dist. LEXIS 1690982 (C.D. Cal. Aug. 25, 2021) ...............................13

*Menkes v. Stolt-Nielsen S.A.*
   2005 U.S. Dist. LEXIS 28208 (D. Conn. Nov. 10, 2005)....................................15

*Nathanson v. Polycom, Inc.*
   87 F. Supp. 3d 966 (N.D. Cal. 2015)..............................................................17, 18

*Nguyen v. Endologix, Inc.*
   962 F.3d 405 (9th Cir. 2020) .................................................................................21

*In re NVIDIA Corp. Sec. Litig.*
   768 F.3d 1046 (9th Cir. 2014) ...........................................................................7, 21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318 (2015) ................................................................................9

SMRH:4920-5855-1863.6

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*
    774 F.3d 598 (9th Cir. 2014) ......................................................................... 16

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*
    759 F.3d 1051 (9th Cir. 2014) .......................................................................... 8

*Prodanova v. H.C. Wainwright & Co., LLC*
    993 F.3d 1097 (9th Cir. 2021) ................................................................... 8, 19

*Purple Mt. Trust v. Wells Fargo & Co.*
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) .......................................................... 21

*In re Rigel Pharm., Inc. Sec. Litig.*
    697 F.3d 869 (9th Cir. 2012) ............................................................................ 7

*In re Sanofi Securities Litigation*
    155 F. Supp. 3d 386 (S.D.N.Y. 2016) ............................................................ 11

*South Ferry LP, No. 2 v. Killinger*
    542 F.3d 776 (9th Cir. 2008) .......................................................................... 20

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*
    552 U.S. 148 (2008) .......................................................................................... 6

*In re Sun Microsystems, Inc. Sec. Litig.*
    1990 U.S. Dist. LEXIS 18740 (N.D. Cal. Aug. 20, 1990) ............................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007) ..................................................................................... 7, 8

*In re UBS Ag Sec. Litig.*
    2012 U.S. Dist. LEXIS 141449 (S.D.N.Y. Sept. 28, 2012) ............................. 11

*In re VeriFone Sec. Litig.*
    11 F.3d 865 (9th Cir. 1993) .............................................................................. 6

*Webb v. SolarCity Corp.*
    884 F.3d 844 (9th Cir. 2018) .......................................................................... 20

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981 (9th Cir. 2009) ...................................................................... 8, 17

<u>Statutes</u>

15 U.S.C. § 78t(a) ...................................................................................... 7, 21

15 U.S.C. § 78u-4(b)(1) ................................................................... 7

15 U.S.C. § 78u-4(b)(2) ................................................................ 7, 8

15 U.S.C. § 78u-4(b)(2)(A) ............................................................. 7

15 U.S.C. § 78u-4, *et seq.* ............................................................. 1

15 U.S.C. § 78u-5(c)(1)(A)-(B) ...................................................... 9

PSLRA ............................................................................... *passim*

Securities Exchange Act of 1934 § 10(b) ......................... *passim*

Securities Exchange Act of 1934 § 20(a) ......................... 1, 7, 21

Other Authorities

17 C.F.R. § 229.404 .......................................................... 5, 14, 15

Fed. R. Civ. P. 9(b) ...................................................... 1, 7, 10, 12

Fed. R. Civ. P. 12(b)(6) ................................................................. 1

Rule 10b-5 ........................................................................... *passim*

SMRH:4920-5855-1863.6
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants FAT Brands, Inc. ("FAT Brands" or the "Company"), Andrew Wiederhorn ("Wiederhorn"), Kenneth Kuick ("Kuick") and Robert Rosen ("Rosen") respectfully submit this memorandum in support of their motion to dismiss lead plaintiff's Amended Class Action Complaint (the "Complaint") for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*

## I.    INTRODUCTION

Plaintiff brings this putative securities class action on behalf of a class of purchasers of FAT Brands securities between March 23, 2022 and May 10, 2024, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The gravamen of the Complaint is that defendants failed to disclose certain purportedly unauthorized intercompany loans between FAT Brands and its former parent entity allegedly orchestrated by FAT Brands' former CEO, Wiederhorn, to serve his own financial interests. According to the Complaint, these transactions—and the Company's lack of disclosures concerning them—misled investors and artificially inflated FAT Brands' stock price.

Plaintiff's complaint relies principally upon allegations and theories advanced years ago in a separate shareholder derivative action, as well as in the subsequent indictment of FAT Brands and Wiederhorn by the U.S. Attorney's Office and parallel civil enforcement action by the Securities and Exchange Commission ("SEC") in May 2024. Based solely upon those sources, plaintiff asserts that defendants made materially false or misleading statements regarding the existence and approval of intercompany loans, the status of ongoing governmental investigations and the Company's cooperation with regulatory authorities.

Plaintiffs' claims are deficient for multiple reasons. The Complaint fails to plead falsity or scienter with the particularity required by the PSLRA and Rule 9(b), relies almost exclusively upon conclusory and hearsay allegations that merely echo other proceedings and fails to identify an actionable misrepresentation or omission.

For these reasons, as well as the additional reasons detailed herein, the Complaint fails to state a claim upon which relief can be granted, and should be dismissed in its entirety.

