Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL KATES, Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FAT BRANDS INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN,<br><br>Defendants. | Case No. 2:24-cv-04775-MWF-MAA<br><br>Hon. Michael W. Fitzgerald<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing Date: September 15, 2025<br>Time: 10:00 a.m.<br>Department: 5A<br>Trial Date: None Set |

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................1

II.   STATEMENT OF FACTS....................................................................................2

III.  ARGUMENT ......................................................................................................3

  A.   Standard of Review.......................................................................................3

  B.   Opposition to Request for Judicial Notice ..................................................4

  C.   The Complaint Pleads Material Falsity........................................................5

    1.   Defendants' Statement That They Fully Disclosed Material Related Party Transactions Was False .........................................................................5

    2.   Lack of Confidential Witnesses Does Not Undermine Falsity.........................9

    3.   Defendants' Opinion Statements Are Not Protected.....................................10

    4.   Risk Disclosure Was Misleading..................................................................11

  D.   Item 404 and GAAP Disclosure Violations Support a 10(b) Claim................12

  E.   Defendants Failed to Disclose Contingent Losses.....................................13

  F.   The Complaint Alleges a Strong Inference of Scienter...............................13

    1.   A Holistic Analysis Supports an Inference of Scienter.................................14

  G.   The Complaint Adequately Pleads A Section 20(a) Claim .............................19

IV.  CONCLUSION..................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012)...............................................................6

*Carr v. Zosano Pharma Corp.*,
2021 WL 3913509, (N.D. Cal. Sept. 1, 2021)......................................................9

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020)................................................................17

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019) ................................................................................6

*Geinko v. Padda*,
2002 WL 276236 (N.D. Ill. Feb. 27, 2002).........................................................8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)..............................................................................19

*Green v. Maison Solutions Inc.*,
2025 WL 1009121 fn.6.......................................................................................13

*Henning v. Orient Paper, Inc.*,
2011 WL 2909322 (C.D. Cal. July 20, 2011) ....................................................18

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
456 F. Supp. 2d 576 (S.D.N.Y. 2006).................................................................6

*In re Bear Stearns Mortgage Pass-Through Certificates Litig.*,
851 F.Supp.2d 746 (S.D.N.Y. 2012).................................................................8, 9

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015).................................................................15

*In re Connetics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008)..............................................................7, 8

ii

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F.Supp.2d 458 (S.D.N.Y. 2012) ..................................................................8

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..............................................................9

*In re Juniper Networks, Inc. Sec. Litig.*,
  542 F. Supp. 2d 1037 (N.D. Cal. 2008) ............................................................19

*In re MannKind Sec. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011) ..............................................................11

*In re Medicis Pharm. Corp. Sec. Litig.*,
  No. CV-08-1821-PHX-GMS, 2010 WL 3154863 (D. Ariz. Aug. 9, 2010) .................18

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..........................................................................14

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ..........................................................6, 13

*In re Sanofi Securities Litigation*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016) ................................................................7

*In re UBS Ag Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ....................................................7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) .......................................................................14, 16

*Karinski v. Stamps.com, Inc.*,
  2020 WL 281716 (C.D. Cal. Jan. 17, 2020) .....................................................17

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..........................................................................4, 5

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024) .........................................................................................12

iii

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ...................................................................................17

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    164 F.Supp.3d 568 (S.D.N.Y. 2016) .................................................11, 15

*N.M. State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) ..................................................................18

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ..............................................................4, 17

*Nordell Int'l Res., Inc. v. Triton Indonesia, Inc.*,
    139 F.3d 906 (9th Cir. 1998) .....................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015).............................................................................10

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ...................................................................19

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...................................................................14

*S.E.C. v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) .......................................................8

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ...................................................................13

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009) .................................................................11

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012).......................................................6

*Tellabs, Inc. v. Makor Issues & Rts, Ltd.*,
    551 U.S. 308 (2007) .......................................................................... passim

iv

*United States v. Reyes*,
 660 F.3d 454 (9th Cir. 2011) ...................................................................................17

*Van Leeuwen v. Keyuan Petrochemicals, Inc.*,
 et al., 2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014) .....................................................8

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ...................................................................................5

**Statutes**

15 U.S.C. 78u-4(b)(1) .........................................................................................4, 5

15 U.S.C. § 78t(a) ...................................................................................................19

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................4, 8

Fed. R. Evid. 201(b)..................................................................................................4

**Regulations**

17 C.F.R. § 210.4-01(a)(1)................................................................................12, 13

17 C.F.R. § 229.404 .................................................................................................18

v

Lead Plaintiff Mitchell Kates ("Plaintiff") opposes Defendants'[1] Motion to Dismiss the Amended Complaint for Violation of the Federal Securities Laws ("Motion to Dismiss") and states the following:

