SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:  858.720.8900
Facsimile:  858.509.3691
E mail:         jstigi@sheppardmullin.com

POLLY TOWILL, Cal. Bar No. 120420
MADALYN A. MACARR, Cal. Bar No. 301539
TORI D. KUTZNER, Cal. Bar No. 334057
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:  213.620.1780
Facsimile:  213.620.1398
E mail:         ptowill@sheppardmullin.com
                    mmacarr@sheppardmullin.com
                    tkutzner@sheppardmullin.com

Attorneys for Defendants FAT BRANDS, INC.,
ANDREW A. WIEDERHORN, KENNETH J.
KUICK and ROBERT G. ROSEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL KATES, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>        v.<br><br>FAT BRANDS, INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN,<br><br>              Defendants. | Case No. 2:24-cv-04775-MWF-MAA<br><br>The Hon. Michael W. Fitzgerald<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>[*Supplemental Request for Judicial Notice filed concurrently herewith*]<br><br>Hearing Date:  September 15, 2025<br>Time:               10:00 a.m.<br>Department:    5A<br>Trial Date:       None Set |

Case No. 2:24-cv-04775-MWF-MAA

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   THE CAC FAILS TO PLEAD FACTS SUFFICIENT TO SHOW FALSITY ............................................................................................................ 2

    A.    The Complaint's Opinion and Forward-Looking Statement Allegations Are Non-Actionable ................................................................. 2

    B.    The Complaint Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made ........... 4

        1.    The Complaint Lacks Particularized Facts Showing Any Undisclosed Intercompany Loan to FCCG That Rendered Any Statement False or Misleading................................................ 4

        2.    The Company's Risk Disclosures Were Not Misleading............. 9

        3.    No Facts Show FAT Brands Became a Target of the U.S. Attorney's Investigation Before May 2024 ............................... 10

    C.    The Alleged Item 404 and GAAP Disclosure Violations Do Not State a Section 10(b) Claim .................................................................. 10

    D.    The Alleged Failure to Disclose Contingent Losses Under GAAP Fails ....................................................................................................... 12

III.  THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER ................... 13

    A.    No Alleged Facts Give Rise to a Strong Inference That Kuick Knew About the Unauthorized Intercompany Loans, Much Less That Loan Proceeds Went To Wiederhorn ............................................. 15

    B.    No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation................................................................. 17

IV.   THE COMPLAINT FAILS TO STATE A CONTROLLING PERSON LIABILITY CLAIM FOR VIOLATION OF SECTION 20(a)..................... 18

V.    CONCLUSION ................................................................................. 18

SMRH:4909-8500-9495.7    DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

## **TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*In re Aqua Metals, Inc. Sec. Litig.*
2019 U.S. Dist. LEXIS 137660 (N.D. Cal. Aug. 14, 2019)................................11

*In re AXIS Capital Holdings Ltd. Sec. Litig.*
456 F. Supp. 2d 576 (S.D.N.Y. 2006)................................................................5, 6

*Brody v. Transitional Hosps. Corp.*
280 F.3d 997 (9th Cir. 2002)..................................................................................3

*Carr v. Zosano Pharma Corp.*
2021 WL 3913509 (N.D. Cal. Sept. 1, 2021).........................................................8

*In re Connetics Corp. Sec. Litig.*
542 F. Supp. 2d 996 (N.D. Cal. 2008)....................................................................7

*ESG Capital Partners, LP v. Stratos*
2013 WL 12131355 (C.D. Cal. June 26, 2013).....................................................16

*In re Fusion-io, Inc. Sec. Litig.*
2015 U.S. Dist. LEXIS 18304 (N.D. Cal. Feb. 12, 2015)....................................12

*Gamm v. Sanderson Farms, Inc.*
944 F.3d 455 (2d Cir. 2019) ...................................................................................5

*Green v. Maison Solutions Inc.*
2025 U.S. Dist. LEXIS 62541 (C.D. Cal. Mar. 31, 2025) ...................................12

*In re Hansen Natural Corp. Sec. Litig.*
527 F. Supp. 2d 1142 (C.D. Cal. 2007)...............................................................8, 9

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*
601 U.S. 257 (2024) .........................................................................................11, 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*
575 U.S. 175 (2015) .......................................................................................2, 3, 4

*Prodanova v. H.C. Wainwright & Co., LLC*
993 F.3d 1097 (9th Cir. 2021).........................................................................14, 16

*S. Ferry LP, No. 2 v. Killinger*
542 F.3d 776 (9th Cir. 2008).................................................................................15

*In re Sanofi Sec. Litig.*
155 F. Supp. 3d 386 (S.D.N.Y. 2016)......................................................................6

*Steinberg v. Schmitt Indus., Inc.*
2024 U.S. Dist. LEXIS 43245 (D. Or. Feb. 2, 2024).............................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007) ..................................................................................... 14, 18

