UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No. CV 24-4775-MWF (MAAx)** **Date: October 15, 2025**

Title: Mitchell Kates, et al. v. FAT Brands Inc., et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk: Rita Sanchez | Court Reporter: Not Reported |
| Attorneys Present for Plaintiff: None Present | Attorneys Present for Defendants: None Present |

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS [29]; REQUEST FOR JUDICIAL NOTICE [29-1]; SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE [33-1]

Before the Court is Defendants' Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws (the "Motion"), filed by Defendants FAT Brands (the "Company"), Andrew A. Wiederhorn, Kenneth J. Kuick, and Robert G. Rosen (collectively "Defendants") on June 6, 2025. (Docket No. 29). Plaintiff Mitchell Kates ("Lead Plaintiff" or "Plaintiff") filed an Opposition on July 21, 2025. (Docket No. 32). Defendants filed a Reply on August 18, 2025. (Docket No. 33).

Also before the Court is a Request for Judicial Notice ("RJN"), filed by Defendants on June 6, 2025. (Docket No. 29-1). Plaintiff stated his opposition to this RJN in the Opposition filed on July 21, 2025. (Docket No. 32 at 4-5). Defendants then filed a Supplemental Request for Judicial Notice ("Supplemental RJN") on August 18, 2025. (Docket No. 33-1).

The Court has read and considered the Motion, RJN, and Supplemental RJN and held a hearing on **September 15, 2025**.

The Request for Judicial Notice and Supplemental Request for Judicial Notice are **GRANTED**.

On the Motion to Dismiss, the Court rules as follows:

- The Motion is **GRANTED** as to the challenged statements regarding government investigations as they constitute opinion or forward-looking statements.

- The Motion is **GRANTED** as to the challenged statements regarding related party transactions in the 2021 Annual Report and the Risk Disclosures in the 2022 Prospectus for failure to sufficiently plead falsity.

- The Motion is **GRANTED** as to the § 20(a) claims because the Court dismisses the § 10(b) claims.

Plaintiff is further granted leave to amend the Amended Complaint in light of these rulings.

## I. BACKGROUND

This is a securities class action brought on behalf of all persons who purchased various types of FAT Brands securities between March 23, 2022, and May 10, 2024, inclusive (the "Class Period"), and were allegedly harmed (the "Class"). (Docket No. 28 ("Amended Complaint") ¶ 1).

### A. Factual Background

On April 7, 2025, Lead Plaintiff filed an Amended Complaint. (*See generally* Amended Complaint). The Court summarizes the allegations in the Amended Complaint as follows:

Defendant Wiederhorn founded and controls the public company Fog Cutter Capital Group Inc. ("FCCG"). (Amended Complaint ¶ 29, 36). In August 2003, FCCG acquired the company Fatburger, and Wiederhorn became the CEO and President of Fatburger, in addition to his role as Chairman and CEO of FCCG. (*Id.* ¶ 36). Due to a series of events not germane to this Motion, Fatburger filed for Chapter 11 bankruptcy protection in April 2009. (*Id.* ¶ 29).

On March 21, 2017, FAT Brands was formed as a Delaware corporation to continue the existing Fatburger business and acquire new brands. (*Id.* ¶ 41). In the FAT Brands IPO, FAT Brands sold two million shares of common stock, though FCCG retained 80% of the common stock and thus voting control over FAT Brands. (*Id.* ¶ 48).

In turn, FAT Brands is a restaurant franchisor that holds the rights to several restaurant brands. (*Id.* ¶¶ 25-26). FAT Brands generates revenue by collecting franchise fees and ongoing royalty fees from franchisees who own and operate restaurants under these brands. (*Id.* ¶ 25).

The Complaint then recounts various details that Plaintiff gathered from another complaint filed in the shareholder derivative action *Harris v. Junger*, No. 2021-0511-SG, filed in the Delaware Chancery Court. At this point, the Court makes no determination about the appropriateness of relying on these allegations in the Amended Complaint. For purposes of analyzing the Motion, however, the Court will recount the key facts that Plaintiff relies upon and repeats in its Complaint:

Though there were other alleged acts of malfeasance, the primary allegations in the *Harris* complaint revolved around FCCG's (controlled by Wiederhorn) repeated cash advances to Wiederhorn personally, in the form of personal loans at a 5% interest rate. (*Id.* ¶ 56). In order to fund these personal loans, FCCG had to borrow from FAT Brands. (*Id.* ¶ 57). As a result, FAT Brands extended credit to FCCG pursuant to an Intercompany Promissory Note dated October 20, 2017, with an initial principle balance of $11,906,000, which was then distributed to FCCG and certain of its subsidiaries. (*Id.*). The *Harris* complaint alleged that as of December 29, 2019, the outstanding balances on FCCG's loans to Wiederhorn were $9,155,000. (*Id.*). In 2020, additional credit was extended to FCCG from FAT Brands, and the balance receivable reached nearly $27 million. (*Id.* ¶ 58).

According to the *Harris* complaint, there was never a business justification for these loans. (*Id.* ¶ 59). The credit agreement between FCCG and FAT Brands then led FAT Brands to enter into a financing agreement with another fund, carrying a 20% interest rate, as compared to the 5% interest rate that the FCCG loans carried. (*Id.* ¶ 60).

