Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL KATES, Individually and on behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FAT BRANDS INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN, <br><br> Defendants. | Case No. 2:24-cv-04775-MWF-MAA <br><br> Hon. Michael W. Fitzgerald <br><br> **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> Hearing Date: January 12, 2026 <br> Time: 10:00 a.m. <br> Department: 5A <br> Trial Date: None Set |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS ......................................................................................2

III. ARGUMENT ..........................................................................................................5

    A.   Standard of Review ......................................................................................5

    B.   The Alleged False and/or Misleading Statements........................................5

    C.   Opposition to Request for Judicial Notice ..................................................5

    D.   Plaintiff Can Rely On Other Pleadings .......................................................7

    E.   The Complaint Pleads Material Falsity........................................................7

        1.   This Case Is About Undisclosed Payments, NOT Loans Pursuant to the IRCA ...........................................................................8

        2.   Additional False Statements Pursuant to Item 404, GAAP, and SOX Sec 402 Violations ...............................................................9

        3.   Defendants' Opinion Statements Are Not Protected .......................11

        4.   Risk Disclosure Was Misleading.......................................................13

    F.   Defendants Failed to Disclose Contingent Losses......................................14

    G.   The Complaint Alleges a Strong Inference of Scienter ..............................15

        1.   A Holistic Analysis Supports an Inference of Scienter ....................15

    H.   The Complaint Adequately Pleads A Section 20(a) Claim..........................20

IV. CONCLUSION......................................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020) ................................................................18

*Erickson v. Corinthian Colleges, Inc.*,
2015 WL 12732435 fn.5 (C.D. Cal. Apr. 22, 2015) ..........................................7

*EVO Brands, LLC v. Al Khalifa Grp. LLC*,
657 F. Supp. 3d 1312 (C.D. Cal. 2023) .............................................................6

*Gammel v. Hewlett-Packard Co.*,
2013 WL 1947525 (C.D. Cal. May 8, 2013).....................................................16

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .............................................................................20

*Green v. Maison Sols. Inc.*,
2025 WL 1009121 fn. 6 (C.D. Cal. Mar. 31, 2025) ..........................................14

*Henning v. Orient Paper, Inc.*,
2011 WL 2909322 (C.D. Cal. July 20, 2011) ...................................................19

*Hsu v. Puma Biotechnology, Inc.*,
213 F. Supp. 3d 1275 (C.D. Cal. 2016)..............................................................6

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015) .................................................................17

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) .............................................................................13

*In re Juniper Networks, Inc. Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008).............................................................20

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) ..............................................................13

ii

*Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Second Amended Complaint*
Case No. 2:24-cv-04775-MWF-MAA

*In re Medicis Pharm. Corp. Sec. Litig.*,
No. CV-08-1821-PHX-GMS, 2010 WL 3154863 (D. Ariz. Aug. 9, 2010)..................19

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .......................................................................................15

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ............................................................................7, 15, 17

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020).............................................................18, 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................5, 6

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
601 U.S. 257 (2024) ...............................................................................................10, 11

*McCool v. Wilson*,
2020 WL 7223252 (C.D. Cal. Oct. 28, 2020) ...............................................................10

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016) ....................................................................13, 17

*Middlesex Retirement System v. Quest Software, Inc.*,
2008 WL 7084629 (C.D. Cal. July 10, 2008) .................................................................9

*Miken Sales, Inc. v. Diamond State Insurance Company*,
2007 WL 9706564 (C.D. Cal. Apr. 23, 2007)..................................................................5

*New Mexico State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) ......................................................................................20

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ..........................................................................................5

*Nordell Int'l Res., Inc. v. Triton Indonesia, Inc.*,
139 F.3d 906 (9th Cir. 1998) ..........................................................................................6

*Oh v. Hanmi Financial Corporation*,
621 F.Supp.3d 1075 (C.D. Cal. 2022).............................................................................9

iii

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ..................................................................................11

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) .......................................................................20

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .......................................................................15

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) .......................................................................15

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009) .....................................................................13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ...........................................................................5, 8, 15

*United States v. Reyes*,
    660 F.3d 454 (9th Cir. 2011) ..................................................................18, 20

*Van Leeuwen v. Keyuan Petrochemicals, Inc.*,
    et al., 2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014) .......................................7

*Vega v. Jones, Day, Reavis & Pogue*,
    121 Cal. App. 4th 282 (2004)......................................................................10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................8

**Statutes**

15 U.S.C. § 78t(a) ..............................................................................................20

15 U.S.C. § 78u-4(b)(1) .......................................................................................5

15 U.S.C. § 78u-4(b)(1)(B).................................................................................8

**Rules**

Rule 9(b) of the Federal Rules of Civil Procedure ........................................5, 7

iv

**Regulations**

17 C.F.R. § 210.4-01(a)(1)..........................................................................................9, 14

17 C.F.R. § 229.404 .....................................................................................................9, 19

v

Lead Plaintiff Mitchell Kates ("Plaintiff") opposes Defendants'[1] Motion to Dismiss the Second Amended Complaint for Violation of the Federal Securities Laws ("Motion to Dismiss") and states the following:

## I.   INTRODUCTION

This case revolves around Defendants' failure to disclose material related party transactions pursuant to Generally Accepted Accounting Principles ("GAAP") and SEC rules. While the Defendants selectively disclosed certain material related party transactions, their disclosures were incomplete and materially false and misleading. Defendants concealed the most material related party transaction whereby Defendant Wiederhorn used FAT Brands Inc. ("FAT Brands") and Fog Cutter Capital Group Inc. ("FCCG") to funnel money to himself.  To this end, in 2020 FAT Brands transferred $9.6 million to FCCG and, ultimately, Wiederhorn outside of the Intercompany Revolving Credit Agreement ("IRCA"). Ironically, the IRCA was created to prevent Wiederhorn from funneling money to himself through undisclosed related party transactions.