## II.     RELEVANT ALLEGATIONS AND BACKGROUND

### A.     FAT Brands, Its Management and Ownership

FAT Brands is a restaurant franchisor that generates revenues by charging its franchisees an initial franchise fee and ongoing royalty fees.  (Complaint ¶¶2, 25.)  Wiederhorn served as FAT Brands' CEO beginning in 2006.  (*Id.* ¶36.)

Before FAT Brands' 2017 initial public offering ("IPO"), Fog Cutter Capital Group Inc. ("FCCG"), a privately held company controlled by Wiederhorn, owned 100 percent of FAT Brands' common stock and voting power.  (*Id.* ¶¶29, 36, 42.)  Following the IPO, FCCG retained 80 percent of FAT Brands' common stock and voting power.  (*Id.* ¶¶43, 77.)  FCCG merged with FAT Brands in December 2020 (the "Merger").  (*Id.* ¶¶36, 42, 63.)

### B.     The *Harris* Derivative Action

On June 15, 2021, two FAT Brands shareholders filed a shareholder derivative action against Wiederhorn and other FAT Brands directors in the Delaware Court of Chancery, entitled *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.) ("*Harris*").  (Complaint ¶52.)  In *Harris*, plaintiffs alleged that Wiederhorn caused FCCG to issue to himself personal loans "over the course of the past several years" (the "Shareholder Loans"), then caused FAT Brands to issue FCCG intercompany loans to cover the Shareholder Loans (the "Intercompany Loans").  (RJN, Ex. A (*Harris* Complaint), ¶5.)  Wiederhorn then allegedly caused FCCG to forgive his Shareholder Loans without any repayment, and then caused the merger of FAT Brands and FCCG to eliminate the Intercompany Loans.  (Complaint ¶¶56, 57 (citing RJN, Ex. A, ¶15).)  Plaintiffs in *Harris* allege that in early 2020, the companies entered into an Intercompany Revolving Credit Agreement ("IRCA") which, to reflect the already then outstanding indebtedness, carried an initial balance of $21,067,000 (measured as of December 29,

2019).  This balance receivable from FCCG had, by March 29, 2020, increased to $26,854,000 and, by September 27, 2020, to more than $38 million.  (RJN, Ex. A, ¶¶7, 50.)  According to plaintiffs in *Harris*, and as parroted by plaintiff here, "[t]here **never** was a business justification for these loans."  (Complaint ¶59; RJN, Ex. A, ¶8 (emphasis in original).)

## C.    The Alleged Wrongdoing at the Core of the Complaint

The Complaint here—like the *Harris* Complaint upon which it draws—alleges that Wiederhorn "looted" FAT Brands by causing "FCCG to loan him tens of millions of dollars, and then caus[ing] FAT Brands to loan the money to FCCG to cover those debts," and "then caus[ing] the merger of FAT Brands and FCCG to dissolve the intercompany loans" without repayment from FCCG.  (Complaint ¶¶54, 61, 67; *see also id.* ¶72 ("Effective with the Merger with FCCG, the Intercompany Agreement was terminated and intercompany balances were eliminated in consolidation").)

Plaintiff nonetheless focuses the Complaint on a small subset of the overall alleged "looting" allegations, namely approximately $9.6 million in alleged Intercompany Loans made in 2020 which, contrary to certain terms in the IRCA, allegedly were not approved by FAT Brands' Board of Directors in advance.  (*Id.* ¶99.)  From there, the Complaint alleges that "Wiederhorn's misuse of corporate funds, securities fraud, and tax evasion" resulted in investigations by the Department of Justice ("DOJ") and the SEC (*id.* ¶4), which investigations ultimately resulted in the U.S. Attorney's Office indicting FAT Brands and Wiederhorn, and the SEC filing a complaint against FAT Brands and Wiederhorn in May 2024 (the "Indictment" and the "SEC Complaint," respectively).  (Complaint ¶¶8, 100, 104.)

## D.    The Allegedly False and/or Misleading Statements and Omissions

Plaintiff first challenges the Company's statement that, other than the transactions disclosed in specific notes to the Company's audited consolidated financial statements in its annual report for the fiscal year ended December 26, 2021 filed on March 23, 2022 (the "2021 Annual Report"):

> [S]ince December 29, 2019, there has not been, nor is there currently proposed, any transaction or series of similar transactions to which we were or will be a party: in which the amount involved exceeds $120,000; and in which any director, executive officer, shareholder who benefi-cially owns 5% or more of our common stock or any member of their immediate family had or will have a direct or indirect material interest.

(Complaint ¶72.)  Plaintiff contends this statement was false or misleading because FAT Brands did not disclose the approximately $9.6 million in alleged Intercompany Loans FAT Brands made to FCCG in 2020 that supposedly lacked prior Board approval.  (*Id.* ¶73.)