## I.    INTRODUCTION

This case revolves around Defendants' failure to disclose material related party transactions pursuant to Generally Accepted Accounting Principles ("GAAP") and SEC rules. Defendant Wiederhorn used FAT Brands Inc. ("FAT Brands") and Fog Cutter Capital Group Inc. ("FCCG") to enrich himself without informing investors. Relevant to this case is the approximately $9.6 million in undisclosed payments in 2020 FAT Brands made to FCCG and, ultimately, Wiederhorn. In its annual report for fiscal year 2021 ("2021 10-K"), filed March 23, 2022, FAT Brands revealed that, aside from loans pursuant to a certain Intercompany Promissory Note, there were no other material related party transactions to report as of December 29, 2019. In other words, Defendants hid the $9.6 million related party transaction from investors by failing to disclose it in the 2021 10-K and throughout the Class Period[2].

Additionally, Defendants misrepresented to investors that they were "cooperating" with the government investigations, when in fact Wiederhorn took steps to actively obfuscate investigations. Furthermore, Defendants falsely reassured investors that FAT Brands was not a target of the government investigations, when documents and materials produced to the government would have alerted Defendants that FAT Brands was a target as well.

The Complaint properly alleges falsity and scienter. For falsity, the Complaint

---

[1]  Defendants are FAT Brands Inc. ("FAT Brands"), Andrew A. Wiederhorn ("Wiederhorn"), Kenneth J. Kuick ("Kuick"), and Robert G. Rosen ("Rosen"). Plaintiff cites to the Motion to Dismiss (Dkt. No. 29) as "MTD at __." Plaintiff cites to the Amended Complaint ("Complaint") (Dkt. No. 28) as "¶__." Unless otherwise noted, emphasis is added and internal quotations and citations are omitted.

[2] The Class Period is from March 23, 2022 to May 10, 2024, both dates inclusive.

1

alleges Defendants violated GAAP and SEC rules by failing to disclose the material related party transactions, issuing false and/or misleading risk disclosures, alleging that the Company stated it was cooperating with the investigation when it was obfuscating the investigation, and falsely assuring investors that the Company was not a target of the government investigations. The Complaint demonstrates a strong inference of scienter by alleging that Defendant Wiederhorn had knowledge because he perpetrated the material related party payments and hid it from investors, Defendants Kuick and Rosen were aware of the truth as they were responsible, in part, for responding to and producing documents to the government, Defendants attempted to cover-up the fraud, and the nature of Defendants' GAAP and SEC rules violations was simple.

Ultimately, the truth was revealed when the SEC filed a complaint against, *inter alia*, Defendants FAT Brands and Wiederhorn and the DOJ indicted Defendants FAT Brands and Wiederhorn.

## II.     STATEMENT OF FACTS

FAT Brands is a public company that purports to generate revenues by acting as a restaurant brand franchisor, collecting franchise fees and ongoing royalty fees from its franchisees, who actually own and operate the restaurants. In the eyes of its former CEO, however, FAT Brands has served as a personal piggy bank for him and his family. ¶2.

In 2020, Wiederhorn caused FAT Brands to disburse approximately $9.6 million – or approximately 53% of FAT Brands' revenue for that year – to FCCG and, eventually, into Wiederhorn's own pockets. ¶¶5, 103, 105. Despite this fact, Defendants falsely stated in the 2021 10-K that there were no undisclosed material related party transactions as of December 29, 2019. ¶¶72-73.

Additionally, Defendants falsely assured investors that the Company was "cooperating with the government" in its investigation and requests for "documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., [and] transactions between these entities and Mr.

2

Wiederhorn[.]" ¶¶74, 80, 87, 90, 93, 96. On February 24, 2023, the FAT Brands board announced the creation a Special Review Committee ("SRC") comprised of directors other than Defendant Wiederhorn to oversee a review of the issues raised by the government investigations. ¶80. However, the SRC would last less than a year and provide no meaningful findings. On May 9, 2023, in a 10-Q filing, the Company announced that the SRC – maintained from August 23, 2022 to March 28, 2023 – was disbanded. ¶87.

Defendants continued to downplay the Company's exposure to litigation liability, repeatedly stating that they "believe that the Company is not currently a target of the U.S. Attorney's investigation." ¶¶74, 80, 87, 90, 93. The Company's Risk Factors statement was also misleading. The Risk Factors painted the conflict of interest between FAT Brands and FCCG as a hypothetical, when in fact the conflict of interest had already materialized via Defendant Wiederhorn's self-dealing payments. ¶¶77-78. The Company also violated GAAP by, *inter alia*, failing to disclose contingent liability associated with the government investigation. ¶¶127-55.