*In re UBS Ag Sec. Litig.*
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ...................................................... 6

*United Ass'n Nat'l Pension Fund v. Carvana Co.*
  2024 U.S. Dist. LEXIS 35004 (D. Ariz. Feb. 29, 2024) ..................................... 11

*In re VeriFone Holdings, Inc. Sec. Litig.*
  704 F.3d 694 (9th Cir. 2012) ............................................................................. 14

Statutes and Rules

Securities Exchange Act of 1934, § 10(b)................................................ 5, 10, 11, 12

Fed. R. Civ. P. 9(b) ................................................................................... 1, 4, 5, 7

17 C.F.R. § 210.4-01(a)(1) ................................................................................. 12

SMRH:4909-8500-9495.7    DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

## I.    INTRODUCTION

In their opening memorandum, defendants demonstrated that plaintiff's Complaint fails to satisfy the heightened pleading standards governing securities fraud claims.[1]  Specifically, defendants showed that: (1) the Complaint's opinion and forward-looking statements are not actionable as a matter of law; (2) the Complaint does not adequately allege facts with the particularity required to establish falsity as required by Rule 9(b) and the PSLRA because plaintiff simply relies on recycled conclusory and unproven allegations derived from other proceedings; (3) plaintiff's attempts to invoke technical violations of GAAP or Item 404 as the basis for securities fraud liability are meritless in light of recent Supreme Court authority and its progeny; and (4) the Complaint's reliance upon after-the-fact enforcement actions and unsubstantiated legal theories does not satisfy the requirement that a securities plaintiff offer particularized allegations giving rise to a strong inference that each defendant acted with the requisite scienter.

In his opposition, plaintiff largely sidesteps these deficiencies and instead relies upon generalized assertions and unwarranted inferences that are not supported by the actual allegations of his Complaint.  Further, plaintiff's efforts to distinguish the clear and relevant authority cited in defendants' opening memorandum lack merit because plaintiff misreads defendants' cited cases, ignores their controlling principles or misconstrues their factual and legal holdings.  In the end, none of plaintiff's arguments provides a basis for departing from the settled pleading standards imposed by the PSLRA, Rule 9(b) and recent Supreme Court authority, all of which mandate dismissal here.

Since the filing of defendants' opening memorandum, plaintiff's theory of the case has been further undermined by a significant development:  the United States

---

[1]  Capitalized terms herein have the same meaning as defined in defendants' opening memorandum (ECF No. 29).

Government voluntarily dismissed the criminal Indictment upon which plaintiff principally relies to allege falsity and wrongdoing. This development calls into question the very foundation underlying plaintiff's claims. In light of the Government's voluntary dismissal of the Indictment — after a lengthy investigation and prosecution — plaintiff's attempt to predicate securities fraud liability upon allegations mirroring the now-abandoned criminal case is even less tenable. This development further underscores that plaintiff's allegations are speculative, conclusory and lack the required factual support to state a claim under the securities laws.

For these reasons and those set forth more fully below, the Court should grant defendants' motion and dismiss the Complaint.

## II.    THE CAC FAILS TO PLEAD FACTS SUFFICIENT TO SHOW FALSITY

### A.    The Complaint's Opinion and Forward-Looking Statement Allegations Are Non-Actionable

As set forth in defendants' opening memorandum, the challenged statements that (1) "we believe that the Company is not currently a target of the U.S. Attorney's investigation" and (2) the Company "intends to cooperate with the U.S. Attorney and the SEC regarding these matters" are expressions of opinion or future intent. Plaintiff does not dispute this. Plaintiff also acknowledges that under settled Supreme Court and Ninth Circuit authority, such statements are actionable only if plaintiff alleges facts indicating that defendants either did not actually hold the stated belief or intention, or omitted material facts regarding the basis for such belief that rendered the statements misleading when made. (Opposition ("Opp.") at 10 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184-86 (2015)).) Plaintiff recognizes that for an opinion statement to mislead by omission, the complaint must allege the omitted "real facts" that existed regarding the inquiry defendants conducted or the knowledge they had. (*Id.*) Plaintiff's opposition, however, does not point to any alleged facts in the Complaint showing

-2-

that, at the time of the challenged statements, defendants did not honestly believe the Company was not a target of any government investigation or did not intend to cooperate with any investigation. Nor does the opposition identify any alleged omitted material facts regarding the inquiry defendants performed or the basis for their stated belief.