Wiederhorn then caused FAT Brands and FCCG to merge in December 2020. (*Id.* ¶¶ 61, 63). The Complaint contains conflicting assertions about the timeline, but at some point either prior to or in the months following the merger, Wiederhorn caused FCCG to forgive the bulk of his personal loans without payment. (*Id.* ¶¶ 64, 66). This forgiveness still left FCCG owing nearly $40 million to FAT Brands through intercompany loans. (*Id.* ¶ 66). The merger between FCCG and FAT Brands left the company indebted, including close to $20 million in negative working capital, of which a large portion was debt. (*Id.* ¶ 68). As a result, the Company reported a net loss of $14.9 million in 2020, and a net loss of $31.6 million in 2021. (*Id.* ¶ 70).

At some point in 2021, the United States Department of Justice and the Securities and Exchange Commission launched investigations into the merger between FCCG and FAT Brands, and into Wiederhorn's role in the merger, specifically. (*Id.* ¶ 74). The investigation resulted in an indictment against FAT Brands and Wiederhorn, which was announced on May 10, 2024. (*Id.* ¶ 100). The Indictment stated that Defendant Wiederhorn circumvented the Intercompany Revolving Credit Agreement created in April 2020 that required additional loans from FAT Brands to FCCG to be subject to the approval of FAT Brands' board of directors in advance on a quarterly basis. (*Id.* ¶¶ 99, 103). In the second, third, and fourth quarters of 2020, the Indictment alleged that FAT Brands advanced millions of dollars over the approved limit for disbursement to FCCG. (*Id.* ¶ 103). The SEC also announced charges on March 10, 20204 against Defendants FAT Brands and Wiederhorn for defrauding investors by funneling $9.6 million from FAT Brands to FCCG and then to Defendant Wiederhorn. (*Id.* ¶ 105).

The announcement of these charges caused the price of FAT Brands shares to drop by 27.7% on March 10, 2024. (*Id.* ¶ 104).

Based on the above allegations, Plaintiff asserts two claims for relief against Defendants for violations of: (1) Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5; and (2) Section 20(a) of the Exchange Act. These violations emanate from statements and/or omissions made by the Company in required reports.

In general, the statements or omissions fall into two buckets: statements regarding related party transactions between FAT Brands, FCCG, and Wiederhorn; and

statements regarding the existence of a DOJ and SEC investigation. The Court will copy the challenged statements below as they appear in the Amended Complaint for ease of reference.

### 1. Challenged Statements Regarding Related Party Transactions

#### a. 2021 Annual Report, Form 10-K filed March 23, 2022

"Since December 29, 2019, the Company has engaged in certain transactions with Fog Cutter Capital Group Inc., which, prior to December 24, 2020, was the 81.5% parent of the Company. Descriptions of such transactions are included under Notes 3, 10, 12, 13, 15 and 19 to the audited consolidated financial statements of the Company included under Item 15 of this Form 10-K, which information is incorporated herein by this reference. In addition, certain family members of Andrew Wiederhorn are employed by the Company, as discussed above under "Part III, Item 10. Directors, Executive Officers and Corporate Governance / Family Relationships." ***Other than such transactions, since December 29, 2019, there has not been, nor is there currently proposed, any transaction or series of similar transactions to which we were or will be a party:***

- ***in which the amount involved exceeds $120,000; and***
- ***in which any director, executive officer, shareholder who beneficially owns 5% or more of our common stock or any member of their immediate family had or will have a direct or indirect material interest.***

**NOTE 15. RELATED PARTY TRANSACTIONS**
Subsequent to the Merger with FCCG on December 24, 2020 (Note 3), there have been no reportable related party transactions with nonconsolidated related entities.

Prior to the Merger, the Company reported the following related party transactions:

*Due from Affiliates*

On April 24, 2020, the Company entered into an Intercompany Revolving Credit Agreement with FCCG ("Intercompany Agreement"). The Company had previously extended credit to FCCG pursuant to a certain Intercompany Promissory Note (the "Original Note"), dated October 20, 2017, with an initial principal balance of $11.9 million. Subsequent to the issuance of the Original Note, the Company and certain of its direct or indirect subsidiaries made additional intercompany advances. Pursuant to the Intercompany Agreement, the revolving credit facility was subject to an interest at a rate of 10.0% per annum, had a five-year term with no prepayment penalties, and had a maximum capacity of $35.0 million. All additional borrowings under the Intercompany Agreement were subject to the approval of the Board of Directors, in advance, on a quarterly basis and were subject to other conditions as set forth by the Company. The initial balance under the Intercompany Agreement totaled $21.1 million including the balance of the Original Note, borrowings subsequent to the Original Note, accrued and unpaid interest income, and other adjustments through December 29, 2019. Effective with the Merger with FCCG, the Intercompany Agreement was terminated and intercompany balances were eliminated in consolidation."

(Amended Complaint ¶ 72 (emphasis in original)).

**b. Form 424B5 Prospectus Supplement to the Prospectus ("2022 Prospectus)**

***"We are controlled by Fog Cutter Holdings LLC, whose interests may differ from those of our public stockholders.***

Fog Cutter Holdings LLC, which is controlled by our President and Chief Executive Officer, Andrew Wiederhorn, controls approximately 55.5% of the voting power of our Class A Common Stock and Class B Common Stock (which we refer to together as our "Common Stock") collectively, and as such, Fog Cutter Holdings LLC has significant influence over our corporate management and affairs, and is able to control virtually all matters requiring stockholder approval, including the election of directors and significant corporate transactions. It is possible that the interests of Fog Cutter

Holdings LLC may, in some circumstances, conflict with our interests and the interests of our other stockholders."