In its annual report for fiscal year 2021 ("2021 10-K"), filed March 23, 2022, FAT Brands revealed that, aside from loans pursuant to a certain Intercompany Promissory Note, there were no other material related party transactions to report as of December 29, 2019. In other words, Defendants hid the $9.6 million related party transaction – which circumvented the IRCA – from investors by failing to disclose it in the 2021 10-K and throughout the Class Period[2].

Additionally, Defendants misrepresented to investors that they were "cooperating" with the government investigations, when in fact Wiederhorn took steps to actively

---

[1] Defendants are FAT Brands Inc. ("FAT Brands"), Andrew A. Wiederhorn ("Wiederhorn"), Kenneth J. Kuick ("Kuick"), and Robert G. Rosen ("Rosen"). Plaintiff cites to the Motion to Dismiss (Dkt. No. 37) as "MTD at __." Plaintiff cites to the Second Amended Complaint ("SAC") (Dkt. No. 36) as "¶__." Unless otherwise noted, emphasis is added and internal quotations and citations are omitted. Any terms not defined herein shall have the same meaning as in the SAC.

[2] The Class Period is from March 23, 2022 to May 10, 2024, both dates inclusive.

hamper investigations. Furthermore, Defendants falsely reassured investors that FAT Brands was not a target of the government investigations, when documents and materials produced to the government would have alerted Defendants that FAT Brands was a target as well.

The Complaint properly alleges falsity and scienter. For falsity, the Complaint alleges that Defendants: (1) violated GAAP, the Sarbanes-Oxley Act of 2002 ("SOX"), and SEC rules by failing to disclose the material related party transactions; (2) issued false and/or misleading risk disclosures; (3) alleged the Company was cooperating with governmental investigations when it was hindering the investigation; and (4) falsely assured investors that the Company was not a target of the government investigations. The Complaint demonstrates a strong inference of scienter. Defendant Wiederhorn had knowledge because he perpetrated the self-dealing payments and hid it from investors. Defendants Kuick and Rosen were aware of the truth as they were responsible, in part, for responding and producing documents to the government. Scienter can further be inferred because Defendants attempted to cover-up the fraud and the nature of Defendants' rules violations was simple.

Ultimately, the truth was revealed when the SEC filed a complaint against, *inter alia*, Defendants FAT Brands and Wiederhorn and the DOJ indicted Defendants FAT Brands and Wiederhorn. On this news, the price of FAT Brands shares dropped $2.08, or approximately 27.7%, to close at $5.42 on March 10, 2024, devastating investors.

## II.    STATEMENT OF FACTS

FAT Brands is a public company that purports to generate revenues by acting as a restaurant brand franchisor, collecting franchise fees and ongoing royalty fees from its franchisees, who actually own and operate the restaurants. In the eyes of its former CEO, however, FAT Brands has served as a personal piggy bank for him and his family. ¶2.

In 2020, Wiederhorn caused FAT Brands to disburse approximately $9.6 million[3] –

---

[3] Defendants' attempt to portray this amount as "less particularized than in the AC" is misguided. Plaintiff repeatedly states throughout the SAC that Wiederhorn pocketed $9.6

or approximately 53% of FAT Brands' revenue for that year – to FCCG and, eventually, into Wiederhorn's own pockets. ¶¶128, 146. Despite this fact, Defendants falsely stated in the 2021 10-K that there were no undisclosed material related party transactions as of December 29, 2019. ¶¶87-97.

On or about April 14, 2020, the Company created the IRCA to curb Wiederhorn's self-dealing payments. Under the terms of the IRCA, any additional loans from FAT Brands to FCCG were subject to the approval of FAT Brands' board of directors in advance on a quarterly basis. ¶¶94, 126. However, Wiederhorn ignored the requirements of the IRCA and continued to secretly funnel money from FAT Brands through FCCG to his own pockets throughout 2020. The $9.6 million self-dealing transfers were outside the scope of the IRCA. ¶¶95, 128. As such, any disclosures concerning loans pursuant to the IRCA did not properly report the self-dealing payments. And even if the IRCA disclosures were sufficient to notify investors of the self-dealing payments – they were not – loans pursuant to the IRCA were only meant for legitimate FCCG businesses purposes, not for Wiederhorn's personal spending.

Put differently, while the Company *disclosed loans pursuant to the IRCA*, those disclosures were insufficient, as *there was another undisclosed stream of money* going from FAT Brands to FCCG and eventually to Wiederhorn's pockets. ¶¶5, 89, 90, 92, 93, 95-97, 100, 128, 132-34, 144-46, 177, 185.