Plaintiff next contends that a disclosed "Risk Factor" in the Company's Form 424B5 Prospectus Supplement filed on November 14, 2022, was misleading for the same reason.  Specifically, the Company disclosed that FAT Brands was "controlled by [FCCG]" and warned that FCCG's interests "may differ from those of our public stockholders."  (Complaint ¶77.)  Plaintiff nevertheless attacks this "Risk Factor" as misleading because it did not tell investors that Wiederhorn had already been using FCCG to "loot[] the Company."  (*Id.* ¶78.)

With respect to governmental investigations, the Company allegedly disclosed, in various periodic reports, that the U.S. Attorney's Office and the SEC informed it in December 2021 that they had opened investigations relating to the Company and Wiederhorn concerning, among other things, the companies' Merger and transactions between these entities and Wiederhorn.  (*Id.* ¶¶74, 80, 87, 90, 93, 96.)  The Company further disclosed that it "intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from [them]."  (*Id.*)[1]  Finally, the Company advised investors that "[w]e believe that the Company is not currently a target of the U.S. Attorney's investigation."  (*Id.*)[2]

---

[1] The iteration of this statement in the 2021 Annual Report stated that "[t]he Company is cooperating with the government regarding these matters."  (Complaint ¶74.)

[2] This statement was repeated in the Company's 2021 Annual Report, annual report for the fiscal year ended December 25, 2022 filed on February 24, 2023, and quar-terly reports for the fiscal quarters ended March 6, 2023, June 25, 2023 and Septem-

Plaintiff contends these disclosures were false or misleading because, assuming defendants were indeed cooperating with the government's requests, they "should have known, or were reckless in not knowing, that FAT Brands was a target of the investigation for its role in funneling money from investors to [Wiederhorn]." (*Id.* ¶¶75, 81, 88, 91, 94.)  Plaintiff contends that the Company misled investors by "assur[ing] investors that the Company was not the target of the investigation" and by "stating that the Company was not a target of the investigation," when in fact it was. (*Id.*)  In the alternative, plaintiff alleges that defendants misled investors by stating that the Company was cooperating with the governmental investigation, when "in truth they were not cooperating." (*Id.*)

As a separate theory of omissions-based liability, plaintiff alleges that, by failing to disclose the Intercompany Loans as "material related party transactions," defendants violated their duty to disclose under Item 404(a) of Regulation S-K, 17 C.F.R. § 229.404 ("Item 404"), and U.S. Generally Accepted Accounting Principles ("GAAP").  (Complaint ¶108.)

Lastly, plaintiff alleges that defendants also violated GAAP by failing to disclose "contingent losses" relating to and arising out of the U.S. Attorney's and SEC's investigations.  (*Id.* ¶127.)

**E.     The Alleged Corrective Disclosures**

Plaintiff alleges that defendants partially "revealed the truth" starting on March 12, 2024, when the Company filed its annual report for the fiscal year ended December 31, 2023 and excluded the language included in its prior SEC filings that "[w]e believe that the Company is not currently a target of the U.S. Attorney's investigation." (*Id.* ¶¶96, 97.)  Plaintiff construes this as an admission that the Company had previously been a target of that investigation. (*Id.* ¶97.)  According to plain-

---

ber 24, 2023 filed on May 9, 2023, August 4, 2023, and October 31, 2023, respectively.  (Complaint ¶¶80, 87, 90, 93, 96.)

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

tiff, the truth became "fully exposed" on May 10, 2024, when the U.S. Attorney's Office announced the indictment of FAT Brands and Wiederhorn (*id.* ¶100) and the SEC announced that it had filed the SEC Complaint against FAT Brands and Wiederhorn. (*Id.* ¶104.)

## III. LEGAL STANDARDS

### A. Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept the factual allegations in the pleadings as true, the court need not accept as true conclusory allegations of law and unwarranted inferences. *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). The court also may consider additional facts in materials of which it may take judicial notice (*Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994)), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

### B. Elements of Plaintiff's Claims

To state a Section 10(b) claim, a plaintiff must allege (1) a material misrepresentation or omission by the defendant (*i.e.*, falsity); (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). A statement or omission is actionable only if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also Knox v. Yingli Green Energy Holding Co.*, 242 F. Supp. 3d 950, 963 (C.D. Cal. 2017) (statements amounting to "fraud by hindsight" are not actionable).

Section 20(a) creates liability for "controlling persons." 15 U.S.C. § 78t(a). "To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citation omitted).

## C.   Heightened Pleading Standards in Securities Actions

Section 10(b) claims must meet the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the PSLRA. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); 15 U.S.C. § 78u-4(b)(2)(A). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" the fraud, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).

The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). It enhances Rule 9(b)'s particularity requirement by "providing that a securities fraud complaint identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The statute also requires, as to each allegedly misleading statement or omission, that plaintiff "state with particularity" as to each defendant "facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.*, scienter. 15 U.S.C. § 78u-4(b)(2).

"Scienter" refers to a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). A defendant acts with scienter only if he makes false or misleading statements either intentionally

or with deliberate recklessness.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

A plaintiff must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added).  "To qualify as 'strong' within the intendment of . . . the PSLRA . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  Thus, to meet the PSLRA's high burden for pleading scienter, a complaint cannot rely on "mere motive and opportunity or recklessness, but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent."  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).  Allegations the defendants "should have known" of the violations are insufficient.  *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008).  Instead, plaintiffs must allege facts "linking specific reports and their contents to the executives."  *See Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014).