On May 10, 2024, the U.S. Attorney's Office for the Central District of California issued a press release announcing the indictment of, *inter alia*, Defendants FAT Brands and Wiederhorn (the "Indictment"). ¶100. The Indictment charged, *inter alia*, Wiederhorn of improperly disbursing funds from FAT Brands to FCCG and himself to the tune of over $6 million between the second and fourth quarters of 2020. ¶103. That same day, the SEC announced that it had filed charges against, in relevant part, Defendants FAT Brands and Wiederhorn for defrauding investors (the "SEC Complaint"). ¶104. The SEC Complaint charged FAT Brands and Wiederhorn with funneling approximately $9.6 million from FAT Brands to FCCG and, ultimately, Defendant Wiederhorn. This amount represented approximately 53% of FAT Brands' revenue for that year. ¶105.

## III.    ARGUMENT

### A.    Standard of Review

Dismissal pursuant to Rule 12(b)(6) "is appropriate only where the complaint lacks

3

a cognizable theory or sufficient facts to support a cognizable theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Courts accept as true all factual allegations and draw all reasonable inferences in plaintiff's favor. *Tellabs, Inc. v. Makor Issues & Rts, Ltd.*, 551 U.S. 308, 322-23 (2007). Exchange Act claims are subject to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure, which require a plaintiff to specify each misleading statement, the reasons why the statement is misleading, and, if an allegation "is made on information and belief . . . state with particularity all facts on which [the] belief is formed." 15 U.S.C. 78u-4(b)(1). Courts should not "raise the bar of the PSLRA any higher than that which is required." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 946 (9th Cir. 2003).

### B.    Opposition to Request for Judicial Notice

Plaintiff opposes Defendants' Request for Judicial Notice (Dkt. No. 29-1) insofar as Defendants seek to introduce documents for the truth of the contents therein. Rule 201(b) of the Federal Rules of Evidence provides: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Conversely, courts within the Ninth Circuit have repeatedly declared that it is improper for a party to seek judicial notice of documents for the truth of the matter asserted therein. *See*, *e.g.*, *Nordell Int'l Res., Inc. v. Triton Indonesia, Inc.*, 139 F.3d 906 (9th Cir. 1998) ("Nordell requests that this court take judicial notice of the truth of the facts asserted in the documents it offers here. We deny Nordell's request.").

Similarly, the Ninth Circuit cautions that "what inferences a court may draw from an incorporated document should also be approached with caution." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). It "is improper to assume the truth

4

of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Defendants request judicial notice of the 2021 10-K for the truth contained therein. MTD, at 12-13. This is impermissible. Defendants cannot request judicial notice of documents for the truth of its contents. As such, Plaintiff requests that the Court deny the request for judicial notice of the 2021 10-K insofar as Defendants seek to introduce it for the truth of its contents.

## C.   The Complaint Pleads Material Falsity

To plead falsity under the PSLRA, a plaintiff must "specify each statement [or omission] alleged to have been misleading [and] the reason or reasons why the statement [or omission] is misleading." 15 U.S.C. § 78u-4(b)(1)(B). The allegations must identify who made the allegedly misleading statements and what statements were misleading, state where and when the statements were made, and explain why the statements were misleading. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Complaint does exactly that.

### 1.   Defendants' Statement That They Fully Disclosed Material Related Party Transactions Was False

Plaintiff sufficiently pleads the "who, what, when, and where" of Defendants' false and/or misleading statement concerning material related party transactions in the 2021 10-K. Defendants alleged that they had fully disclosed all material related party transactions as of December 29, 2019 in the 2021 10-K. ¶72. However, this statement was false because there was a material related party transaction of approximately $9.6 million in 2020 that was not disclosed in the 2021 10-K. ¶¶5, 103, 105. The 2021 10-K was signed by Defendants Wiederhorn and Kuick and filed with the SEC on March 23, 2022. ¶71.

Defendants make the incredulous argument that Plaintiff did not "allege with the requisite particularity that the allegedly omitted "looting" or other illegal conduct actually occurred." MTD, at 10. This is patently false. As discussed above, Plaintiff sufficiently alleged that, in 2020, FAT Brands disbursed approximately $9.6 million to FCCG at the

direction of Defendant Wiederhorn. ¶¶5, 103, 105. As a preliminary matter, Plaintiff is not asserting that Defendants failed to disclose *illegal* conduct, but rather failed, during the Class Period, to fully disclose all material related party transactions. Furthermore, this is a bald-faced attempt to refute a factual allegation in the Complaint. At the motion to dismiss stage, courts must accept as true all factual allegations in the complaint. *Tellabs*, 551 U.S. at 322-23.

Additionally, Courts have held that failure to fully disclose material related party transactions is sufficient to establish falsity. *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1118 (C.D. Cal. 2012) ("Courts have previously held that similar allegations concerning a failure to disclose related-party transactions are adequate to plead falsity."); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 941 (C.D. Cal. 2012) ("[c]ommon sense dictates that [disclosure of related party transactions] is material information and indeed, Regulation S–K devotes an entire section and notes that it is one of the core disclosures that companies have to report."); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 656 (S.D.N.Y. 2007) (allegations that financial statements "failed to disclose significant related-party transactions" in violation of GAAP were sufficient to support liability); *Brown*, 875 F. Supp. 2d at 1118 ("Courts have previously held that similar allegations concerning a failure to disclose related-party transactions are adequate to plead falsity.").