First, with respect to government investigations, the opposition theorizes that Kuick and Rosen were aware the Company faced "exposure" as a target of government action solely based upon their respective roles at the Company as co-CEO and CFO and purported oversight over the Company's document productions as a result thereof. (Opp. at 10.) It does this by assuming in conclusory terms that Kuick and Rosen "oversaw and reviewed the Company's response to the government investigations" (*id.*) — a fact the Complaint does not allege.[2] Plaintiff misquotes Kuick and Rosen as stating that "they believed that FAT Brands was not a target of the government's investigation" despite "all evidence to the contrary." (Opp. at 10-11.)[3] But neither the Complaint nor the opposition allege any actual facts then known to Kuick or Rosen "to the contrary." Nor does the opposition confront the Complaint's failure to allege facts showing *when* the Company in fact became a target of the government's investigation. This pleading deficiency is critical because without it, plaintiff cannot show the Company's "we believe" statement suggested a state of affairs inconsistent with the one that actually existed at the time the statement was made. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The opposition thus offers no particularized facts demonstrating that defendants actually

---

[2] Even assuming Kuick and Rosen reviewed the productions, plaintiff also concedes that his Complaint fails to allege what documents the government requested, what documents defendants provided in response or what those documents supposedly showed. Under *Omnicare*, to state a claim the complaint must allege such "real facts" regarding defendants' supposed inquiry that were not disclosed and facts from which the Court could infer defendants did not truly believe their temporally qualified "we believe" statement.

[3] In actuality, defendants qualified that they did not "currently" believe FAT Brands was a target of the investigation.

possessed contrary information or that the "real facts" underlying these qualified opinions were misrepresented or concealed.

Second, with respect to the Company's intent to cooperate with the government's investigations, plaintiff insists the statements are actionable because defendants supposedly created, but subsequently disbanded, a special review committee, and Wiederhorn replaced independent directors with several of his family members. (Opp. at 11.) But these assertions do not establish, as *Omnicare* requires, that defendants did not truly intend to cooperate or that they omitted material facts about the basis for their opinion or intent. That is because, despite the alleged disbanding of the committee and the directorship changes, no allegations show the Company was not in fact compliant and cooperative with the investigations. Nowhere does the Complaint allege, for example, that the Company's ability or intent to cooperate was in fact eroded by any changes in directorship — much less any facts from which the Court can infer that defendants in fact did not cooperate. In fact, plaintiff's scienter theory hinges on defendants actually having cooperated with the investigations, through which they supposedly learned that the Company was a target. Bare conclusions regarding alleged intent to be non-cooperative such as those plaintiff offers here do not suffice under the PSLRA's heightened pleading standards.

The opposition thus fails to salvage plaintiff's claims regarding defendants' statements of opinion and forward-looking statements.

**B.     The Complaint Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made**

**1.     The Complaint Lacks Particularized Facts Showing Any Undisclosed Intercompany Loan to FCCG That Rendered Any Statement False or Misleading**

First, defendants showed that, by relying entirely on unproven allegations from other actions for the facts underlying Wiederhorn's alleged scheme, the Complaint fails to satisfy Rule 9(b) and the PSLRA's particularity requirements. (Opening

-4-

Memorandum ("Mot.") at 10-11 (collecting cases characterizing over-reliance upon other pleadings as failing to satisfy PSLRA's particularity requirement).)  In his opposition, plaintiff nonetheless continues to rely almost exclusively upon allegations culled from parallel proceedings, none of which equate to well-pleaded, particularized facts supporting a Section 10(b) claim.

None of plaintiff's attempts to distinguish defendant's cited authority undermines the settled principles invoked in those cases:  where the entirety of an alleged "scheme" or undisclosed wrongdoing is premised not upon particularized factual pleading but rather upon unproven indictments, complaints or asserted government allegations, the PSLRA and Rule 9(b) standards are not met.

Plaintiff attempts to distinguish *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455 (2d Cir. 2019), and *In re AXIS Capital Holdings Ltd. Securities Litigation*, 456 F. Supp. 2d 576 (S.D.N.Y. 2006), by arguing they involved antitrust schemes not present here.  Plaintiff, however, overlooks the fundamental holding applicable in all Section 10(b) cases alleging omission of underlying wrongful conduct.  In both *Gamm* and *AXIS*, the courts held that when a securities plaintiff alleges that a failure to disclose illegal or improper underlying conduct renders SEC filings false or misleading, the complaint must plead the underlying misconduct itself with the particularity required by Rule 9(b) and the PSLRA.  That principle is not limited to antitrust or competition claims, but applies broadly to any instance where a fraud claim depends upon predicate undisclosed unlawful conduct — including, as here, alleged undisclosed "looting" related-party transactions.  *See Gamm*, 944 F.3d at 458 ("We further clarify that, when a complaint claims that statements were rendered false or misleading through the nondisclosure of illegal activity, the facts of those underlying illegal acts must also be pleaded with particularity."); *AXIS*, 456 F. Supp. 2d at 585 ("If the complaint fails to allege facts which would establish such an illegal scheme,