(Amended Complaint ¶ 77).

**2. Challenged Statements Regarding Investigation**

**a. 2021 Annual Report, Form 10-K filed March 23, 2022**

"Government Investigations

The U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission informed the Company in December 2021 that they have opened ***investigations relating to the Company and our Chief Executive Officer, Andrew Wiederhorn, and are formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between these entities and Mr. Wiederhorn, and compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family. The Company is cooperating with the government regarding these matters, and we believe that the Company is not currently a target of the U.S. Attorney's investigation.*** At this early stage, the Company is not able to reasonably estimate the outcome or duration of the government investigations."

(Amended Complaint ¶ 74 (emphasis in original)).

**b. 2022 Annual Report, Form 10-K filed February 24, 2023**

"Government Investigations

In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had ***opened investigations relating to the Company and our Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December***

***2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities. Our Board of Directors has formed a Special Review Committee (the "SRC") comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations,*** reach findings and make a recommendation to the Board with respect to these matters. The SRC is authorized to review such documents and interview such persons, and retain legal counsel and other consultants on behalf of the Company, as the SRC deems necessary or appropriate to complete its review. ***The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC. We believe that the Company is not currently a target of the U.S. Attorney's investigation.*** At this stage, we are not able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations."

(Amended Complaint ¶ 80 (emphasis in original)).

**c. Form 10-Q for 1Q of 2023 filed May 9, 2023 ("1Q 2023 10-Q)**

"Government Investigations

In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had ***opened investigations relating to the Company and our former Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities. From August 23, 2022 until March 28, 2023, our Board of Directors maintained a Special Review Committee (the "SRC") comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations. The Company intends to cooperate with the U.S. Attorney***

***and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC. We believe that the Company is not currently a target of the U.S. Attorney's investigation.*** At this stage, we are not able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations."

(Amended Complaint ¶ 87 (emphasis in original)).

**d. Form 10-Q for 2Q of 2023 filed August 4, 2023 ("2Q 2023 10-Q)**

"Government Investigations

In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had ***opened investigations relating to the Company and our former Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities***. From August 23, 2022 until March 28, 2023, our Board of Directors maintained a Special Review Committee (the "SRC") comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations***. The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC. We believe that the Company is not currently a target of the U.S. Attorney's investigation***. At this stage, we are not able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations."

(Amended Complaint ¶ 90 (emphasis in original)).

**e. Form 10-Q for 3Q of 2023 filed October 31, 2023 ("3Q 2023 10-Q")**

"Government Investigations

In December 2021, the U.S. Attorney's Office for the Central District of California (the "U.S. Attorney") and the U.S. Securities and Exchange Commission (the "SEC") informed the Company that they had ***opened investigations relating to the Company and our former Chief Executive Officer, Andrew Wiederhorn, and were formally seeking documents and materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr. Wiederhorn or his family from those entities.*** From August 23, 2022 until March 28, 2023, our Board of Directors maintained a Special Review Committee (the "SRC") comprised of directors other than Mr. Wiederhorn to oversee a review of the issues raised by the U.S. Attorney and SEC investigations. ***The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC. We believe that the Company is not currently a target of the U.S. Attorney's investigation***. At this stage, we are not able to reasonably estimate or predict the outcome or duration of either of the U.S. Attorney's or the SEC's investigations."

(Amended Complaint ¶ 93 (emphasis in original)).

## II. REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Defendants filed a Request for Judicial Notice ("RJN") with their Motion on June 6, 2025, and a Supplemental Request for Judicial Notice ("Supplemental RJN") with their Reply on August 18, 2025. (Docket Nos. 29-1, 33-1).

In the RJN and Supplemental RJN, Defendants ask that the Court consider documents attached as Exhibits A-D and Exhibit E, respectively. These include:

1. The Verified Stockholder Derivative Complaint filed in *Harris v. Junger*, No. 2021-0511-SG (Del. Ch.), Exhibit A;

2. The Indictment filed in United States v. Wiederhorn et al., No. 2:24-cr00295-RGK (C.D. Cal.), Exhibit B;

3. The Complaint filed in SEC v. FAT Brands, Inc. et al., No. 2:24-cv03913-MCS-AGR (C.D. Cal.), Exhibit C;

4. The Company's annual report for the fiscal year ended December 26, 2021, filed on March 23, 2022, Exhibit D;

5. The order dismissing the Indictment filed in *United States v. Wiederhorn,* No. 2:24-cr-002950-RGK (C.D. Cal.), ECF No. 136, Exhibit E.

Defendants request that the Court consider Exhibits A through C under the incorporation by reference doctrine, and request that the Court take judicial notice of Exhibits A through E under the Federal Rule of Evidence 201. (RJN 1-2; Supplemental RJN 1-2).