Additionally, Defendants falsely assured investors that the Company was "cooperating with the government" in its investigation and requests for "documents and

---

million in 2020. ¶¶5, 89, 90, 92, 93, 95-97, 100, 128, 132-34, 144-46, 177, 185. The SAC provides sums transferred during the second to fourth quarters in 2020. ¶131. That these amounts add up to less than $9.6 million is not an issue, as they represent a smaller part of the whole amount – indeed, it would only be an issue if the sum was greater than $9.6 million. Here, based on the allegations contained in the SEC Complaint, Plaintiff alleges that particular amounts were transferred from FAT Brands to Wiederhorn throughout 2020. A clearer picture of the sums involved can be provided once discovery – currently stayed pursuant to the PSLRA – starts.

*Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Second Amended Complaint*
Case No. 2:24-cv-04775-MWF-MAA

materials concerning, among other things, the Company's December 2020 merger with Fog Cutter Capital Group Inc., [and] transactions between these entities and Mr. Wiederhorn[.]" ¶¶98, 106, 114, 117, 120, 123. On February 24, 2023, the FAT Brands board announced the creation a Special Review Committee ("SRC") comprised of directors other than Defendant Wiederhorn to oversee a review of the issues raised by the government investigations. ¶80. When the SRC found evidence of Wiederhorn's self-dealing payments, the chairman of the board demanded Wiederhorn's resignation. Wiederhorn retaliated by disbanding the SRC and firing all independent directors. ¶¶111-12, 135, 169, 177.

Defendants continued to downplay the Company's exposure to litigation liability, repeatedly stating that they "believe that the Company is not currently a target of the U.S. Attorney's investigation." ¶¶98, 106, 114, 117, 120. The Company's Risk Factors statement was also misleading by painting the conflict of interest between FAT Brands and FCCG as a hypothetical, when it had already materialized via Defendant Wiederhorn's self-dealing payments. ¶¶102-03. The Company also violated GAAP by, *inter alia*, failing to disclose contingent liability associated with the government investigation. ¶¶153-181.

On May 10, 2024, the SEC announced that it had filed charges against, in relevant part, Defendants FAT Brands and Wiederhorn for defrauding investors (the "SEC Complaint"). ¶127. The SEC Complaint charged FAT Brands and Wiederhorn with funneling approximately $9.6 million from FAT Brands to FCCG and, ultimately, Defendant Wiederhorn. This amount represented approximately 53% of FAT Brands' revenue for that year. ¶¶128, 146. That same day, the U.S. Attorney's Office for the Central District of California issued a press release announcing the indictment of, *inter alia*, Defendants FAT Brands and Wiederhorn (the "Indictment"). ¶136. The Indictment corroborated the findings in the SEC Complaint but, on information and belief, was voluntarily dismissed due to political reasons on August 7, 2025. ¶139, fn.2.

4

## III.   ARGUMENT

### A.   Standard of Review

Dismissal pursuant to Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Courts accept as true all factual allegations and draw all reasonable inferences in plaintiff's favor. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007). Exchange Act claims are subject to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure, which require a plaintiff to specify each misleading statement, the reasons why the statement is misleading, and, if an allegation "is made on information and belief . . . state with particularity all facts on which [the] belief is formed." 15 U.S.C. § 78u-4(b)(1). Courts should not "raise the bar of the PSLRA any higher than that which is required." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 946 (9th Cir. 2003).

### B.   The Alleged False and/or Misleading Statements

Attached hereto as Exhibit 1 is a table summarizing the false and/or misleading statements alleged in the SAC.

### C.   Opposition to Request for Judicial Notice

Plaintiff opposes Defendants' Request for Judicial Notice (Dkt. No. 37-1) insofar as Defendants seek to introduce documents outside the Class Period and/or for the truth of the matter asserted. Specifically, Plaintiff opposes judicial notice of Exhibits E-I[4]. These documents were not referenced in the SAC, fall outside the class period, and do not contain any relevant information as disclosures about the IRCA loans are not relevant here (see *infra* III.E.1.). *Miken Sales, Inc. v. Diamond State Insurance Company*, 2007 WL 9706564, at *2 (C.D. Cal. Apr. 23, 2007) ("[U]nless a Rule 12(b)(6) motion is converted

---

[4] These are 10-Qs for the first through third quarter of 2020, the 2020 10-K, and the 8-K/A filed on March 12, 2021.

into a motion for summary judgment, the court cannot consider material outside of the complaint."); *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1284 (C.D. Cal. 2016) (declining to take judicial notice where webpages were captured outside the relevant time period for the claims); *see also*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. [] Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access."). Therefore, Plaintiff requests that the Court not take judicial notice of Exhibits E-I as they fall outside the scope of the SAC and the Class Period and contain no relevant information.

Additionally, Defendants cannot offer these documents for the truth contained therein to rebut the factual allegations in the SAC. *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1320–21 (C.D. Cal. 2023) ("A court may not take judicial notice of the truth of disputed factual matters at the pleading stage."); *Nordell Int'l Res., Inc. v. Triton Indonesia, Inc.*, 139 F.3d 906 (9th Cir. 1998) ("Nordell requests that this court take judicial notice of the truth of the facts asserted in the documents it offers here. We deny Nordell's request."). Similarly, the Ninth Circuit cautions that "what inferences a court may draw from an incorporated document should also be approached with caution." *Khoja*, 899 F.3d at 1003. It "is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Defendants proffer Exhibits E-I to the Request for Judicial Notice for the truth of its contents to dispute factual allegations in the SAC. This is improper. Accordingly, Plaintiff requests this Court not take judicial notice of Exhibits E-I.

*Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Second Amended Complaint*
Case No. 2:24-cv-04775-MWF-MAA

### D.   Plaintiff Can Rely On Other Pleadings

Defendants once again take issue with Plaintiff's reliance on the SEC Complaint. MTD at 12-13, fn. 8. Defendants vaguely state that Plaintiff's reliance on the SEC Complaint fails to meet Rule 9(b) and PSLRA requirements. Beyond a conclusory statement that the "SEC is not required to satisfy the same level or Rule 9(b) particularity demanded of private plaintiffs," Defendants do not explain how the Complaint does not meet the heightened pleading standards. Indeed, Defendants do not point to any facts that contradict the factual allegations Plaintiff pulled from the SEC Complaint.

Courts routinely allow plaintiffs to rely on and incorporate allegations contained in SEC complaints. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 706–07 (9th Cir. 2012) (allowing the plaintiff to incorporate an SEC Complaint's allegations into its Complaint); *Erickson v. Corinthian Colleges, Inc.*, 2015 WL 12732435, at *5 fn.5 (C.D. Cal. Apr. 22, 2015) ("[T]here is a meaningful difference between citing a government complaint that purports to quote or describe company communications and wholly relying on unproven allegations from another private lawsuit."); *Van Leeuwen v. Keyuan Petrochemicals, Inc.*, et al., 2014 WL 3891351, at *4 (S.D.N.Y. Aug. 8, 2014) ("There is nothing improper about utilizing information contained in an SEC complaint as evidence to support private claims under the PSLRA. Indeed, it makes little sense to say that information from a study or investigation–which the complaint could unquestionably rely on if it were mentioned in a news clipping or public testimony–is immaterial simply because it is conveyed in an unadjudicated complaint.") (quote cleaned up).

Plaintiff relies on the SEC complaint insofar as it served as a corrective disclosure. The SEC Complaint was drafted after the SEC reviewed documents produced by FAT Brands. Relying on corroborated factual allegations contained in a complaint is not improper. Defendants have failed again to demonstrate that Plaintiff's reliance on the SEC complaint is improper. This line of argument should not be credited.

### E.   The Complaint Pleads Material Falsity

To plead falsity under the PSLRA, a plaintiff must "specify each statement [or

omission] alleged to have been misleading [and] the reason or reasons why the statement [or omission] is misleading." 15 U.S.C. § 78u-4(b)(1)(B). The allegations must identify who made the allegedly misleading statements and what statements were misleading, state where and when the statements were made, and explain why the statements were misleading. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Complaint does exactly that.

### 1. This Case Is About Undisclosed Payments, NOT Loans Pursuant to the IRCA

Defendants spill much ink discussing the Company's historic IRCA disclosures. This is misguided and irrelevant. Defendants try to equate the IRCA loans with the undisclosed self-dealing payments alleged in the SAC. MTD at 10-14. As clearly stated in the SAC, the $9.6 million self-dealing payments in 2020 were in contravention of – that is, it was *outside of* – the amounts authorized under the IRCA. ¶¶89, 92, 95, 128-34. At the motion to dismiss stage, the Court must take all factual allegations in the complaint as true. *Tellabs,* 551 U.S. at 322–23. Thus, taking the allegations in the SAC as true, the $9.6 million self-dealing payments were outside the scope of the IRCA. Thus, disclosing payments pursuant to the IRCA does not cure the disclosure defect here – namely the $9.6 million that Wiederhorn pocketed from FAT Brands outside the scope of the IRCA. ¶¶ 89, 92, 95, 128-34. Therefore, disclosures concerning IRCA loans were insufficient to notify the investing public that FAT Brands funded Wiederhorn's personal lifestyle to the tune of $9.6 million in 2020.

Furthermore, the alleged stockholder loan disclosures cited in the MTD only discuss the payment from FCCG to Wiederhorn. MTD at 12, fn. 7. There is no mention in the disclosures that the supposed stockholder loans were actually funded by cash transfers from FAT Brands to FCCG. It is telling that defendants are unable to point to a single instance in FAT Brands' SEC filings that says, "FAT Brands transferred money to FCCG to fund the stockholder loans to Wiederhorn," or any variation thereof. This is because there is no such disclosure. Any attempts to equate the FCCG stockholder loan disclosures

to FAT Brands' own failure to disclose the Wiederhorn payments should be flatly rejected, as the two are not the same. Indeed, these undisclosed self-dealing payments were exactly the sort of behavior the IRCA was meant to curb. Instead, Wiederhorn ignored the requirements of the IRCA and continued to secretly funnel money from FAT Brands to himself.

Defendants also assert that the violation of the IRCA is not relevant because it constitutes a violation of corporate governance provisions. Plaintiff is, frankly, unsure why Defendants raised this point. At no point in the SAC did Plaintiff allege that the violation of the IRCA itself gave rise to his claims. Indeed, the violation of the IRCA is incidental to Plaintiff's claims. Wiederhorn secretly funneled $9.6 million from FAT Brands to himself. This self-dealing payment was not disclosed. ¶¶89, 92, 95, 128-34. That is the crux of the claim here. The fact that Wiederhorn violated the IRCA in doing so is merely incidental to Plaintiff's claim. Plaintiff is not bringing claims on the basis of "internal corporate mismanagement," and therefore Defendant's argument concerning this point is moot.