## IV.   ARGUMENT

## A.   The Complaint's Opinion and Forward-Looking Statement Allegations Are Non-Actionable

Plaintiff challenges as false or misleading the Company's statement that "*we believe* that the Company is not *currently* a target of the U.S. Attorney's investigation." (Complaint ¶¶74, 80, 87, 90, 93) (emphasis added).)  Contrary to plaintiff's re-characterization of this statement, it did not "assure[] investors that the Company was not the target of the investigation," nor did it "stat[e] that the Company was not a target of the investigation." (*Id.* ¶¶85, 81, 88, 91, 94, 99.)  It also did not suggest, much less assure, that the Company would never become a target of the U.S. Attorney's investigation.

"We believe" is a classic and unmistakable opinion statement. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326 (2015). Such statement is actionable only if the speaker did not truly hold the opinion or when it misleadingly convey facts regarding how the speaker formed the opinion or the basis for the opinion. *Id.* at 1322 (explaining that an opinion statement cannot be misleading absent identification of "particular (and material facts) going to the basis for the issuer's opinion . . . whose omission made the opinion statement at issue misleading.") Plaintiff does not allege any facts—let alone particularized facts—suggesting the absence of a factual basis for the opinion statement. Accordingly, plaintiff fails to plead the falsity of the "we believe" statement sufficient to meet the pleading standard of the PSLRA.

The "we believe" statement also did not suggest a state of affairs inconsistent with the one that actually existed. *Brody*, 280 F.3d at 1006. Plaintiff alleges no facts showing that, at any time this statement was made, FAT Brands actually was a target of the U.S. Attorney's investigation. In fact, no alleged facts reveal the point at which FAT Brands became a target. (*See* RJN Ex. B (Indictment), ¶6 (alleging that in December 2021, Wiederhorn and FAT Brands "learned that defendant WIEDERHORN was *the* target of a federal criminal investigation") (emphasis added).)[3]

Plaintiff also challenges as false and misleading the statement that the "Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters." (Complaint ¶¶80, 87, 90, 93.) That statement of future intent is a clearly designated forward-looking statement. Plaintiff alleges no facts showing that, when the Company made the statement, it did not genuinely intend to cooperate. Hence, the Complaint fails to plead the requisite "actual knowledge of the statement's falsity." 15 U.S.C. § 78u-5(c)(1)(A)-(B). Although plaintiff states in conclusory

---

[3] The Complaint also alleges no subsequent corrective disclosure relating to this allegedly misleading opinion statement. (*See* Complaint ¶97 (attempting to suggest that the non-inclusion of the challenged opinion statement in a later periodic report constituted an "admission" and corrective disclosure).)

terms—as an alternative factual theory—that the Company was not in fact cooperating, no particularized allegations show a lack of cooperation or an intent to cooperate in the future. In fact, plaintiff's "should have known"-it-was-a-target scienter theory hinges upon defendants' having learned the information through the Company's cooperation with the U.S. Attorney's Office in responding to document requests. (Complaint, ¶¶81, 88, 91, 94.)[4]

**B.     The Complaint Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made**

**1.     No Undisclosed Intercompany Loan to FCCG Rendered Any Statement False or Misleading**

The thrust of plaintiff's allegations is that the Company failed to disclose approximately $9.6 million in purportedly unapproved Intercompany Loans in 2020. (Complaint ¶73), and that this failure rendered the Company's statements about its related party transactions false and misleading.[5]

First, the Complaint fails to allege with the requisite particularity that the allegedly omitted "looting" or other illegal conduct actually occurred. This itself is fatal to plaintiff's claims. "[W]hen a complaint claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the PSLRA." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019); *see also In re AXIS Capital Holdings Ltd. Sec.*

---

[4]  Plaintiff's allegation that defendants did not actually cooperate or intend to cooperate with the government is contradicted by his own admission that the Company formed and maintained a Special Review Committee, comprised of directors other than Wiederhorn, to oversee a review of the issues raised by the U.S. Attorney and SEC investigations. (Complaint, ¶¶80, 87.)

[5]  When a single claim is based upon multiple alleged disclosure violations, a statement-by-statement analysis is appropriate, as it promotes efficiency by narrowing the scope of discovery and isolating issues that are susceptible to resolution by later motion practice. *See, e.g.*, *In re Apple Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989); *In re Sun Microsystems, Inc. Sec. Litig.*, 1990 U.S. Dist. LEXIS 18740 (N.D. Cal. Aug. 20, 1990).

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

*Litig.*, 456 F. Supp. 2d 576 (S.D.N.Y. 2006) (dismissing Section 10(b) claims dependent upon predicate allegation that company participated in anticompetitive scheme where complaint did not allege sufficient facts to show company actually engaged in the alleged scheme).  Here, however, to allege falsity, the Complaint relies *exclusively* upon unproven allegations lifted nearly *verbatim* from the *Harris* Complaint, the Indictment and the SEC Complaint.  Significantly, plaintiff does not allege he has any independent information to support his allegations apart from the recycled allegations from other complaints.  (Complaint at 2.)