Defendants' argument misses the mark. First, Defendants rely on *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019) and *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576 (S.D.N.Y. 2006) to support the argument that Plaintiff did not adequately allege the omitted material related-party transaction. However, both *Sanderson* and *In re AXIS* are inapposite. In both cases, the claims hinged on an alleged anticompetitive scheme. In both cases, the courts found that plaintiffs failed to sufficiently allege facts to meet the elements for an anticompetitive scheme. Here, Plaintiff is not alleging an anticompetitive scheme. There are no exacting standards of supporting facts

6

that Plaintiff must allege to support their claim that Defendant Wiederhorn caused FAT Brands to pay himself $9.6 million in 2020. The rule is clear: courts must "accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322-23.

Defendants also rely on *In re Sanofi Securities Litigation*, 155 F. Supp. 3d 386, 398-400 (S.D.N.Y. 2016) for the proposition that "'upon information and . . . belief' allegation from a different lawsuit incorporated into the [complaint] does not suffice under the PSLRA." However, this is irrelevant. In *In re Sanofi*, the plaintiff relied on another complaint which contained 'upon information and belief' allegations. Here, both the Indictment and SEC Complaint are not predicated upon "information and belief" but, rather, the results of a years-long investigation into FAT Brands and their books and records. Similarly, the complaint in the action *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.) was also drafted relying on the *Harris* plaintiffs' reviews of FAT Brands' books and records following a §220 demand. None of the sources that Plaintiff relies on is based upon information and belief. Therefore, *In re Sanofi* is inapposite.

Defendants also mischaracterize Plaintiff's Complaint, accusing it of "rel[ying] *exclusively* upon unproven allegations lifted nearly *verbatim* from the *Harris* Complaint, the Indictment and the SEC Complaint." (Emphasis in original). However, none of the *Harris* Complaint, Indictment, or the SEC Complaint discussed Defendants' failure to disclose the 2020 material related party transaction in the 2021 10-K. Likewise, none of the sources above discussed FAT Brands' then-ongoing efforts to downplay the government investigation, misleading risk disclosure, and failure to account for contingent liabilities. Cases Defendants cite here also miss the mark.

In *In re UBS Ag Sec. Litig.*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), like in *In re Sanofi*, the complaint that plaintiffs relied on contained uncorroborated allegations. This is different from the current case, where Plaintiff relies on complaints and an indictment that have thoroughly reviewed FAT Brands' books and records.

*In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) is

also inapplicable here. In *In re Connetics*, the court held that a plaintiff cannot rely entirely on a single SEC complaint as the *sole* basis of his or her allegations. That is not the case here. Here, three separate legal proceedings – each of which was well-researched based on FAT Brands' books and records – corroborate the fact that FAT Brands was making undisclosed disbursements to FCCG for the personal benefit of Defendant Wiederhorn. From there, Plaintiff took time to research his claims as a shareholder of the Company. Plaintiff found that, on top of the Company failing to disclose the self-dealing payments, Defendants also downplayed the threat of litigation the Company faced pursuant to the government investigation, issued a false and/or misleading risk disclosure, and failed to account for contingent liability. While the SEC Complaint, Indictment, and the *Harris* Complaint corroborate the corrective disclosure in this action, none of them discuss in depth the case brought forth by Plaintiff.[3]

Indeed, courts have held that a plaintiff may rely on other proceedings to establish factual bases for his or her claims. First, "[t]here is no absolute rule barring a private plaintiff from relying on governmental pleadings and proceedings in order to meet the rule 9(b) and PSLRA thresholds." *Van Leeuwen v. Keyuan Petrochemicals, Inc.*, et al., 2014 WL 3891351 *4 (S.D.N.Y. Aug. 8, 2014) (citing *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 340 (S.D.N.Y. 2010)). Moreover, "there is nothing improper about utilizing information contained in an SEC complaint as evidence to support private claims under the PSLRA." *Id.* (*citing In re Fannie Mae 2008 Sec. Litig.*, 891 F.Supp.2d 458, 471 (S.D.N.Y. 2012) and *quoting Lee*, 720 F.Supp.2d at 341). Finally, "'[i]t makes little sense to say that information from … a study [or investigation]—which the [complaint] could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint'". *Id.* (*quoting In*

---

[3] Defendants also rely on *Geinko v. Padda*, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002). *Geinko* is inapposite because, there, the court found that simply parroting facts from another complaint and alleging that the facts raised "red flags" was insufficient to show scienter.