-5-

then the securities law claims premised on the nondisclosure of the alleged scheme are fatally flawed.").[4]

Plaintiff argues that *In re Sanofi Securities Litigation*, 155 F. Supp. 3d 386 (S.D.N.Y. 2016), is inapplicable because the incorporated complaint and "information and belief" allegations there differ from the government filings at issue here. (Opp. at 7.) This is a distinction without a difference. *Sanofi* stands for the proposition that a securities fraud plaintiff cannot meet the PSLRA's particularity standard simply by parroting "information and belief" allegations from other complaints unless those pleadings are themselves set forth with particularized facts or are otherwise supported by independent investigation. *Sanofi*, 155 F. Supp. 3d at 398-99. The plaintiffs in *Harris* made clear that the allegations in their complaint were based upon their own knowledge "as to themselves and their own actions and stockholdings," but "on information and belief *as to all other matters*, based upon investigation of counsel." (ECF No. 29-1, *Harris* Complaint ¶ 1.) The PSLRA requires more than referencing unproven allegations made by others; it demands that plaintiffs present their own specific factual foundation, especially if relying on prior proceedings as a factual predicate.

Plaintiff's effort to distinguish *In re UBS Ag Securities Litigation*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), by labeling his own sources as "complaints and an indictment that have thoroughly reviewed FAT Brands' books and records" does not overcome the particularity bar set by the PSLRA. (Opp. at 7.) *UBS*, as with other authorities, holds that unproven allegations from separate proceedings (including government complaints or indictments) do not suffice as "particularized facts" absent the plaintiff's independent factual investigation. *UBS*, 2012 WL 4471265,

---

[4] Plaintiff's argument that the Complaint does not assert a failure to disclose *illegal* conduct while simultaneously relying upon the Government's criminal indictment to establish the alleged underlying misconduct (*see* Opp. at 6) is facially disingenuous.

at *17 n.17 ("[B]ecause such allegations are taken directly from uncorroborated allegations embedded in a complaint in another action, the Court will not consider them," and despite lead plaintiff's arguments, the "Court still need not consider parroted allegations for which counsel has not conducted independent investigation."). Plaintiff's characterization of the *other* plaintiffs' investigations as "thorough" is beside the point; until such allegations are proven or admitted, they remain another person's mere *allegations*, not particularized *facts*.

Plaintiff argues that *In re Connetics Corp. Securities Litigation*, 542 F. Supp. 2d 996 (N.D. Cal. 2008), is distinguishable because, here, there are multiple government and private pleadings referenced and not just one, as in *Connetics*. (Opp. at 8.) This argument, too, is meritless. The holding in *Connetics* is categorical: "Plaintiffs cite no authority that . . . an attorney may rely entirely on another complaint as the sole basis for his or her allegations." *Connetics*, 542 F. Supp. 2d at 1005 (emphasis omitted). What matters is not the *number* of complaints referenced, but rather the plaintiff's reiteration of the allegations of another without independent corroboration. *Id.* Here, plaintiff does not allege any independent investigative efforts. (Complaint at 2.) *Connetics* thus remains directly on point. In sum, none of plaintiff's distinctions undermine the settled principle that, where the entirety of an alleged "scheme" or undisclosed wrongdoing is premised not on particularized factual pleading but rather on unproven allegations from other actions, the PSLRA and Rule 9(b) standards are not met. Plaintiff's opposition offers no valid basis for departure from these authorities.

Critically, not only have the allegations from those other proceedings *not* been proven or admitted,[5] but as noted above, there has been a significant recent development that directly undermines plaintiff's theory of falsity: On August 7, 2025,

---

[5] Plaintiff mischaracterizes the allegations from the SEC Complaint, now-dismissed Indictment and *Harris* Complaint as "factual findings." (Opp. at 9.)

-7-

upon application of the United States Government, the Court dismissed the Indictment against the Company and Wiederhorn. (Supplemental Request for Judicial Notice, Ex. E.) This new development is critical because plaintiff's Complaint and opposition rely heavily upon the allegations made in the now-dismissed Indictment, as well as overlapping, unproven SEC allegations, to attempt to plead the underlying factual predicate for falsity. Plaintiff reiterates his reliance upon the now-dismissed Indictment and complaints in these distinct actions as establishing the factual foundation for his claim, premised upon the assumption that each was "well-researched" by others after extensive, multi-year investigations into the Company's books and records. (Opp. at 8.) That assumption is now even more untenable in light of the Government's voluntary dismissal of the Indictment. Thus, with the critical "factual" predicate for falsity (the now-dismissed Indictment) no longer available, plaintiff's Complaint fails at the threshold: it neither pleads particularized facts, nor can it rest on the abandonment by the Government of the very theory of underlying criminal wrongdoing plaintiff seeks to pursue.