Plaintiff opposes the RJN with respect to Exhibits A through D to the extent that the Court should consider the documents for the truth of the contents therein or should deem it appropriate to incorporate the documents into the Amended Complaint. (Opp. at 4-5). The Court will consider those objections extended to Exhibit E, filed with Defendants' Reply. Plaintiff further expressly opposes the request for judicial notice of the 2021 Annual Report, Exhibit D, for the truth of the matters contained therein. (*Id.* at 5).

Pursuant to Rule 12(d), "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion" without converting the motion to one for summary judgment. *See* F.R.C.P. 12(d); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). An exception to this general rule exists for (1) materials that are attached to or necessarily relied upon in the complaint, and (2) matters of public record. *Id.* at 688-89; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in assessing securities fraud claims, "courts must consider the

complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

The Court determines that Exhibits A through C are incorporated by reference given that Plaintiff repeatedly relies on the allegations contained therein in his Amended Complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

The Court also takes judicial notice of Exhibit E because it is a matter of public record and is not subject to reasonable dispute.

Plaintiff expressly opposes the request for judicial notice as it pertains to Exhibit D, the 2021 Annual Report. The Court first notes that Defendant requested only that the Court take ***judicial notice*** of the 2021 Annual Report, not that the Court incorporate the document by reference. (*See* RJN). This distinction matters given that incorporation-by-reference allows the Court to consider the document for the truth of the matter asserted therein, while request for judicial notice does not allow this consideration at the pleading stage. *See Khoja*, 899 F.3d at 1003. Later in their Motion, however, Defendants reference the 2021 Annual Report, assert that it is "expressly incorporated by reference," and asks the Court to consider the truth of the matter asserted therein. (Motion at 12).

Given this later argument by Defendants, the Court will consider Defendants' request as one for incorporation-by-reference. The Court accordingly finds it appropriate to grant this request.

Plaintiff specifically alleges in his Amended Complaint that statements contained in the 2021 Annual Report were false or misleading, and thus this document forms the basis of one of Plaintiff's claims. Therefore, this scenario does not raise the concerns articulated by the Ninth Circuit in *Khoja*, where the court expressed that documents should not be considered when they "merely create[] a defense to the well-pled allegations in the complaint" and do not form the basis of the complaint. *See* 899 F.3d at 1002-03. And indeed, the *Khoja* court indicated that the doctrine of incorporation-by-reference is expressly geared towards "prevent[ing] plaintiffs from

selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* at 1002. Given that Defendants' argument with respect to the 2021 Annual Report points to information in the document that might call into question Plaintiff's claims, the Court finds it appropriate to incorporate the 2021 Annual Report and consider the document for the truth of the matters asserted therein.

Accordingly, the RJN and Supplemental RJN are **GRANTED**. Exhibits A-D are incorporated by reference, and the Court takes judicial notice of Exhibit E.

## III. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Allegations of fraud must also meet a higher pleading standard. *See* Fed. R. Civ. P. 9(b) (requiring the pleading party to "state with particularity the circumstances constituting fraud or mistake"). It is well-established that "[a]t the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b–5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act []." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). "Thus, a plaintiff must plead falsity with particularity: a plaintiff must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1164 (9th Cir. 2009) (quoting 15 U.S.C. § 78u–4(b)(1)). The PSLRA further requires plaintiffs to plead scienter with particularity: "a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).

## IV. DISCUSSION

### A. Section 10(b) and Rule 10b-5 Violations

To plead a claim under Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78a et seq., and its corresponding SEC regulation, Rule 10b-5, Plaintiff "must allege, (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citation and internal quotation marks omitted).

Defendants argue that Plaintiff's Section 10(b) and Rule 10b-5 claims fail for four reasons: (1) certain statements are opinion and forward-looking statements, so are not actionable; (2) Plaintiff fails to sufficiently plead certain statements' falsity; (3) the alleged Item 404 and U.S. Generally Accepted Accounting Principles ("GAAP") disclosure violations do not state a Section 10(b) claim; and (4) Plaintiff fails to allege facts giving rise to a strong inference of scienter as to any Defendants.

**1. Opinion or Forward-Looking Statements**

Defendants contend that portions of the challenged statements listed in the Amended Complaint are either non-actionable opinion or forward-looking statements protected by the PSLRA safe harbor. (Motion at 8-10). The Court will address each in turn.

**a. Opinion**

Opinions can be non-actionable statements. "An opinion is a belief, a view, or a sentiment which the mind forms of persons or things." *In re QuantumScape*, 580 F. Supp. 3d 714, 738 (N.D. Cal. 2022) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015)). Because a PSLRA violation "require[s] falsity with respect to a material fact, there are substantial limits in applying" PSLRA liability "to a pure statement of honest opinion." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188–89 (9th Cir. 2021) (cleaned up).

Defendants contend that the following statements made in several of Defendant FAT Brands' reports are non-actionable opinion:

- "We believe that the company is not currently a target of the U.S. Attorney's investigation."
    - This statement appears in the 2021 Annual Report, the 2022 Annual Report, the 1Q 2023 10-Q, the 2Q 2023 10-Q, and the 3Q 2023 10-Q. (*See* Amended Complaint ¶¶ 74, 80, 87, 90, 93).