### 2. Additional False Statements Pursuant to Item 404, GAAP, and SOX Sec 402 Violations

As a preliminary matter, defendants are wrong about Item 404 and GAAP. Defendants had a duty to disclose Wiederhorn's self-dealing payments under both Item 404(a) and GAAP. ¶¶72-84. "Financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. 17 C.F.R. § 210.4-01(a)(1)." *Middlesex Retirement System v. Quest Software, Inc.*, 2008 WL 7084629, at *6 (C.D. Cal. July 10, 2008). "[T]he Ninth Circuit has recognized that alleged GAAP violations may qualify as actionable misrepresentations when they are significant." *Oh v. Hanmi Financial Corporation*, 621 F.Supp.3d 1075, 1084 (C.D. Cal. 2022). Similarly, Item 404(a) of Regulation S-K (17 C.F.R. § 229.404) requires the disclosure of "any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount

involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." Therefore, Defendants are facially wrong in alleging that they had no duty to disclose under these rules.

Furthermore, Defendants created an obligation to fully disclose the truth by volunteering information about related party transactions as of December 29, 2019. ¶88. Put differently, this is not a pure omissions case. Therefore, Defendants' reliance on *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 265 (2024) is misplaced. The SAC identified that, in the 2021 10-K, Defendants volunteered information concerning related party transactions as of December 29, 2019, stating that they disclosed all "transaction or series of similar transactions to which we were or will be a party[.]" This created a duty for Defendants to speak the full truth so as to avoid misleading investors. *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004) ("Even where no duty to disclose would otherwise exist, "where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated."); *McCool v. Wilson*, 2020 WL 7223252, at *11 (C.D. Cal. Oct. 28, 2020) (same).

Because Defendants stated that they had disclosed all related party transactions as of December 29, 2019, they had an obligation to tell the whole truth. And the whole truth was that, aside from intercompany loans pursuant to the IRCA, Wiederhorn had funneled $9.6 million from FAT Brands to himself in 2020. However, the 2021 10-K did not disclose this. Despite allegedly disclosing all related party transactions in "Notes 3, 10, 12, 13, 15 and 19 to the audited consolidated financial statements" in the 2021 10-K, not a single one of those notes disclosed that Wiederhorn pocketed $9.6 million from FAT Brands through FCCG. ¶¶ 88-97. The self-dealing payment, in turn, was a violation of SOX Sec. 402, rendering false the SOX Certification attached to the 2021 10-K.

Defendants are wrong that Item 404 and GAAP did not create a duty to disclose. Furthermore, the Defendants created their own duty to disclose by disclosing, but not fully,

information concerning related party transactions after December 29, 2019. Said failure to disclose violated Item 404 and GAAP. And the undisclosed fraudulent transactions were a violation of SOX Sec. 402, rendering the SOX Certifications attached to the 2021 10-K false. Therefore, Defendants' reliance on *Macquarie* is misplaced and Plaintiff's allegations concerning Defendants' Item 404, GAAP, and SOX Sec. 402 violations strengthen the falsity allegations in the SAC.

### 3.    Defendants' Opinion Statements Are Not Protected

Defendants rely on *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1326 (2015) to argue that their statements concerning whether FAT Brands was a target of the investigation were statements of opinion. However, as Defendants recognize, even opinion statements can be "actionable only if the speaker did not truly hold the opinion or when it misleadingly convey facts regarding how the speaker formed the opinion or the basis for the opinion." MTD at 8; *see also, Omnicare*, 135 S. Ct. 1322 ("Specifically, an issuer's statement of opinion may fairly imply facts about the inquiry the issuer conducted or the knowledge it had. And ***if the real facts are otherwise, but not provided, the opinion statement will mislead by omission.***")

As Plaintiff repeatedly alleged in the SAC, FAT Brands, at the direction of its CEO Wiederhorn, made numerous payments to FCCG for Wiederhorn's personal benefit; the SEC and DOJ were investigating, *inter alia*, the transactions between FAT Brands, FCCG, and Wiederhorn; as part of the investigation, the government agencies requested books and records; in their roles as CEO, co-CEOs, or CFO, Defendants Wiederhorn, Kuick, and Rosen reviewed the production; furthermore, as the mastermind behind the self-dealing scheme, Wiederhorn knew that FAT Brands was guilty of the conduct the government was investigating. ¶¶3-6, 17-23, 98, 106, 114, 117, 120.

Indeed, it beggars belief that the Company would be aware that the government was investigating, in part, "the Company's December 2020 merger with Fog Cutter Capital Group Inc., transactions between those entities and Mr. Wiederhorn, as well as compensation, extensions of credit and other benefits or payments received by Mr.

11

Wiederhorn or his family from those entities" yet not believe itself to be a target of the investigation. At the very least, Defendant Wiederhorn, by virtue of his conduct, knew that his actions exposed himself and FAT Brands to government action. And as the CEO of FAT Brands, his knowledge is imputed to the Company. Therefore, there were unrevealed facts that shows the Company had no basis to "believe that the Company is not currently a target of the U.S. Attorney's investigation".