This falls far short of meeting the PSLRA's standards.  *See In re Sanofi Securities Litigation*, 155 F. Supp. 3d 386, 398-400 (S.D.N.Y. 2016) (plaintiffs failed to plausibly allege illegal conduct underlying section 10(b) claim because "'upon information and . . . belief' allegation from a different lawsuit incorporated into the CAC does not suffice under the PSLRA.")  Courts need not consider uncorroborated allegations parroted from a complaint in another action for which plaintiffs' counsel has not conducted an independent investigation.  *In re UBS Ag Sec. Litig.*, 2012 U.S. Dist. LEXIS 141449, at *53 n.17 (S.D.N.Y. Sept. 28, 2012); *see also In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) ("plaintiffs cite no authority that . . . an attorney may rely *entirely* on another complaint as the *sole* basis for his or her allegations" and striking allegations parroted from SEC complaint where plaintiff did "not contend that they conducted independent investigation into the facts alleged in the SEC complaint or had any additional bases for the specific allegations") (emphasis in original); *Geinko v. Padda*, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002) ("hearsay allegations that Plaintiffs offer in their Amended Complaint are improper, and therefore superfluous, and they will not be considered").  Because the Complaint relies exclusively upon these second-hand allegations to plead the allegedly omitted facts, plaintiff's claims, to the extent based on these allegedly omitted facts, necessarily fail.

Notably, the Complaint lacks *any* allegations attributable to confidential witnesses (CWs) or former employees (FEs) of FAT Brands. This is a "red-flag" that undermines the sufficiency of the Complaint under the PSLRA. *See Carr v. Zosano Pharma Corp.*, 2021 U.S. Dist. LEXIS 166197, at *31-32 (N.D. Cal. Sept. 1, 2021) (dismissing Rule 10b-5 claim for failing to plead scienter where plaintiffs "fail to include any allegations against Defendants from confidential witnesses or former Zosano employees," and "[a]s a result, their complaint lacks notable features that tend to be 'hallmarks of a potentially viable securities claim'"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (dismissing Rule 10b-5 claim where the plaintiff's allegations were "all based on publicly-filed documents —and not, as is the case in many securities fraud cases, on the statements of confidential witnesses and/or employees and former employees").

Even if considered, none of the *Harris* Action, Indictment and SEC Complaint-sourced allegations sufficiently demonstrate the falsity of the Company's related party transaction statements. This is because the Complaint fails to identify with the particularity required under the PSLRA and Rule 9(b) that any related party transaction actually took place that should have been but was not disclosed. Indeed, the Company's long history of related-party transactions with FCCG was thoroughly disclosed to the investing public. For example, Note 3 (expressly incorporated by referenced into the 2021 Annual Report) disclosed that:

> FCCG historically made loan advances to Andrew A. Wiederhorn, its CEO and significant stockholder (the "Stockholder Loan"). Prior to the Merger, the Stockholder Loan was cancelled, and the balance recorded as a loss by FCCG on forgiveness of loan to stockholder.

(RJN, Ex. D, Note 3.) Note 12 (also incorporated by reference) disclosed that, in connection with the Merger, certain debts of FCCG totaling $12.5 million were assumed by Fog Cutter Acquisition LLC, a wholly-owned subsidiary of the Company. (*Id.*, Note 12.)

-12-

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff complains that the Company violated the IRCA by failing to obtain prior board approval for all of the Intercompany Loans made in 2020, and failed to disclose its non-compliance with the IRCA's board-approval provisions. (Complaint ¶99.)  But these corporate governance provisions plainly constituted and operated as an internal FAT Brands corporate governance policy only. (*See id.* ¶72.)  "[W]hether a company violated its own internal policy is a matter of internal management and 'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'"  *Mendoza v. HF Foods Grp., Inc.*, 2021 U.S. Dist. LEXIS 1690982, at *20-22 (C.D. Cal. Aug. 25, 2021) (citation omitted).

### 2.    The Company's Risk Disclosures Were Not Misleading

Plaintiff contends the Company's disclosure of the risk that FCCG's interests "may differ from those of our public stockholders" given that FAT Brands was "controlled by [FCCG]" was misleading because it did not warn investors that Wiederhorn had already been "looting the Company" through the Intercompany Loans.  (Complaint ¶78.)  For the same reasons discussed above (Section IV.C.1), the Section 10(b) claim fails to the extent premised upon this omissions-based statement.

### 3.    No Facts Show FAT Brands Became a Target of the U.S. Attorney's Investigation Before May 2024

Even assuming that the Company's statements that it "believed" it was not "currently" a target of the U.S. Attorney's investigation is actionable, the allegation still fails to state a claim because the Complaint contains no facts showing when FAT Brands actually became a target of that investigations.  In other words, no alleged facts show that the Company's stated belief was actually false at the time the statements were made, or that defendants knew at any time during the Class Period of any existing facts that should have been disclosed to make the statements not misleading.