*re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F.Supp.2d 746, 767-68 (S.D.N.Y. 2012)). As such, contrary to Defendants' argument, it is entirely permissible for Plaintiff to rely on factual findings from the SEC Complaint, Indictment, and *Harris* Complaint.

Defendants seek to submit certain statements from the 2021 10-K for the truth contained therein. MTD, at 12-13. As discussed above, this is impermissible. Therefore, Defendants fail to refute the falsity of the statements in the Complaint by relying on the supposed truth of the contents of Note 3 and Note 12 of the 2021 10-K.

For all the foregoing reasons, the Complaint adequately alleges falsity with regards to the 2021 10-K statement that all material related party transactions as of December 29, 2019 were disclosed.

### 2.    Lack of Confidential Witnesses Does Not Undermine Falsity

Defendants also point to the lack of confidential witnesses to attempt to undermine falsity. However, none of Defendants' cited cases support the argument that a lack of confidential witnesses or former employees weakens a complaint's falsity allegations. In *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509 (N.D. Cal. Sept. 1, 2021), the lack of confidential witnesses weakened the plaintiffs' theory of scienter, not the alleged false and/or misleading statements. Defendants misrepresent *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007), cherry picking quotes to misrepresent the holding of the case. The full quote states, "Because Plaintiff's allegations are all based on publicly-filed documents—and not, as is the case in many securities fraud cases, on the statements of confidential witnesses and/or employees and former employees—it is difficult to imagine what additional facts Plaintiff could allege to satisfy the strict pleading requirement of the PSLRA and Rule 9(b). In addition, Plaintiff had the opportunity to plead additional facts from those he alleged in his original complaint when he filed the corrected consolidated complaint on May 1, 2007. Accordingly, leave to amend is denied." The court in *In re Hansen* did *not* dismiss the case for solely relying on public filings. Instead, the court denied leave to amend, finding that, because the complaint relied solely

9

on public filings, there were no additional facts plaintiff could allege.

### 3. Defendants' Opinion Statements Are Not Protected

Defendants rely on *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326 (2015) to argue that their statements concerning whether FAT Brands was a target of the investigation were statements of opinion. However, as Defendants recognize, even opinion statements can be "actionable only if the speaker did not truly hold the opinion or when it misleadingly convey facts regarding how the speaker formed the opinion or the basis for the opinion." MTD, at 9; *see also, Omnicare*, 135 S. Ct. 1322 ("Specifically, an issuer's statement of opinion may fairly imply facts about the inquiry the issuer conducted or the knowledge it had. And ***if the real facts are otherwise, but not provided, the opinion statement will mislead by omission.***")

As Plaintiff repeatedly alleged in the Complaint, FAT Brands, at the direction of its CEO Wiederhorn, made numerous payments to FCCG for Wiederhorn's personal benefit; the SEC and DOJ were investigating, *inter alia*, the transactions between FAT Brands, FCCG, and Wiederhorn; as part of the investigation, the government agencies requested books and records; in their roles as CEO, co-CEOs, or CFO, Defendants Wiederhorn, Kuick, and Rosen reviewed the production; furthermore, as the mastermind behind the self-dealing scheme, Wiederhorn knew that FAT Brands was guilty of the conduct the government was investigating. ¶¶3-6, 17-23, 71-75, 80-82, 86-94. At the very least, Defendant Wiederhorn, by virtue of his conduct, knew that his actions exposed himself and FAT Brands to government action. And as the CEO of FAT Brands, his knowledge is imputed to the Company. Therefore, there were unrevealed facts that rendered the Company's statement that it "believe[d] that the Company is not currently a target of the U.S. Attorney's investigation" objectively false. Likewise, Defendants Kuick and Rosen, as co-CEOs and CFO, oversaw and reviewed the Company's response to the government investigations. Therefore, they were aware of the Company's exposure to government action. Yet, Defendants Kuick and Rosen continued to state that they believed that FAT Brands was not a target of the government's investigation, despite all evidence to the

contrary.

Likewise, Defendants' statements that they "intend[ed] to cooperate with the U.S. Attorney and the SEC" was shown to be objectively false. The SRC was formed on August 23, 2022, comprising of directors other than Defendant Wiederhorn, to oversee a review of the issues raised by the government investigations. ¶87. However, this was just a façade – an attempt to appear compliant and cooperative with the investigations. Wiederhorn disbanded the SRC after only seven months – before any meaningful findings or action could be taken. ¶¶80-82, 84, 87-88. Furthermore, Mr. Wiederhorn removed all independent directors and replaced them with cronies and yes-men, further eroding the Company's ability to cooperate with the government. ¶¶83-84.