Second, defendants demonstrated that the lack of *any* confidential witnesses or former FAT Brands employees to corroborate plaintiff's allegations parroted from other actions was a "red flag" that undermined its Complaint. (Mot. at 12.) Plaintiff attempts to downplay defendants' cited authority. But both *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509 (N.D. Cal. Sept. 1, 2021), and *In re Hansen Natural Corp. Securities Litigation*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007), directly support the proposition that the absence of such insider or employee allegations undermines an inference of falsity (and scienter). Plaintiff attempts to limit *Carr* to scienter, but in reality, the lack of CWs is equally relevant to falsity, especially where, as here, the core falsity allegations hinge on purported internal misconduct allegedly known to and concealed by defendants. Similarly, while plaintiff insists *Hansen* merely addresses leave to amend, the point is that complaints devoid of insider or former employee confirmation — especially about what defendants were allegedly doing

-8-

or "knew" internally — fail to provide the "additional facts" needed for particularity and thus are unlikely to pass muster under the PSLRA. Far from being a distinguishable point, if anything, *Hansen*'s rationale that "because the complaint relied solely on public filings, there were no additional facts plaintiff could allege" (Opp. at 9-10) applies equally here.

Third, plaintiff attempts to sidestep the fact that the Complaint's long history of related-party transactions with FCCG was thoroughly disclosed by arguing the judicially noticeable materials defendants submitted should not be accepted for the truth of the underlying disclosures contained therein. But defendants submitted these materials for the fact that certain disclosures were made, not for the truth of the underlying disclosures. The fact remains that cited risk factors and related-party disclosures in the 2021 Annual Report and accompanying Notes addressed the existence of longstanding transactions with FCCG, even without accepting as true the underlying disclosed facts.[6]

### 2.    The Company's Risk Disclosures Were Not Misleading

Plaintiff argues the risk disclosure in the November 2022 Prospectus that FCCG's interests "may differ" from those of the Company's public stockholders was misleading because it referenced only the potential for FCCG's interests to diverge from those of public shareholders, allegedly when the "conflict" via Wiederhorn's alleged misconduct had already occurred. (Opp. at 11-12.) Plaintiff's conclusory assertion that this disclosed risk had materialized fails for several reasons. First, as shown above, plaintiff fails to plead with particularity that any such undisclosed conflict actually existed or that defendants' disclosures concealed material

---

[6] Plaintiff also ignores defendants' cited authority that failure to comply with an internal governance policy (here, the Intercompany Revolving Credit Agreement's alleged board-approval requirement) does not transform a historical disclosure into a securities violation absent a showing of actual falsity or omission of a material fact necessary to make statements not misleading. (*See* Mot. at 13.) Plaintiff does not address, and so concedes, this point.

information; rather, the extensive transactions between FAT Brands and FCCG had for years been repeatedly disclosed in detail.  Second, plaintiff's cited cases — where disclosure of hypothetical risk was found misleading because the risk had in fact already come to pass — are inapposite here, as plaintiff fails to plead with the requisite specificity that defendants were aware of, yet concealed, a realized conflict rather than a hypothetical one.  Without particularized facts showing that concrete, undisclosed events rendered defendants' risk disclosures misleading, plaintiff's theory cannot stand.

**3.      No Facts Show FAT Brands Became a Target of the U.S. Attorney's Investigation Before May 2024**

Even assuming *arguendo* that defendants' statement "we believe the Company is not currently a target of the U.S. Attorney's investigation" is actionable, defendants established that the Complaint contains no facts showing when FAT Brands actually became a target of any investigation.  (Mot. at 13.)  This deficiency is critical because without it plaintiff cannot show any of defendants' statements during the Class Period that they did not believe the Company was "currently" a target of any investigation were false or misleading.  Plaintiff's opposition, like his Complaint, is silent on this score.  The fact remains that the first and only alleged disclosure that FAT Brands was an actual target came in May 2024, with the unsealing of the now-dismissed Indictment.  Plaintiff's reverse-engineered theory that the earlier omission was false in hindsight, simply because of later events, is precisely the type of "fraud by hindsight" theory that courts uniformly reject.

**C.    The Alleged Item 404 and GAAP Disclosure Violations Do Not State a Section 10(b) Claim**

The Complaint asserts the Company's 2021 Annual Report was misleading because the Company "was required to, but did not, disclose" certain "related party transactions" under Item 404 and GAAP.  (Complaint ¶¶ 107, 113, 126.)  Defendants showed this "pure omissions" theory fails to state a claim under the Supreme Court's

-10-

decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024), which requires plaintiffs to point to "affirmative statements made misleading" by the alleged omission. (Mot. at 14-15.) Defendants further demonstrated that Item 404 and GAAP do not extend to the sort of unilateral and "illicit" looting behavior alleged in the Complaint. (*Id*. at 15 n.6.) In his opposition, plaintiff ignores this second point, instead focusing his attention entirely on attempting to avoid application of the *Macquarie* rule. His efforts all fail.