Defendants rely on the Supreme Court's opinion in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, which held that opinions are only actionable

when the "investor [] identif[ies] particular (and material) facts going to the basis for the issuer's opinion…whose omissions make the opinion statement at issue misleading to a reasonable person." (*See* Motion at 9); *see* 575 U.S. 175, 194 (2015). Defendants argue that Plaintiff has not alleged any particularized facts suggesting the absence of a factual basis for this opinion statement. (Motion at 9). Defendants further argue that Plaintiff has adduced no facts showing that, at the time the statement was made, FAT Brands actually was a target of the DOJ investigation, rendering the statement patently false. (*Id.*)

Plaintiff responds that Defendant Wiederhorn would have known that the Company was "guilty of the conduct the government was investigating," or at the least, would have known that "his actions exposed himself and FAT Brands to government action." (Opp. at 10). Plaintiff further argues that Wiederhorn's knowledge of wrongdoing should be imputed to the Company because Wiederhorn was the CEO at the time. (*Id.*). Moreover, Plaintiff contends that Defendants Kuick and Rosen as executives of the Company would have been "aware of the Company's exposure to government action" because they "oversaw and reviewed the Company's response" to the investigations. (Opp. at 10-11).

As an initial matter, Plaintiff has offered no allegations that if taken as true would show that FAT Brands was indeed a target of the investigations at the point at which these statements were made, rendering the statement patently false. The Court must therefore turn to the question of whether other facts call into question the factual basis of any of the Defendants' opinions.

First, the Court is not persuaded by Plaintiff's argument with respect to Kuick and Rosen. Plaintiff's allegations that Kuick and Rosen oversaw the Company's response to the investigation does not call into question the basis for the Company's opinion that the Company was not the subject of the investigation. Turning over Company documents in a government investigation into ***Wiederhorn*** would not obviously imply that Kuick and Rosen were aware that the ***Company*** would become a target of the investigation, such that it calls into question the factual basis for the challenged opinion statement. Absent additional facts, the Plaintiff has not shown that

the statements of opinion are undermined by some other factual basis that Kuick or Rosen knew or should have known.

As to Wiederhorn, the allegations still fall short of calling into question the factual basis for the Company's opinion. The Court assumes as true that Plaintiff can prove that Wiederhorn knew that FAT Brands would share in culpability for Wiederhorn's conduct. (*See* Opp. at 10). Even so, the particular statement challenged by Plaintiff is regarding the Company's awareness of ***the existence of an investigation*** into the Company, not whether the Company ***might have any liability*** as to any of the underlying acts being investigated. Again, absent any facts that Wiederhorn or other executives knew that the government's investigation targeted the Company itself when it made these opinion statements, the Court cannot find that the opinion statements are actionable.

However, though Plaintiff does not directly advance this argument, his arguments about Wiederhorn's knowledge of the putatively illegal underlying conduct appear to go to an issue addressed in *Omnicare*: whether FAT Brands' opinion statements contain ***embedded statements of fact that were false***. *See Omnicare*, 575 U.S. at 185-86. The argument would be that the opinion statement not only affirms the "speaker's state of mind . . . but also an underlying fact": that the Company would not face liability. (Opp. at 10 ("Therefore, there were unrevealed facts [about Wiederhorn's knowledge of the Company's liability] that rendered the Company's statement . . . objectively false.") Here, however, Defendant points out that the Company's statement contains the qualifier that it is not "currently" the target of an investigation. (Motion at 8). Accordingly, even under this understanding of Plaintiff's argument, there was nothing in the Company's statement that could be understood to completely eliminate the possibility that the Company would someday face liability or become a target of the investigation.

Accordingly, the Motion is **GRANTED** with respect to this statement as it appears in the various Challenged Statements quoted above.

**b. PSLRA Safe Harbor**

Next, the PSLRA protects certain "forward-looking" statements from liability. *See* 15 U.S.C. § 78u-5(c). The safe-harbor provision is "designed to protect companies and their officials when they merely fall short of their optimistic projections." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (citation and quotations omitted).

A forward-looking statement is statutorily defined as:

> (A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
>
> (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
>
> (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
>
> (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);
>
> (E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or
>
> (F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. § 78u-5(i)(1).

Defendant argues that the following statement is a forward-looking statement subject to the safe-harbor rule:

- "The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters ..."
  - This statement appears in the 2022 Annual Report, the 1Q 2023 10-Q, the 2Q 2023 10-Q, and the 3Q 2023 10-Q. (*See id.* ¶¶ 80, 87, 90, 93).

Plaintiff argues in response that Defendants' statement was "objectively false" because while Defendants formed a Special Review Committee of the board of directors on August 23, 2022, to oversee the investigations, the Company disbanded the SRC after seven months. (Opp. at 11). Therefore, Plaintiff argues, the Company did not take any meaningful action to address the investigations. (*Id.*). Plaintiff also argues that the replacement of independent directors with Wiederhorn's family members indicates that the statement was false. (*Id.*).

The Court again finds that Plaintiff has not adduced enough facts to supports his argument. Defendants "will not be liable for a false or misleading statement if it is forward-looking and *either* is accomplished by cautionary language *or* is made without actual knowledge that it is false or misleading." *See In re Quality Systems, Inc. Secs. Litigation*, 865 F.3d 1130, 1141 (9th Cir. 2017). Here, the phrasing that the Company "intends to cooperate" is clearly forward looking. The statement will therefore only give rise to liability if it was made with actual knowledge that it is false or misleading, and Plaintiff's allegations that the SRC was disbanded and independent directors were removed is not enough to establish that these forward-looking statements were false. More simply put, the absence of the SRC or independent directors does not indicate on its own that the Company was not cooperating with the investigations.