Likewise, Defendants Kuick and Rosen, as co-CEOs and CFO, oversaw and reviewed the Company's response to the government investigations. Therefore, they were aware of the Company's exposure to government action. And the investigation was into, *inter alia*, Wiederhorn's self-dealing payments that ***looted 53% of FAT Brands' revenue for 2020***. The sheer scale of the amount stolen in 2020 beggars belief that the CFO and co-CEOs were innocently, rather than deliberately recklessly, unaware of the issue by the time of the government investigations. Yet, Defendants Kuick and Rosen continued to state that they believed that FAT Brands was not a target of the government's investigation, despite all evidence to the contrary.

Furthermore, Wiederhorn directed FAT Brands' cash managers to prepare daily reports to aid him in looting FAT Brands. In particular, Defendant Kuick, who was the CFO at all relevant times during the Class Period, had an obligation to aid the investigation and produce the requested documents concerning the self-dealing payments. Defendant Kuick must have known, or was deliberately reckless in not knowing, that the government investigation involved such large portions of the Company's revenue for 2020.

Likewise, Defendants' statements that they "intend[ed] to cooperate with the U.S. Attorney and the SEC" was shown to be objectively false. The SRC was formed on August 23, 2022, comprised of directors other than Defendant Wiederhorn, to oversee a review of the issues raised by the government investigations. ¶106. However, this was just a façade – an attempt to appear compliant and cooperative with the investigations. When the SRC discovered evidence of Wiederhorn's self-dealing payments, FAT Brands' executive

12

chairman of the board called on Wiederhorn to step down or face action from the board. ¶135. Defendant Wiederhorn retaliated by disbanding the SRC, removing all independent directors, and replacing them with cronies and yes-men, further eroding the Company's ability to cooperate with the government. ¶109. Therefore, Defendant Wiederhorn and the Company had no intention of cooperating with the investigation. Indeed, when presented with the opportunity to step aside, Defendant Wiederhorn actively took steps to obstruct the investigation.

### 4.    Risk Disclosure Was Misleading

On November 14, 2022, FAT Brands filed with the SEC a Form 424B5 Prospectus Supplement to the Prospectus dated February 8, 2022 (the "November 2022 Prospectus"). The November 2022 Prospectus contained a "Risk Factors" section purporting to warn investors about the risks in participating in the offering. The Risk Factors stated, in pertinent part, that FAT Brands was controlled by FCCG, "whose interests ***may differ*** from those of our public stockholders." ¶102. The Risk Disclosure statement was misleading because it characterized the conflict of interest as a hypothetical, when in fact the conflict of interest had already materialized in the form of Wiederhorn's undisclosed self-dealing payments. *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949 (9th Cir. 2023) (representing a risk as "purely hypothetical when that exact risk had already transpired" was found to be misleading); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (disclosure of hypothetical risks of product liability claims, with no indication that the risk may already have come to fruition was misleading); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 574–575 (S.D.N.Y. 2016) (misleading legal proceedings statement contained the phase "[Extensive scrutiny by the regulatory agencies] has resulted or may in the future result in regulatory agency investigations, litigation and subpoenas"); *see also In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 817 (C.D. Cal. 2011) (general language about risks inherent in the FDA approval process was not sufficient cautionary language).

Defendants' sole argument that the risk disclosures weren't misleading is that

Defendants had already allegedly disclosed all related party transactions in the form of its IRCA disclosures. As discussed above, the IRCA disclosures were not sufficient to disclose the self-dealing payments, as those occurred outside the scope of the IRCA. Defendants are off the mark that Plaintiff's claims are "premised on this omissions-based statement." SAC at 14. Therefore, Defendants have not sufficiently shown that their risk disclosures were not misleading.

### F.    Defendants Failed to Disclose Contingent Losses

As discussed in the Complaint, Defendants had an obligation to disclose contingent losses stemming from the government investigation into FAT Brands, FCCG, and Wiederhorn. ¶¶153-181. In every 10-K filed during the Class Period, there was a section titled "Commitments and Contingencies", wherein Defendants discussed, *inter alia*, the then-ongoing government investigations. Despite Defendant Wiederhorn's knowledge about the illicit self-dealing payments – which, as previously discussed, is imputed to the Company as well – and Defendants Kuick and Rosen's roles as co-CEOs and CFO in overseeing the Company's response to the government investigations, the Company failed to account for contingent liabilities in accordance with GAAP. Financial statements filed with the SEC are not prepared in accordance with GAAP, they will be "presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1); *Green v. Maison Sols. Inc.*, 2025 WL 1009121, at *8 fn. 6 (C.D. Cal. Mar. 31, 2025).

Given Defendant Wiederhorn's self-dealing payments, the possibility of a loss was more than remote, triggering ASC 450's requirement to disclose the contingent loss. ¶157. Even if Defendants were unable to reasonably estimate the amount of contingent losses, ASC 450 required Defendants to disclose "the nature of the contingency" and state "that such an estimate cannot be made." *Id.*; ASC 450-20-50-3. Therefore, Defendants' failure to account for contingent losses, or to disclose the nature of the contingency and that an estimate cannot be made, rendered Defendants' statements in the "Commitments and Contingencies" section of all 10-Ks false and misleading.