Moreover, the Complaint's theory with respect to these statements is *not* that any defendant actually knew, but that they should have known or were reckless in not knowing, that the Company was a target of the government's investigations.  (Com-

-13-

plaint ¶¶75, 81, 88, 91.)  But neither the Complaint, the *Harris* Complaint, the Indictment nor the SEC Complaint shed *any* light on when the Company, as distinct from Wiederhorn, became an investigation target.  Thus, the Company's stated belief that it was not "currently" a target of the investigation was neither false nor misleading.

**C.    The Alleged Item 404 and GAAP Disclosure Violations Do Not State a Section 10(b) Claim**

Recognizing that his omission theory does not show a disclosure that was necessary to make any of their challenged statements not misleading, plaintiff turns to Item 404 and GAAP as the sources of independent duties to disclose approximately $9.6 million in Intercompany Loans made in 2020 as well as alleged "round-tripping" of Company funds as "related party transactions" in the Company's SEC filings during the Class Period.  (*Id.* ¶107.)  The Complaint asserts that the Company's 2021 Annual Report was misleading simply because the Company "did not[] disclose" these transactions.  (*Id*. ¶¶113, 126.)  Plaintiff's "pure omissions" theory fails under recent Supreme Court precedent.

In *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024), the Supreme Court resolved a circuit split and confirmed that a duty to disclose arising independent of Rule 10b-5 is insufficient by itself to render silence misleading under Rule 10b-5.  Instead, to state a claim, "the Rule requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to make those statements 'not misleading.'"  *Id*. at 264.  Thus, in *Macquarie*, "the failure to disclose information required by Item 303 [of Regulation S-K] can support a Rule 10b-5(b) claim only if the omission renders affirmative statements made misleading."  *Id*. at 265.  "Pure omissions," however, "are not actionable under Rule 10b-5(b)."  *Id*. at 260.  *Macquarie*'s holding is based on Rule 10b-5's "[l]ogic[] and plain text" and so applies whether the alleged source of the disclosure duty is Item 303 or, as is the case here, Item 404 or SEC regulations imposing GAAP-related disclosure obligations.  *Id*. at 264.

Plaintiff fails to point to any "affirmative statements made misleading" by the Company's alleged failure to disclose "related party transactions" under Item 404 and GAAP. *See id*. at 265; *see also Levi v. Atossa Genetics, Inc.*, 868 F.3d 784, 800 (9th Cir. 2017). This "pure omissions" theory cannot form the basis of a Rule 10b-5 claim. *See Macquarie*, 601 U.S. at 264; *see also In re Fusion-io, Inc. v. Sec. Litig.*, 2015 U.S. Dist. LEXIS 18304, at *54-55 (N.D. Cal. Feb. 12, 2015) ("[E]ven if Defendants had a duty [to disclose] under [Regulation S-K] . . . , their failure to do so cannot form a basis for Plaintiffs' § 10(b) claim.").[6] Plaintiff thus fails to state a Section 10(b) claim to the extent he relies on a "duty to disclose" arising out of Item 404 or GAAP.

## D.    The Alleged Failure to Disclose Contingent Losses Under GAAP Fails

Lastly, plaintiff alleges that defendants violated a duty to disclose "contingent losses" relating to and arising out of the U.S. Attorney's and SEC's investigations, as allegedly required by GAAP. (Complaint ¶127.) However, plaintiff's theory runs into the same issue as its other GAAP-based theory, which is that he fails to specifically identify any "affirmative statements made misleading" by the Company's alleged non-disclosure of contingent losses, instead relying on a "pure omissions" theory that cannot support a Rule 10b-5 claim. (*See* Section IV.D, *supra*.) And even if plaintiff had pointed to an affirmative statement, he again fails to allege sufficient facts to show that "FAT Brands was required to disclose a loss contingency associated with the SEC and DOJ investigations at the beginning of the Class Period" under GAAP. (Complaint ¶127.) His assertion that defendants could "reasonably estimate" the amount of any loss resulting from the Intercompany Loans "as soon as the DOJ

---

[6] Plaintiff further fails to explain how either Item 404 or GAAP could possibly extend to this sort of unilateral and "illicit" looting behavior. (*See* Complaint ¶4 (alleging Wiederhorn "misused" corporate funds); *id*. ¶¶78, 141-42 (alleging transfers were "unauthorized" by the Company)); *see also Menkes v. Stolt-Nielsen S.A.*, 2005 U.S. Dist. LEXIS 28208, at *28-29 (D. Conn. Nov. 10, 2005) ("To construe the disclosure requirements [in Regulation S-K] to compel disclosure of Stoelt's alleged criminal actions in this case would eviscerate the well-established principle that Rule 10b-5 generally does not 'require management to accuse itself of antisocial or illegal policies.'") (citation omitted).

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

and SEC had manifested an awareness of a possible claim against FAT Brands as part of its investigation" is not supported by any facts in the Complaint. (*Id*. ¶145.) In fact, nowhere does the Complaint provide any indication as to when the Company, as opposed to Wiederhorn, became an investigation target, let alone when any defendant became aware of that development. Plaintiff thus fails to allege that a loss arising from the investigations and the Intercompany Loans was "reasonably possible." *See* ASC 450-20-55-13 ("The filing of a suit . . . does not automatically indicate that accrual of a loss may be appropriate. The degree of probability of an unfavorable outcome must be assessed."). Absent such facts, and paired with clear disclosures about the investigations related to Wiederhorn, plaintiff has failed to show that defendants were required to disclose a loss contingency under GAAP.