### 4. Risk Disclosure Was Misleading

On November 14, 2022, FAT Brands filed with the SEC a Form 424B5 Prospectus Supplement to the Prospectus dated February 8, 2022 (the "November 2022 Prospectus"). The November 2022 Prospectus contained a "Risk Factors" section purporting to warn investors about the risks in participating in the offering. The Risk Factors stated, in pertinent part, that FAT Brands was controlled by FCCG, "whose interests **may differ** from those of our public stockholders." ¶77. The Risk Disclosure statement was misleading because it characterized the conflict of interest as a hypothetical, when in fact the conflict of interest had already materialized in the form of Wiederhorn's undisclosed self-dealing payments. *See Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (disclosure of hypothetical risks of product liability claims, with no indication that the risk may already have come to fruition was misleading); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F.Supp.3d 568, 574-575 (S.D.N.Y. 2016) (misleading legal proceedings statement contained the phase "[Extensive scrutiny by the regulatory agencies] has resulted or may in the future result in regulatory agency investigations, litigation and subpoenas"); *see also In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 817 (C.D. Cal. 2011) (general language about risks inherent in the FDA approval process was not sufficient cautionary language).

11

Defendants' sole argument that the risk disclosures weren't misleading is that Plaintiff's claims are based on the purportedly deficient "omissions-based statement." As established previously (Sec. III.C.1), Plaintiff sufficiently pleads falsity with regards to Defendants' failure to disclose the material related-party transactions in 2020. Therefore, the risk disclosure is misleading as alleged in the Complaint. ¶¶77-78.

### D.    Item 404 and GAAP Disclosure Violations Support a 10(b) Claim

The crux of Defendants' argument here is that, under *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024), there is no misstatement because *Macquarie* resolved a circuit split to do away with "pure omission" cases. Unfortunately for Defendants, their reliance on *Macquarie* is misplaced, as this is not a pure omission case.

Defendants' assertion that "Plaintiff fails to point to any 'affirmative statements made misleading'" is facially untrue. As alleged in the Complaint and discussed above, Defendants made an affirmative statement that: "[o]ther than such transactions, since December 29, 2019, there has not been, nor is there currently proposed, any transaction or series of similar transactions to which we were or will be a party [] in which the amount involved exceeds $120,000; and [] in which any director, executive officer, shareholder who beneficially owns 5% or more of our common stock or any member of their immediate family had or will have a direct or indirect material interest." ¶72. This statement is false and/or misleading because, as discussed in the Complaint and above, Defendants did not disclose that Wiederhorn caused FAT Brands to disburse approximately $9.6 million to FCCG and, eventually, himself. ¶¶5, 103, 105.

Another reason *Macquarie* is inapposite here is that Defendants' failure to disclose the material related party transactions rendered the 2021 10-K false and/or misleading. The failure to disclose all material related party transactions in the Company's financial statements violated GAAP and Item 404(a). ¶¶109-126. SEC Rule 4-01(a) of Reg. S-X states that if financial statements filed with the SEC are not prepared in accordance with GAAP, they will be "presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-

12

01(a)(1); *see also*, *Green v. Maison Solutions Inc.*, 2025 WL 1009121, at 8 fn.6 ("[f]inancial statements ... which are not prepared in accordance with [GAAP] will be presumed to be misleading or inaccurate[.]"); *In re Refco*, 503 F. Supp. 2d at 656.

**E.    Defendants Failed to Disclose Contingent Losses**

As discussed in the Complaint, Defendants had an obligation to disclose contingent losses stemming from the government investigation into FAT Brands, FCCG, and Wiederhorn. ¶¶127-153. In every 10-K filed during the Class Period, there was a section titled "Commitments and Contingencies", wherein Defendants discussed, *inter alia*, the then-ongoing government investigations. Despite Defendant Wiederhorn's knowledge about the illicit self-dealing payments – which, as previously discussed, is imputed to the Company as well – and Defendants Kuick and Rosen's roles as co-CEOs and CFO in overseeing the Company's response to the government investigations, the Company failed to account for contingent liabilities in accordance with GAAP. And as discussed previously, financial statements filed with the SEC are not prepared in accordance with GAAP, they will be "presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1); *Maison Solutions*, 2025 WL 1009121, at 8 fn.6.

Given Defendant Wiederhorn's self-dealing through FAT Brands, the possibility of a loss was more than remote, triggering ASC 450's requirement to disclose the contingent loss. ¶138. Even if Defendants were unable to reasonably estimate the amount of contingent losses, ASC 450 required Defendants to disclose "the nature of the contingency" and state "that such an estimate cannot be made." *Id.*; ASC 450-20-50-3. Therefore, Defendants' failure to account for contingent losses, or to disclose the nature of the contingency and that an estimate cannot be made, rendered Defendants' statements in the "Commitments and Contingencies" section of all 10-Ks false and misleading.