Plaintiff first contends that *Macquarie* is inapposite because defendants' alleged omissions under Item 404 and GAAP (discussed in paragraphs 107-126 of the Complaint) caused an unidentified, miscellaneous statement in the 2021 Annual Report (quoted 14 pages earlier in paragraph 72 and not referenced anywhere in the section relating to Item 404 and GAAP) to be misleading. (Opp. at 12.) However, no reasonable person would read Plaintiff's Item 404 and GAAP allegations as referencing this statement. Indeed, plaintiff's proposed reading of the Complaint would violate the rule against impermissible "puzzle pleading," subjecting his claim to dismissal. *See In re Aqua Metals, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 137660, at *20-24 (N.D. Cal. Aug. 14, 2019) (Ninth Circuit prohibits "puzzle pleading," which, in the securities fraud context, "refers to a pleading that requires the defendant(s) and the court to 'match up' the allegedly false and misleading statements that form the basis of the plaintiff's claims with the reason those statements are misleading") (citation omitted); *see also United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2024 U.S. Dist. LEXIS 35004, at *24 (D. Ariz. Feb. 29, 2024) (courts will dismiss securities complaints "that do not easily provide a one-to-one connection between misleading statements and the reasons why the statements are misleading"). And even if allowed, plaintiff's Item 404 and GAAP allegations are clearly premised upon the very "pure omissions" theory *Macquarie* prohibits. (*Compare* Complaint ¶¶ 107-08, 113, 126 (alleging defendants violated Section 10(b) by violating "duty to disclose," which "arose out of" Item 404 and GAAP)) *with Macquarie*, 601 U.S. at 261 (reject-

-11-

ing theory that company violated Section 10(b) because it "violated" its "duty to disclose" arising under Item 303); *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 18304, at *54 (N.D. Cal. Feb. 12, 2015) ("In the Ninth Circuit, it is well established that violation of an exchange rule will not support a Section 10(b) or Rule 10b-5 claim.") (citation modified).[7]

Plaintiff also argues that *Macquarie* is inapposite because Regulation S-X states that financial statements that are not prepared in accordance with GAAP are "presumed to be misleading or inaccurate." (Opp. at 12-13 (citing 17 C.F.R. § 210.4-01(a)(1)).) But plaintiff does not explain how Regulation S-X could supersede the Supreme Court's clear holding in *Macquarie* that "[p]ure omissions are not actionable under Rule 10b-5(b)." *Macquarie*, 601 U.S. at 260. Nor is plaintiff's cited authority of any help to him. *See*, *e.g.*, *Green v. Maison Solutions Inc.*, 2025 U.S. Dist. LEXIS 62541, at *8 n.6 (C.D. Cal. Mar. 31, 2025) (discussing 17 C.F.R. § 210.4-01(a)(1) in the context of Section 11 claim, which unlike Section 10(b), creates liability for pure omissions). Accordingly, plaintiff fails to show his Item 404 and GAAP allegations state a claim under Section 10(b).

**D.    The Alleged Failure to Disclose Contingent Losses Under GAAP Fails**

The Complaint alleges defendants also violated a duty to disclose a "loss contingency associated with the SEC and DOJ investigations" under GAAP. (Complaint ¶ 127.) Defendants demonstrated that this theory fails because, as with plaintiff's other GAAP-based theory, the Complaint fails to specifically identify any "affirmative statements made misleading" by the Company's alleged non-disclosure of contingent losses. (Mot. at 15.) In his opposition, plaintiff ignores this argument,

---

[7] Plaintiff's attempt to avoid the impact of *Macquarie* by belatedly identifying a statement supposedly made misleading by the alleged omission under Item 404 and GAAP also makes no difference to whether his claim survives, as defendants have already demonstrated that the Complaint fails to allege falsity as to that statement because it does not plead facts with the requisite particularity showing the allegedly omitted "related party transactions" actually took place. (*See* Section II.B.1, *supra*; *see also* Mot. § IV.B.1.)