Therefore, the Motion is **GRANTED** with respect to Plaintiff's claims premised on challenged statements regarding the government investigations.

### 2. Sufficiency of Falsity Allegations

"[T]o properly allege falsity, a securities fraud complaint must . . . specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)) (internal quotation marks omitted). This requirement "prevents a plaintiff from skirting dismissal by filing a complaint with

vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (emphasis in original).

"In the Ninth Circuit, plaintiffs may establish falsity in three ways: 'if (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy.'" *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1175 (N.D. Cal. 2021) (quoting *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)).

Defendants advance several arguments to demonstrate that Plaintiff has failed to plausibly allege the falsity of the challenged statements regarding related party transactions. (Motion at 10-11).

**a. Borrowing from Other Pleadings; Confidential Witnesses**

Defendants argue that Plaintiff has not satisfied the heightened pleading requirements of Rule 9(b) or the PSLRA given that Plaintiff borrows heavily from other complaints in his Amended Complaint. (Motion at 10-11). Defendants cite to several cases where courts have considered similar arguments, though mostly in the context of whether to impose sanctions or strike allegations that are unsupported by the independent investigation of the plaintiff's attorneys. *See, e.g., In re Connetics Corp. Securities Litigation*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008); *Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002).

In response, Plaintiff presents several cases that support the use of pleadings and government investigations in its Amended Complaint, and the Court finds these cases persuasive. *See Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351, *4 (S.D.N.Y. Aug. 8, 2014) ("There is no absolute rule barring a private plaintiff from relying on government pleadings and proceedings in order to meet the rule 9(b) and PSLRA thresholds."); *In re Fannie Mae 2008 Securities Litigation*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) ("Indeed, 'it makes little sense to say that information from

… a study or investigation—which the complaint could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint.") (cleaned up).

The Court thus notes as a general matter that Plaintiff can rely on other complaints and proceedings in order to meet Rule 9(b) and PSLRA requirements. Defendants' arguments are rejected to the extent they take issue with this practice. (*See* Motion at 11). At the hearing, however, Defendants argued further that to the extent Plaintiff seeks to borrow from other complaints, Plaintiff should incorporate detailed allegations into his own complaint in order to meet the heightened pleading standard under Rule 9(b) or the PSLRA. Defendants particularly took issue with Plaintiff's incorporated allegations to the extent that the facts underlying the incorporated complaints have changed over time, such as with respect to the now-dismissed Wiederhorn indictment. (Reply at 7-8).

The Court does not find this argument to be dispositive of this Motion. Obviously, at the time Plaintiff filed the current Amended Complaint, the indictment against Wiederhorn had not yet been dismissed. Plaintiff will thus need to reckon with any consequences of that dismissal, if any, in any further amended complaint. And Defendants did not specify in its Motion or at the hearing any other specific factual developments that might affect the sufficiency of Plaintiff's claims. Therefore, to the extent that Plaintiff fails to allege his claims with requisite particularity in any amended complaint, or fails to acknowledge critical fact developments that contradict the incorporated allegations, Defendants may raise those objections on any renewed motion to dismiss.

Similarly, Defendants' arguments are not dispositive regarding the lack of confidential witnesses supporting Plaintiff's allegations. (Motion at 12). While it may be a "red flag" that Plaintiff's Amended Complaint did not cite to information from any confidential witnesses, the case law cited by Defendants appears to cite this factor as just one additional reason that the Amended Complaint did not satisfy Rule 9(b) or the PSLRA, rather than as a dispositive reason. *See Carr v. Zosano Pharma. Corp.*, 0-cv-07625-EMC, 2021 WL 3913509, *10 (N.D. Cal. Sept. 1, 2021) (calling confidential witnesses one of the "hallmarks of a potentially viable securities claim").

Therefore, in the absence of more specifics as to how these allegations fail to meet the pleading requirements of Rule 9(b) or the PSLRA, the Court declines to dismiss any of Plaintiff's claims on these bases.

**b. Whether the Transactions Were Actually Undisclosed**

Finally, Defendants argue that Plaintiff fails to plead falsity of the challenged statements regarding the related party transactions because the Complaint fails to identify what related party transactions took place that should have been, but were not, disclosed. (Motion at 12). Defendants point specifically to "Notes" contained elsewhere in the 2021 Annual Report that suggest that the related party transactions ***were disclosed*** by the Company, and fault Plaintiff for failing to explain why these disclosures would make the challenged statements not misleading. (Motion at 12).

Plaintiff responds that he has sufficiently alleged the existence of a related party transaction that was not disclosed given his allegations that FAT Brands loaned approximately $9.6 million to FCCG in 2020, citing to portions of his Amended Complaint. (Amended Complaint ¶¶ 5, 103, 105). These paragraphs state allegations that:

- ¶ 5: "[T]he Company did not report 'loans' of approximately $9.6 million"
- ¶ 103: There were some amounts of "advanced" loans in 2020 that went over the amounts authorized by the board under the Intercompany Revolving Credit Agreement; and
- ¶ 106: The SEC complaint "charged FAT Brands and Wiederhorn with funneling approximately $9.6 million from FAT Brands to FCCG and, ultimately, Defendant Wiederhorn."