14

### G.    The Complaint Alleges a Strong Inference of Scienter

Scienter is "a mental state that not only covers "intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). "Recklessly turning a 'blind eye' to impropriety is equally culpable conduct under Rule 10b-5." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012). When analyzing scienter, the court must determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 310; *see also S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs*, 551 U.S. at 309-10, 324. Rather, "it must be cogent and at least as compelling as any opposing inference." *Id.* Plaintiffs can plead a strong inference of scienter through circumstantial evidence. *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017).

### 1.    A Holistic Analysis Supports an Inference of Scienter

Scienter allegations must be considered holistically, not individually. *Tellabs*, 551 U.S. at 326. The Complaint's allegations, considered holistically, support a strong inference of scienter by alleging: (1) Defendant Wiederhorn – as the perpetrator of the self-dealing payments – had knowledge of the undisclosed material related party transactions; (2) the SEC and DOJ began investigating, *inter alia*, FAT Brands, FCCG, and Wiederhorn, and certain transactions between these entities and Defendant Wiederhorn; (3) Defendants Kuick and Rosen, by virtue of their positions as co-CEOs and CFO, had access to, and were responsible for supervising the production of, the documents and materials requested by the SEC and DOJ; (4) the amount of money Wiederhorn stole from FAT Brands is of such a scale that it would be an extreme departure from the standards of ordinary care for Kuick and Rosen to not have been

15

aware of it by the time the government investigations were under way and Kuick and Rosen were overseeing the Company's response; (5) Defendant Wiederhorn was not only the mastermind of the undisclosed material related party transactions, but also controlled FAT Brands; (5) Defendants Wiederhorn, Kuick, and Rosen attempted to conceal the fraud, including by creating then disbanding the SRC and misleading investors by stating FAT Brands was not a target of the governmental investigations; and (6) the nature of the GAAP, SEC, and SOX rule violations was simple. ¶¶3-8, 71-121, 183-90.

As a preliminary matter, Defendants do not contest Wiederhorn's – and by extension, FAT Brands' – scienter of the self-dealing payments. Therefore, Defendants have conceded Wiederhorn's and FAT Brands' scienter.

The government investigated Wiederhorn's self-dealing payments. While this action only covers the amount stolen in 2020, the government investigations went as far back as 2017. The government investigations found that: (1) in 2017, Wiederhorn stole *50% of FAT Brands' revenues*; (2) in 2018, Wiederhorn stole *49% of FAT Brands' revenues*; (3) in 2019, Wiederhorn stole *31% of FAT Brands' revenues*; and (4) in 2020, Wiederhorn stole *53% of FAT Brands' revenues*. These figures represent such an overwhelming amount of FAT Brands' *revenues* that it would be an "extreme departure from the standards of ordinary care" for Kuick and Rosen to be unaware of something "so obvious" in the course of responding to the government investigations. *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *17 (C.D. Cal. May 8, 2013) ("Reckless conduct satisfies the scienter standard 'to the extent it reflects some degree of intentional or conscious misconduct.' [] In the scienter context, the Ninth Circuit defines recklessness as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.")

The Company first became aware of the government investigations in December 2021. ¶4. By the start of the Class Period, Defendants had already spent 4 months allegedly cooperating with the government's investigation. Throughout the Class Period, by virtue of their roles as executives, Defendants Wiederhorn, Kuick, and Rosen oversaw the Company's response to and cooperation with the government investigation. This involved responding to the requests for documents and records pertaining to the transactions between Wiederhorn, FAT Brands, and FCCG. ¶¶99, 107, 115, 118, 121, 187. *Och-Ziff*, 164 F.Supp.3d at 585 ("Defendants knew about the…Investigation from 2011 onward, but waited to disclose its potential impact, which Och-Ziff later described as material…" and, therefore, plaintiffs had "plausibly alleged that…Defendants were reckless."); *see also*, *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 733 (S.D.N.Y. 2015) (inferring scienter where "BioScrip subjectively knew about the [Civil Investigation Demand]" and "was reckless in electing to withhold knowledge of the CID, despite its significant role in formulating a basis of belief that BioScrip was in legal compliance.").

Additionally, Defendants Kuick and Rosen were reckless in their roles as co-CEOs and CFO by failing to notice the looming litigation threatening FAT Brands. The books and records demanded by the DOJ and SEC contained enough financial information for the agencies to file a complaint and an indictment against, *inter alia*, Defendants Wiederhorn and FAT Brands. These records included daily cash reports, as well as materials sufficient to show that the SRC discovered proof of Wiederhorn's looting, the board calling for his resignation, and Wiederhorn's retaliatory disbanding of the SRC and firing of independent directors. Defendants Kuick and Rosen were deliberately reckless in their handling of the pending charges, "[r]ecklessly turning a 'blind eye' to impropriety [which] is equally culpable conduct under Rule 10b-5." *VeriFone*, 704 F.3d at 708.