**E.    The Complaint Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter**

In order to meet the PSLRA's exacting standards, a plaintiff must "allege scienter with respect to *each* of the individual defendants." *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) (emphasis added).

**1.    No Alleged Facts Give Rise to a Strong Inference That Kuick Knew About the Unauthorized Intercompany Loans, Much Less That Loan Proceeds Went To Wiederhorn**

With respect to the Company's alleged failure to disclose the unauthorized Intercompany Loans, plaintiff fails to plead *any* facts—much less particularized facts—giving rise to a strong inference that Kuick or Rosen acted with scienter. With respect to the alleged falsity of the challenged related-party-transaction statement, the Complaint alleges only that, "as the mastermind orchestrating the illicit self-dealing payments, Defendant Wiederhorn knew the truth behind the undisclosed illicit payments, including the Company's role in the transactions. As the CEO, his scienter is imputed to the Company." (Complaint ¶73.) There are *no* allegations (let alone

particularized factual allegations) even purporting to show Kuick's scienter with respect to this statement.[7]

If anything, the Complaint's allegations, and the allegations in the Indictment and SEC Complaint upon which it relies, all but foreclose the possibility of inferring that Kuick acted with scienter. The press release announcing the U.S. Attorney's Indictment alleges that Wiederhorn "mispresented and concealed the true nature of the payments from defendant FAT's Board, its independent auditors, its minority shareholders, the [SEC], and the broader investing public." (Complaint ¶101.) The Indictment and SEC Complaint both similarly allege that the Company's Board was kept in the dark with respect to the Intercompany Loans, emphasizing that they were *not* approved by the Board (with the exception of just $2.05 million in approved loans in 2020). (RJN Ex. B, ¶1 (alleging that Wiederhorn attempted to conceal the true nature of the payments from defendant FAT's Board of Directors"); *id.* ¶¶5, 100-102 (alleging that Intercompany Loans were issued to FCCG in the second through fourth quarters of 2020 without the requisite Board approval); RJN Ex. C, ¶¶5, 54, 55, 65 (alleging that Wiederhorn "misled FAT's board of directors" and auditors).)

The court's analysis of the CFO's scienter in *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966 (N.D. Cal. 2015), is instructive. There, as here, the plaintiffs' allegations of scienter against the CFOs were primarily based on: (1) certifications signed by the CFOs on the company's financial statements, which added "nothing substantial to the scienter calculus"; and (2) the fact that the CFOs had to sign off on all company expense reports." *Id.* at 980-81.[8] The court agreed with the CFOs that "the strongest

---

[7] Rosen, who allegedly served as the Company's Co-CEO from May 1, 2023 to the present (Complaint ¶19), is not alleged to have any liability with respect to the Company's alleged failure to disclose related party transactions in the 2021 Annual Report or 2022 Prospectus. (*Id.* ¶¶71, 76.)

[8] "Sarbanes-Oxley certifications [by the individual defendants] are not sufficient, without more, to raise a strong inference of scienter." *Glazer*, 549 F.3d at 747-48. The standard language required in such certifications "add[s] nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1003-04.

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

inference is not that they were complicit in [the CEO's] misconduct or misleading shareholders, but rather that they too were duped by [the CEO]." *Id*. Similarly, here, plaintiff's recitation of *Harris*'s allegation that "there was never a business justification for these loans" (Complaint ¶59), if anything, further suggests that Kuick, who joined the Company *after* the Intercompany Loans were already dissolved in the December 2020 Merger, did not have any knowledge of, much less involvement in, the alleged scheme. Thus, based upon the allegations in the Complaint (and the Indictment and SEC Complaint upon which it relies), the stronger and far more plausible competing inference is that Kuick too was kept in the dark.

### 2.    No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation

Again, the Complaint does not allege *any* facts showing when the Company purportedly became a target of the U.S. Attorney's investigation, and so plaintiff cannot establish that the Company's statement that it did not believe it was currently the target of that investigation was false or misleading. Similarly, the Complaint does not contain *any* facts purporting to show the point at which—if ever—any defendant actually learned (or even should have learned) that the Company had become a target. This is fatal to plaintiff's ability to establish any defendant's scienter.

Instead, the Complaint relies entirely on a "should have known or were reckless in not knowing" theory to establish defendants' scienter with respect to the existence of government investigations. (*Id.* ¶¶75, 81, 87, 91, 94.) Specifically, plaintiff theorizes generally that "*If* the Company was indeed responding to the government's requests . . . Defendants should have known, or were reckless in not knowing, that FAT Brands was a target of the investigation for its role in funneling money from investors to [Wiederhorn]." (*Id.* ¶¶ 75, 81, 88, 91, 94 (emphasis added).) But the Ninth Circuit is clear that "[d]eliberate recklessness is not 'mere recklessness.' Instead, it is 'an *extreme* departure from the standards of ordinary care . . . which

-18-

presents a danger of misleading buyers or sellers that is either known to the defendant of so *obvious* that the actor must have been aware of it." *Prodanova*, 993 F.3d at 1106 (citation omitted) (emphasis added).