**F.    The Complaint Alleges a Strong Inference of Scienter**

Scienter is "a mental state that not only covers "intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d

13

698, 705 (9th Cir. 2016). "Recklessly turning a 'blind eye' to impropriety is equally culpable conduct under Rule 10b-5." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012). When analyzing scienter, the court must determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 310; *see also S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs*, 551 U.S. at 309-10, 324. Rather, "it must be cogent and at least as compelling as any opposing inference." *Id*. Plaintiffs can plead a strong inference of scienter through circumstantial evidence. *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017).

### 1.    A Holistic Analysis Supports an Inference of Scienter

Scienter allegations must be considered holistically, not individually. *Tellabs*, 551 U.S. at 326. The Complaint's allegations, considered holistically, support a strong inference of scienter by alleging: (1) Defendant Wiederhorn – as the perpetrator of the self-dealing payments – had knowledge of the undisclosed material related party transactions; (2) the SEC and DOJ began investigating, *inter alia*, FAT Brands, FCCG, and Wiederhorn, and certain transactions between these entities and Defendant Wiederhorn; (3) Defendants Kuick and Rosen, by virtue of their positions as co-CEOs and CFO, had access to, and was responsible for supervising the production of, the documents and materials requested by the SEC and DOJ; (4) Defendant Wiederhorn was not only the mastermind of the undisclosed material related party transactions, but also controlled FAT Brands; (5) Defendants Wiederhorn, Kuick, and Rosen attempted to conceal the fraud, including by creating then disbanding the SRC and misleading investors by stating FAT Brands was not a target of the governmental investigations; and (6) the nature of the GAAP and SEC rule violations was simple. ¶¶3-8, 71-75, 79-97.

14

As a preliminary matter, Defendants do not contest Wiederhorn's – and by extension, FAT Brands' – scienter of the material related party transactions. Therefore, Defendants have conceded Wiederhorn's and FAT Brands' scienter as it relates to their failure to disclose the undisclosed material related party transactions, downplaying FAT Brands being targeted by the investigation, and failure to disclose contingent losses.

Defendants spill much ink arguing that Kuick and Rosen did not know about the self-dealing payments orchestrated by Wiederhorn at the time they were occurring. MTD, at 16-18. However, Plaintiff is not alleging that Kuick and Rosen had scienter of the payments at the time they occurred. Rather, the Complaint states that Kuick and Rosen are responsible for failing to promptly report the material related party transactions when they became aware of said payments. ¶¶73, 75, 81, 88, 91, 94, 99.

The Company first became aware of the government investigations in December 2021. ¶4. By the start of the Class Period, Defendants had already spent 4 months allegedly cooperating with the government's investigation. Throughout the Class Period, by virtue of their roles as executives, Defendants Wiederhorn, Kuick, and Rosen oversaw the Company's response to and cooperation with the government investigation. This involved responding to the requests for documents and records pertaining to the transactions between Wiederhorn, FAT Brands, and FCCG. ¶¶73, 75, 81, 88, 91, 94, 99. *Och-Ziff*, 164 F.Supp.3d at 585 ("Defendants knew about the…Investigation from 2011 onward, but waited to disclose its potential impact, which Och-Ziff later described as material…" and, therefore, plaintiffs had "plausibly alleged that…Defendants were reckless."); *see also*, *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 733 (S.D.N.Y. 2015) (inferring scienter where "BioScrip subjectively knew about the [Civil Investigation Demand]" and "was reckless in electing to withhold knowledge of the CID, despite its significant role in formulating a basis of belief that BioScrip was in legal compliance.").

Despite their reviewing these documents, Defendants incredulously argue that they did not have knowledge of the material related party transactions. This is doubly unbelievable for Wiederhorn and FAT Brands – the former being responsible for the self-dealing payments, and his scienter being imputed to FAT Brands by virtue of his role as CEO and Chairman.

Alternatively, Defendants Kuick and Rosen were reckless in their roles as co-CEOs and CFO by failing to notice the looming litigation threatening FAT Brands. The books and records demanded by the DOJ and SEC contained enough financial information for the agencies to file a complaint and an indictment against, *inter alia*, Defendants Wiederhorn and FAT Brands. By failing to properly review the productions and warn the investing public about the pending charges, Kuick and Rosen "[r]ecklessly turn[ed] a 'blind eye' to impropriety [which] is equally culpable conduct under Rule 10b-5." *In re VeriFone Holdings*, 704 F.3d at 708.

Defendants also argue "[t]he Complaint does not include any allegations identifying (1) what documents or materials relating to the transactions the government requested; (2) what documents defendants provided in response; or (3) what those documents supposedly showed." However, Defendants provide no authority to support their argument that a failure to specify the types of documents requested, what documents were provided, and what the documents contained must cut against scienter. Furthermore, the Complaint makes clear that the government requested, *inter alia*, documents and materials concerning "the Company's December 2020 merger with Fog Cutter Capital Group Inc. [and] transactions between those entities and Mr. Wiederhorn[.]"