-12-

thus conceding its applicability. Instead, plaintiff's only response is that because the Complaint alleges Wiederhorn had knowledge of the "illicit self-dealing payments," the possibility of a loss from a government claim was "more than remote," thus triggering ASC 450's requirement to disclose the contingent loss. (Opp. at 13.) But plaintiff does not even apply this standard correctly, as he ignores that where, as here, there has been no manifestation by a potential claimant (*i.e.*, the SEC and DOJ) of an awareness of a possible claim, disclosure is not required unless it is both *probable* a claim will be asserted and there is a reasonable possibility that the outcome will be unfavorable. ASC 450-20-50-6; *Steinberg v. Schmitt Indus., Inc.*, 2024 U.S. Dist. LEXIS 43245, at *18-19 n.2 (D. Or. Feb. 2, 2024). Yet, nowhere does the Complaint allege with particularity that it was probable during the Class Period a claim would be asserted against the Company and that an unfavorable outcome from such a claim was reasonably possible. In fact, the Complaint provides no indication as to when the Company, as opposed to Wiederhorn, became a target of the government investigation, let alone when any defendant became aware of that development. This failure, paired with the Company's clear disclosures about the investigations as they related to Wiederhorn and the subsequent dismissal of the Indictment, doom plaintiff's loss contingency theory.

In sum, plaintiff fails to plead with particularity any contemporaneous facts plausibly showing the falsity of challenged statements.

## III.   THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER

In their opening memorandum, defendants challenged the Complaint's allegations as insufficient to give rise to a strong inference that (1) Kuick knew about the unauthorized Intercompany Loans between FAT Brands and FCCG and (2) any

-13-

SMRH:4909-8500-9495.7                     DEFENDANTS' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

defendant knew during the Class Period that the Company was a target of the U.S. Attorney's investigation.[8]

Plaintiff employs a shotgun approach to persuade the Court that his scienter allegations, when viewed "holistically," pass muster. But even when viewed collectively, the Complaint's allegations do not give rise to a cogent and compelling inference of scienter as required by the PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). First, plaintiff simply aggregates a series of conclusory assertions — such as generalized assertions about access to information, corporate roles, or the "simplicity" of the alleged scheme — none of which, individually or holistically, gives rise to a strong inference that any defendant acted with intent to defraud or with deliberate recklessness. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708–09 (9th Cir. 2012) (mere position or access to records, without particularized allegations showing actual knowledge or conscious disregard, is not enough). Second, plaintiff's speculation that defendants must have known or were reckless in not discovering alleged accounting improprieties, simply because they purportedly had oversight over the Company's response to government investigations, does not bridge the gap between mere negligence and scienter. The PSLRA requires facts alleging an actual intent to mislead, or deliberate recklessness, which is "an *extreme departure* from standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (emphasis added).

---

[8] Plaintiff misstates that defendants concede Wiederhorn's and FAT Brands' scienter as it relates to their alleged "downplaying" of FAT Brands being targeted by the investigation and failure to disclose contingent losses. (Opp. at 15.)

**A.      No Alleged Facts Give Rise to a Strong Inference That Kuick Knew About the Unauthorized Intercompany Loans, Much Less That Loan Proceeds Went To Wiederhorn**

Plaintiff's opposition cannot cure the critical deficiency that the Complaint contains no particularized allegations supporting a strong inference that defendant Kuick had actual knowledge of, or was deliberately reckless in not discovering, the purportedly unauthorized Intercompany Loans that are at the core of plaintiff's theory.[9]

First, plaintiff confirms that he is not alleging Kuick orchestrated or participated in the underlying allegedly undisclosed transactions, or even knew about them contemporaneously. (Opp. at 15.)  Instead, plaintiff argues that Kuick became aware of the loans only at some unspecified time after the government began investigating Wiederhorn, allegedly through his role supervising the Company's document production(s) in response to government investigations. (*Id.*)  But the Complaint does not allege any specific facts actually supporting that Kuick had any role in supervising any document production or response to government inquiries.[10]  Rather, plaintiff relies upon generalities about Kuick's position to assume that he must have at some point during the Class Period become aware of these historical transactions and the circumstances surrounding them.  Such "position-based" or "should have known" theories have been uniformly rejected in the Ninth Circuit as insufficient to plead scienter under the PSLRA's rigorous standard.  *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (where a complaint "relies on allegations that management had an important role in the company but does not contain additional

---

[9] Rosen is not alleged to have any liability with respect to the Company's alleged failure to disclose related party transactions in the 2021 Annual Report or 2022 Prospectus. (Complaint ¶¶ 71, 76.)  To the extent plaintiff shifts his theory, the same arguments herein apply equally with respect to defendant Rosen.  (*See* Mot. at 17 n. 7.)

[10] Plaintiff alleges in the alternative that Kuick "*fail[ed]* to properly review the productions."  (Opp. at 16 (emphasis added).)

-15-

detailed allegations about the defendants' actual exposure to information, it will usually fall short" of the PSLRA standard).  In such cases, the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware.  *Id.*; *see also ESG Capital Partners, LP v. Stratos*, 2013 WL 12131355, at *5 (C.D. Cal. June 26, 2013) (conclusory allegations that defendant "knew about" the alleged misconduct insufficient to allege scienter).