As an initial matter, the Court notes that the amounts cited in paragraph 103 do not add up to $9.6 million, so it is unclear whether Plaintiff intends for these amounts to be subsumed into Plaintiff's claim regarding undisclosed related party transactions or whether these facts are a separate basis for a claim under § 10(b). (*See* Amended Complaint ¶ 103). Looking to the Amended Complaint, it appears that these

allegations of unauthorized advances are used to bolster the challenges to statements regarding the government investigation. (*See id.* ¶ 99). Accordingly, the Court will not consider them as demonstrating the falsity of statements regarding related party transactions.

While the allegations in paragraphs 5 and 106 may be sufficient to state that there was an undisclosed loan of $9.6 million, these allegations fall short of the specificity required by the PSLRA. Under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiff has satisfied the first requirement by identifying the misleading statements as those appearing in the 2021 Annual Disclosure. (Amended Complaint ¶ 72). None of these allegations, however, adequately address the fact that some related party transactions ***were*** disclosed in the Annual Report, nor address why those disclosures were not sufficient to make the later statement misleading or false.

While Plaintiff cautions the Court against allowing Defendants to refute a factual allegation at the pleading stage, this ambiguity arises on the face of the challenged statement itself, as it is quoted by Plaintiff in the Amended Complaint. And nothing in the pleading rules prevents the Court from drawing on its common sense to assess the plausibility of a claim. *See Iqbal,* 556 U.S. at 663-64. The challenged statement excerpted by Plaintiff from the 2021 Annual Disclosures states explicitly that:

> Since December 29, 2019, the ***Company has engaged in certain transactions with Fog Cutter Capital Group Inc.,*** which, prior to December 24, 2020, was the 81.5% parent of the Company. ***Descriptions of such transactions are included under Notes 3, 10, 12, 13, 15 and 19*** to the audited consolidated financial statements of the Company included under Item 15 of this Form 10-K, which information is incorporated herein by this reference.
>
> (Amended Complaint ¶ 72) (emphasis added).

Without reckoning with this language in the immediately preceding sentences, Plaintiff then rests his Section 10(b) claim with respect to the 2021 Annual Report on the statement:

> ***Other than such transactions,*** since December 29, 2019, there has not been, nor is there currently proposed, any transaction or series of similar transactions to which we were or will be a party…

(*Id.*) (emphasis added).

Nowhere does Plaintiff explain why the above statement is misleading in light of the plain indication in the prior sentence that some related party transactions were disclosed in other parts of the very same Form 10-K.

As recounted above, the purpose of requiring a particularized showing of falsity is that it "prevents a plaintiff from skirting dismissal by filing a complaint with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (emphasis in original). Without rebutting the first portion of the statement in the 2021 Annual Report, Plaintiff falls short of the pleading requirement that requires him to state with specificity the reasons why the challenged statements are misleading. *See* 15 U.S.C. § 78u-4(b)(1).

Accordingly, the Motion is **GRANTED** with respect to the statement in the 2021 Annual Report regarding related party transactions. Plaintiff has not pled this statement's falsity with the requisite specificity.

**c. Risk Disclosures**

Relatedly, Defendants next argue that the allegations in the Complaint are insufficient to establish the falsity of the Risk Disclosures in the 2022 Prospectus for the same reasons. (Motion at 13). At the hearing, Defendants argued that Plaintiff has failed to allege the falsity of the Risk Disclosure's statement that FCCG's interests "may differ from those of our public stockholders." Defendants argue that Plaintiff has

not established falsity of this statement because Plaintiff premises this claim merely on alleged instances of undisclosed intercompany loans, but there were many other instances where the Company ***did*** disclose such loans. Accordingly, Defendants argue, Plaintiff has not established that the statement is misleading given that Plaintiff has not shown that the 2020 loans were undisclosed.

Similar to the conclusion above, Defendants' argument is persuasive that Plaintiff has not established why the Risk Disclosure statement was misleading in light of the disclosures of other intracompany transactions between FCCG and the Company. Plaintiff must allege with more specificity what transactions went undisclosed, as explained with respect to the 2021 Annual Report.

Accordingly, the Motion is **GRANTED** with respect to the claims premised on the 2022 Prospectus.

### 3. Sufficiency of Alleged Item 404 and GAAP Disclosure Violations

Defendant next argues that the Supreme Court's opinion in *Macquarie Infrastructure Corp. v. Moab Partners, LP* forecloses Plaintiff's "pure omissions" theories based on a putative duty to disclose information arising from Item 404 and GAAP. (Motion at 14); *see* 601 U.S. 257, 265 (2024).

In *Macquarie*, the Supreme Court held that in contrast to the statutory requirements of § 11(a), there is no language in § 10(b) or Rule 10b-5(b) that provides liability for pure omissions, or the failure to speak on a subject at all, even when there is a duty to disclose information. *Id.* at 264-65. Accordingly, there was no liability for failure to disclose information required by Item 303, unless the plaintiff could show that the "omission renders affirmative statements made [by the issuer] misleading. *Id.* at 265.

#### a. Duty to Disclose Related Party Transactions

Plaintiff first argues in response that both Item 404 and GAAP imposed a duty to disclose related party transactions in the 2021 Annual Report, and accordingly, the

putative failure to disclose the $9.6 million loans to Wiederhorn made the statements in the 2021 Annual Report misleading. (Opp. at 12).