Defendants also argue "[t]he SAC [] does not include any allegations identifying (1) what documents or materials relating to the transactions the government requested; (2) what documents defendants provided in response; or (3) what those documents supposedly showed." MTD at 20. Defendants provide no authority to support their argument that a failure to specify the types of documents requested, documents provided, and what the documents contained must cut against scienter. Furthermore, the Complaint states that the government requested, *inter alia*, documents and materials concerning "the Company's December 2020 merger with Fog Cutter Capital Group Inc. [and] transactions between those entities and Mr. Wiederhorn[.]" To that end, Defendants produced, in part, the daily cash reports prepared per Wiederhorn's instructions, as well as enough materials to show that the SRC had found evidence of Wiederhorn's self-dealing payments, the board's demand that he step down, and Wiederhorn's retaliation.

In the 2021 10-K, Defendants attempted to cover up the self-dealing payments by claiming that there were no undisclosed material related party transactions. ¶¶87-97. Similarly, throughout the Class Period, Defendants hid the fact that FAT Brands was actually a target of the government investigations. ¶¶99, 107, 115, 118, 121. Courts have found that attempts to cover up fraud supports finding an inference of scienter. *United States v. Reyes*, 660 F.3d 454, 466–67 (9th Cir. 2011) (false exculpatory statements can be considered as evidence of consciousness of guilt); *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *16 (C.D. Cal. Jan. 17, 2020) (same).

Similarly, Defendant Wiederhorn's firing of the SRC and independent board members adds to the inference of scienter for the same reason. Obstructing an investigation is "circumstantial evidence of scienter." *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 548 (S.D.N.Y. 2020). The SRC was created to investigate the issues raised by the government investigation –the undisclosed self-dealing payments orchestrated by Defendant Wiederhorn. The SRC found evidence of Wiederhorn's self-dealing payments. When the board learned the truth, the executive

18

chairman demanded that Wiederhorn resign or face board action. In response, Wiederhorn dismantled the SRC and fired all independent board members. ¶177. This is a clear case of obstruction of an investigation and therefore adds to the strong inference of scienter.

Further bolstering the strong inference of scienter is the simplicity and obviousness of the disclosure obligations. *Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at *6 (C.D. Cal. July 20, 2011); *see also In re Medicis Pharm. Corp. Sec. Litig.*, No. CV-08-1821-PHX-GMS, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010) (simplicity, obviousness, and magnitude of accounting error all contribute to scienter inference).

The disclosure obligation under GAAP and Item 404 are not complex, nor is there any room for interpretation. Item 404(a) of Regulation S-K (17 C.F.R. § 229.404) requires the disclosure of "any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." ¶¶72-74. Likewise, GAAP also required the Company to disclose all material related party transactions. ASC 850, Related Parties, provides that a public company's "[f]inancial statements shall include disclosures of material related party transactions." ASC 850-10-50-1. ¶¶75-84. Defendants' violation of such simple disclosure obligations further enhances the inference of scienter.

Additionally, SOX Sec. 402 is simple on its face as well: "***It shall be unlawful for any issuer*** [] ***directly or indirectly,*** [] ***to extend or maintain credit*** [] ***in the form of a personal loan to or for any director or executive officer***[]." ¶85. The years of looting that Wiederhorn orchestrated, including 53% of FAT Brands' 2020 revenue that went unreported, was a clear violation of SOX Sec. 402. The fact that Defendants can point to disclosures that FCCG was extending a line of credit to Wiederhorn further bolsters the

19

inference of scienter. Defendants chose to hide a key part of the truth in such disclosures – that FAT Brands was actually providing the cash for these 'stockholder loans' from FCCG to Wiederhorn. As discussed previously, attempts to cover up fraud support an inference of scienter. *Reyes*, 660 F.3d at 466–67; *Karinski*, 2020 WL 281716, at \*16.

Here, based on all the circumstantial evidence, it is at least as compelling as any opposing inference that Kuick and Rosen, in responding to the government investigation, knew or were deliberately reckless in not knowing about the years of looting Wiederhorn directed. The sheer amount of FAT Brands' revenue stolen year-to-year was to such an extent that Kuick and Rosen's supposed lack of knowledge of the truth was an extreme departure from the standards of ordinary care. The facts, when viewed holistically, create an inference of scienter that is at least as cogent and compelling as any competing inference. *See New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1102–1103 (9th Cir. 2011) ("[w]hen viewed in totality, there is no doubt the allegations, at this early phase of the proceedings, present at least as strong an inference of scienter as any competing innocent inference").

### H.    The Complaint Adequately Pleads A Section 20(a) Claim

To state a claim under Section 20(a), Plaintiffs must allege a primary violation of the Exchange Act, and that the individual defendants controlled the entity liable for the primary violation. 15 U.S.C. § 78t(a); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1053–54 (N.D. Cal. 2008). The SAC alleges a primary violation by FAT Brands, and thus also alleges Section 20(a) claims against the Individual Defendants. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 781 (9th Cir. 2023).

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion. Alternatively, if any part of the Complaint is dismissed, Plaintiff respectfully requests leave to replead. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

20

Dated:   December 22, 2025          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)

355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq. (admitted *pro hac vice*)
Ha Sung (Scott) Kim, Esq. (admitted *pro hac vice*)
275 Madison Avenue, 40th Fl.
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: skim@rosenlegal.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,993 words, which complies with the word limit of L.R. 11-6.1.

Executed on December 22, 2025.

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim, Esq. (admitted *pro hac vice*)
Ha Sung (Scott) Kim, Esq. (admitted *pro hac vice*)
275 Madison Avenue, 40th Fl.
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: skim@rosenlegal.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

22