The Complaint does not include any allegations identifying (1) what documents or materials relating to the transactions the government requested; (2) what documents defendants provided in response; or (3) what those documents supposedly showed. Plaintiff implicitly concedes that he does not have any such necessary facts by alleging in the alternative that defendants in truth were *not* cooperating with the government's investigation. (Complaint ¶¶81, 88, 91, 94.)  Without such alleged facts, the Complaint raises no inference that the danger of misleading buyers or sellers was so obvious that defendants *must* have been aware of it.

The Complaint is even more barren as to Kuick's or Rosen's scienter regarding the Company's alleged status as a target of government investigations.  Their alleged scienter is based on *the Company's* purported "role in funneling money" to FCCG and ultimately Wiederhorn.  (*Id*.)  The Complaint, however, contains no facts showing the Company itself had any active or knowing "role in funneling money" to FCCG and ultimately to Wiederhorn.  Instead, the Complaint (and the Indictment and SEC Complaint) emphasize that the Intercompany Loans were *not* approved by the Board, that the Board was *misled* with respect to the purpose of any approved loans, and thus, that FAT Brands was the direct victim of Wiederhorn's allegedly "illicit" scheme.  And, critically, no allegations show that the information in the requested documents or materials could have illuminated Kuick or Rosen (much less did illuminate them) regarding the Company's alleged and non-descript "role in funneling money from investors to Defendant Wiederhorn" that purportedly occurred before they joined the Company.  (*Id*.; *see also id*. ¶¶18, 19.)[9]  As there are no facts

---

[9] Plaintiff's speculation that, "[i]f Defendants Kuick and Rosen had" conducted interviews and reviewed the Company's records, "they would have discovered the illicit payments from FAT Brands to FCCG and Defendant Wiederhorn" (Complaint ¶88)

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

showing that Kuick or Rosen actually knew or even suspected that the Company had any such role, there can be no inference that they acted with scienter. The Complaint also does not allege when—if at all—during the Class Period Kuick or Rosen should have known of or discovered Wiederhorn's supposed scheme.

Where a complaint "does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short" of the PSLRA standard. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware. *Id.*; *see also ESG Capital Partners, LP v. Stratos*, 2013 WL 12131355, at *5 (C.D. Cal. June 26, 2013) (conclusory allegations of knowledge are insufficient). With no allegations regarding Kuick's or Rosen's actual exposure to information rendering their alleged statements and omissions false or misleading, the claim fails.

Nor is there any allegation that either stood to benefit in any way from Wiederhorn's alleged scheme, much less from deceiving investors. The Complaint does not contain *any* allegations that Kuick or Rosen personally or financially benefited from the alleged inflation in the Company's stock price or otherwise bought or sold stock during the alleged class period. The Ninth Circuit has recognized that "a lack of stock sales can detract from a scienter finding." *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

As a whole, the Complaint's allegations do not come close to supporting a *strong* (*i.e.*, cogent and compelling) inference that Kuick or Rosen knowingly or recklessly intended to mislead investors by failing to disclose a scheme which they may not even have known about.

---

lacks specificity and strains credulity. Based upon plaintiff's other allegations, the alleged scheme at the heart of the Complaint, the Indictment and the SEC Complaint is that Wiederhorn's scheme spanned over a decade, the Board was intentionally kept in the dark and it even took the DOJ and SEC three years of investigating before filing their Indictment and Complaint.

**F.**     **The Complaint Fails to State a Controlling Person Liability Claim for Violation of Section 20(a)**

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), creates liability for "controlling persons." 15 U.S.C. § 78t(a). "To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator." *NVIDIA*, 768 F.3d at 1052 (citation omitted). As demonstrated above, plaintiff fails to state a primary violation of Section 10(b) and Rule 10b-5. Accordingly, plaintiff also fails to state a secondary controlling person liability claim under Section 20(a). *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020).

Further, with respect to plaintiff's claim against Kuick and Rosen, the Complaint contains nothing but barebones and generic allegations of control. (Complaint ¶ 21). These allegations are insufficient to show actual control over the Company. *Purple Mt. Trust v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020); *see also Abadilla v. Precigen, Inc.*, 2022 U.S. Dist. LEXIS 96808, at *33 (N.D. Cal. May 31, 2022).

## V.     CONCLUSION

The Court should grant the motion to dismiss the Complaint.

Dated: June 6, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____*/s/ John P. Stigi III*_____
                    JOHN P. STIGI III
                    POLLY TOWILL
                    Attorneys for Defendants

1

## <u>CERTIFICATION OF WORD COUNT</u>

2   The undersigned, counsel of record for FAT Brands, Inc., Andrew

3 Wiederhorn, Kenneth Kuick and Robert Rosen, certifies that this brief contains

4 6,960 words, which complies with the word limit of Local Rule 11-6.1.

5

6 Dated: June 6, 2025   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7

8      By: _____*/s/ John P. Stigi III*_____

9         JOHN P. STIGI III
         POLLY TOWILL

10        Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-