And while Defendants correctly point out neither Kuick nor Wiederhorn sold shares during the Class Period or stood to benefit financially from continuing to hide the truth, they had another motive: their loyalty to Wiederhorn. Wiederhorn and his affiliates completely controlled FAT Brands following the IPO by effectuating a reverse stock-

16

split scheme. ¶62. Wiederhorn removed independent board members and replaced them with his loyalists. ¶¶83-84. Therefore, Wiederhorn commanded the loyalty of all those who worked under him, and doubly so for the executives of the Company, as he could easily remove anyone who stepped out of line. Therefore, Defendants Kuick and Rosen had every reason – whether out of genuine loyalty or fear of losing their jobs – to continue protecting Wiederhorn.

Furthermore, the Supreme Court has declared that "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (the "absence of a motive allegation" is "not dispositive"). Thus, "[s]cienter can be established even if the officers who made the misleading statements did not sell stock during the class period." *No. 84 Employer-Teamster Joint Council Pension Plan Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 944 (9th Cir. 2003).

In the 2021 10-K, Defendants attempted to cover up the undisclosed material related party transactions by claiming that there were no undisclosed material related party transactions. ¶¶72-73. Similarly, throughout the Class Period, Defendants sought to hide the fact that FAT Brands was actually a target of the government investigations. ¶¶74-75, 80-81, 90-91, 93-94. Courts have found that attempts to cover up fraud supports finding an inference of scienter. *United States v. Reyes*, 660 F.3d 454, 466-67 (9th Cir. 2011) (false exculpatory statements can be considered as evidence of consciousness of guilt); *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *16 (C.D. Cal. Jan. 17, 2020) (same).

Similarly, Defendant Wiederhorn's firing of the SRC and independent board members adds to the inference of scienter for the same reason. Obstructing an investigation is "circumstantial evidence of scienter." *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 548 (S.D.N.Y. 2020). The SRC was created to investigate the issues raised by the government investigation – that is, the

17

undisclosed material related party transactions orchestrated by Defendant Wiederhorn. Defendant Wiederhorn, fearing that the SRC would hasten the truth coming out, dismantled the SRC before it could make any meaningful findings. Defendant Wiederhorn also removed independent board members and replaced them with those loyal to him so as to continue the cover-up of the undisclosed material related party transactions.

Further bolstering the strong inference of scienter is the simplicity and obviousness of the disclosure obligations. *Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at \*6 (C.D. Cal. July 20, 2011); *see also In re Medicis Pharm. Corp. Sec. Litig.*, No. CV-08-1821-PHX-GMS, 2010 WL 3154863, at \*5 (D. Ariz. Aug. 9, 2010) (simplicity, obviousness, and magnitude of accounting error all contribute to scienter inference).

The disclosure obligation under GAAP and Item 404 are not complex, nor is there any room for interpretation. Item 404(a) of Regulation S-K (17 C.F.R. § 229.404) requires the disclosure of "any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." ¶109. Likewise, GAAP also required the Company to disclose all material related party transactions. ASC 850, Related Parties, provides that a public company's "[f]inancial statements shall include disclosures of material related party transactions." ASC 850-10-50-1. ¶120. Defendants' violation of such simple disclosure obligations further enhances the inference of scienter.

The facts, when viewed holistically, create an inference of scienter that is at least as cogent and compelling as any competing inference. *See N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1102-1103 (9th Cir. 2011) ("[w]hen viewed in totality, there is no doubt the allegations, at this early phase of the proceedings, present at least as strong an inference of scienter as any competing innocent inference").

### G.    The Complaint Adequately Pleads A Section 20(a) Claim

To state a claim under Section 20(a), Plaintiffs must allege a primary violation of the Exchange Act, and that the individual defendants controlled the entity liable for the primary violation. 15 U.S.C. § 78t(a); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1053–54 (N.D. Cal. 2008). The Complaint alleges a primary violation by FAT Brands, and thus also alleges Section 20(a) claims against the Individual Defendants. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 781 (9th Cir. 2023).

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion. Alternatively, if any part of the Complaint is dismissed, Plaintiff respectfully requests leave to replead. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

Dated:   July 21, 2025                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)

355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq. (admitted *pro hac vice*)
Ha Sung (Scott) Kim, Esq. (admitted *pro hac vice*)
275 Madison Avenue, 40th Fl.
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827

19

Email: philkim@rosenlegal.com
Email: skim@rosenlegal.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

20

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,256 words, which complies with the word limit of L.R. 11-6.1.

Executed on July 21, 2025.

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq. (admitted *pro hac vice*)
Ha Sung (Scott) Kim, Esq. (admitted *pro hac vice*)
275 Madison Avenue, 40th Fl.
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: skim@rosenlegal.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

21