Here, however, no allegations show that upon reviewing such materials Kuick actually discovered or was made aware of the unauthorized nature or true beneficiaries of the Intercompany Loans.  In other words, the Complaint does not contain the necessary allegations regarding Kuick's alleged exposure to information rendering his alleged statements and omissions false or misleading.  The Complaint's allegations thus do not support a *strong* (*i.e.*, cogent and compelling) inference that Kuick knowingly or recklessly intended to mislead investors by failing to disclose a scheme about which the alleged facts do not indicate he knew existed.

Equally unavailing is plaintiff's assertion — raised for the first time in opposition — that Kuick's and Rosen's purported "loyalty" to Wiederhorn or fear of "losing their jobs" support inferences of knowledge or fraudulent intent.  Those arguments cannot even come into play where, as here, the Complaint's allegations do not first show that the defendant had knowledge *to* conceal.

Plaintiff's fallback argument that Kuick and Rosen were at a minimum "reckless" for *not* uncovering the alleged historical misconduct during the course of government responses is mere speculation unsupported by particularized facts.  Such conclusory allegations fall far short of establishing that "danger of misleading buyers or sellers was either known to the defendant or so obvious that the actor must have been aware of it."  *Prodanova*, 993 F.3d at 1106.

**B.      No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation**

Although the opposition argues that defendant sought to "hide the fact that FAT Brands was actually a target of the government investigations" (Opp. at 17), as defendants demonstrated, no allegations in the Complaint actually allege *when* FAT Brands became such a target, much less when specifically any defendant found that out. The opposition, as with the Complaint, fails to point to any particularized allegation in the Complaint that FAT Brands was in reality a target of the U.S. Attorney's investigation at the time any of the challenged statements was made. Instead, plaintiff speculates — without supporting facts — that defendants should have known that FAT Brands was a target by virtue of their purported roles in document production or oversight of government requests.

Simply occupying an officer or director position, or having some unspecified responsibility for responding to regulatory inquiries (even if actually alleged in the Complaint, which it is not), cannot establish that any defendant knew FAT Brands had become a target of the government's criminal investigation. Plaintiff points to no communication, document, government notice or former employee allegation suggesting the Company was a target at any earlier point. Nor does plaintiff identify a single meeting, correspondence or specific event during the Class Period at which any defendant was apprised that the investigation had shifted focus to the Company itself, as opposed to Wiederhorn individually. Absent any well-pled, particularized facts indicating that any defendant actually knew or deliberately disregarded information about the Company's status as a target, plaintiff cannot satisfy the heightened scienter requirement under the PSLRA.

Moreover, Kuick's and Rosen's purported scienter is based upon the Company's purported "role in funneling money." (Complaint ¶¶ 75, 81, 88, 91, 94.) The Complaint, however, contains no facts showing the Company had any active or knowing role in "funneling" money to FCCG and ultimately to Wiederhorn. Nor

-17-

does it allege any particularized facts from which the Court could infer that Kuick or Rosen knew about any such role. Naturally, if there are no facts showing Kuick or Rosen actually knew or even suspected the Company had such a role, they cannot have acted with the requisite scienter.

In sum, the Complaint's scattered allegations — taken together or separately — do not permit (let alone compel) an inference of scienter that is "at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 324.

## IV. THE COMPLAINT FAILS TO STATE A CONTROLLING PERSON LIABILITY CLAIM FOR VIOLATION OF SECTION 20(a)

Defendants demonstrated that plaintiff failed to plead facts sufficient to state a controlling person claim under Section 20(a) by failing to plead both (1) a primary violation of the securities laws and (2) facts showing that Kuick or Rosen had the actual power to control the primary violator. (*See* Mot. at 21.) With respect to the first element, as explained above, plaintiff's allegations of falsity and scienter fall far short. Plaintiff wholly ignores the second element and incorrectly assumes that if he adequately alleges a primary violation by FAT Brands (he does not), then he automatically "also alleges Section 20(a) claims against the Individual Defendants." (Opp. at 19.) Although it is not necessary to plead scienter to state a Section 20(a) claim, plaintiff still must plead facts showing that the defendant, at a minimum, had the ability to control the violator's alleged fraudulent act. As defendants argued (and as plaintiff failed to address in his opposition), the Complaint does not do so.

## V. CONCLUSION

The Court should grant the motion to dismiss the Complaint.

Dated: August 18, 2025        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____
        */s/ John P. Stigi III*
        JOHN P. STIGI III
        POLLY TOWILL
        Attorneys for Defendants

-18-

## CERTIFICATION OF WORD COUNT

The undersigned, counsel of record for FAT Brands, Inc., Andrew Wiederhorn, Kenneth Kuick and Robert Rosen, certifies that this brief contains 5,649 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  August 18, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____
                    */s/ John P. Stigi III*
                    JOHN P. STIGI III
                    POLLY TOWILL
                    Attorneys for Defendants