Of course, as discussed above, there are other issues with the alleged falsity of the statements regarding related party transactions in the 2021 Annual Report, and as such Plaintiff has not demonstrated with the requisite specificity that the statements in the 2021 Annual Report are actionable false or misleading statements. The Court accordingly declines to rule on this basis.

**b. Duty to Disclose Contingent Losses**

Next, Plaintiff argues that in discussing the government investigations on the Form 10-K, there was a requirement imposed by GAAP to disclose the contingent losses that may result from the investigations. (Opp. at 13). Given that the Court has already granted the Motion with respect to the challenged statements regarding government investigation, the Court need not rule on this basis.

**4. Sufficiency of Scienter Allegations**

Finally, Defendants argue that Plaintiff has not sufficiently alleged scienter under the PSLRA with respect to all Defendants as to certain statements. (Motion at 16-20). Although not strictly necessary to address these arguments given that the Court finds it appropriate to dismiss the § 10(b) claims on other grounds, discussed above in Section IV.A.1. and A.2., the Court nonetheless addresses the argument here for purposes of Plaintiff's possible amendment.

In order to survive a motion to dismiss, the Complaint must create a strong inference of scienter. *See* 15 U.S.C. § 78u–4(b)(2) (The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). "To [create] a 'strong inference' of scienter under the PSLRA, a complaint must allege that the defendant made false or misleading statements with an intent to deceive, manipulate, or defraud, or with deliberate recklessness." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021) (citation and internal quotation marks omitted). Deliberate recklessness is not

"*mere* recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (citation omitted) (emphasis in original). Instead, it is "an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (citation omitted) (emphasis in original).

The "strong inference" standard "present[s] no small hurdle for [a] securities fraud plaintiff." *Id.* (citation omitted). A reviewing court must "engage in a comparative evaluation [and] . . . consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

**a. Related Party Transactions**

Defendants argue that Plaintiff has not adequately alleged scienter with respect to Kuick and Rosen in making the challenged statements regarding related party transactions. (Motion at 16-18). Defendants point to the dearth of allegations implicating Kuick's role in making the challenged related party transaction statements in the 2021 Annual Report and 2022 Prospectus. (*Id.*). As to Rosen, Defendants point out that Rosen was not CEO at the time the 2021 Annual Report or 2022 Prospectus were issued, and so he could not have any liability with respect to the challenged statements regarding related party transactions. (*Id.* at 17, n.7).

Plaintiff counters that his allegations with respect to Kuick and Rosen charge them with a failure to promptly report the material related party transactions when they became aware of the payments, not that they "had scienter of the payments at the time they occurred." (Opp. at 15).

No matter the theory, the Amended Complaint falls far short of alleging a strong inference of scienter. Plaintiff makes no attempt to explain when Kuick or Rosen would have learned about the alleged related party transactions, and thus cannot allege scienter on the basis that they made any statement with the intent to mislead or were

recklessly indifferent to facts that made these statements false. Instead, Plaintiff attempts to fault Defendants for "incredulously argu[ing] that they did not have knowledge of the material related party transactions." (Opp. at 16). Of course, this argument misses the point that it is Plaintiff's burden to prove scienter, not Defendants'.

Plaintiff also makes some generalized allegations that Kuick and Rosen were motivated to "cover up" the transactions to remain "loyal" to Wiederhorn, and that Rosen and Kuick were somehow complicit in disbanding the SRC and removing the independent directors. (Opp at 17). None of this is availing as Plaintiff has failed to point to any allegations in the Amended Complaint that suggest that Kuick and Rosen actually possessed these motives, or had any role in the disbanding of SRC or firing of the independent directors.

Taken together, Plaintiff has not sufficiently alleged scienter with respect to Kuick and Rosen's role in making the challenged statements regarding related party transactions.

**b. Government Investigations**

Defendants' arguments on scienter with respect to the statements made regarding government investigations seem to rest on the statements that the Court has held to be non-actionable opinion. (*See* Motion at 18-20). The Court will thus not reach these arguments.

**B. <u>Section 20(a) Claim</u>**

The parties agree that Plaintiffs' § 20(a) claim is derivative of its § 10(b) claim. (Motion at 21; Opp. at 19); *see also Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily, . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

Because the Court granted the Motion dismissing Plaintiff's § 10(b) claims, the Motion is **GRANTED** with respect to the § 20(a) claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No. CV 24-4775-MWF (MAAx) Date: October 15, 2025**
Title: Mitchell Kates, et al. v. FAT Brands Inc., et al.

## V. LEAVE TO AMEND

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Amendment of the dismissed claims would not appear to be futile. Plaintiff is thus granted leave to file a Second Amended Complaint.

## V. CONCLUSION

The Motion is **GRANTED** ***with leave to amend***. Plaintiff shall file any Second Amended Complaint no later than **November 7, 2025.** Defendants' response shall be filed no later than **December 1, 2025**. Failure to file a Second Amended Complaint shall be deemed a decision to stand on the allegations of the Amended Complaint and the action will be dismissed.

While there may be a Second Amended Complaint, there will be no Third. Any future successful motion to dismiss will be granted without leave to amend.

IT IS SO ORDERED.