**EXHIBIT 1**

Table of False Statements

| False/Misleading Statement | Source | Reason for Falsity |
|---|---|---|
| Signed and submitted certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications") attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. ¶87 | 2021 10-K, filed March 23, 2022 | The financial reporting was not accurate as the 2021 10-K did not disclose the $9.6 million self-dealing payments in 2020, and in turn the 2021 10-K did not disclose all fraud. ¶89 |
| "Descriptions of [related party transactions] are included under Notes 3, 10, 12, 13, 15 and 19 to the audited consolidated financial statements of the Company included under Item 15 of this Form 10-K, which information is incorporated herein by this reference. [. . .] Other than such transactions, since December 29, 2019, there has not been, nor is there currently proposed, any transaction or series of similar | 2021 10-K, filed March 23, 2022 | None of the Notes included a disclosure concerning the $9.6 million self-dealing payments made in 2020 outside the scope of the IRCA. ¶¶90-97 |

| | | |
|---|---|---|
| transactions to which we were or will be a party:<br>• in which the amount involved exceeds $120,000; and<br>• in which any director, executive officer, shareholder who beneficially owns 5% or more of our common stock or any member of their immediate family had or will have a direct or indirect material interest." ¶88 | | |
| "All additional borrowings under the Intercompany Agreement were subject to the approval of the Board of Directors, in advance, on a quarterly basis and were subject to other conditions as set forth by the Company." ¶88 | 2021 10-K, filed March 23, 2022 | Wiederhorn caused $9.6 million to be transferred to his own pockets in 2020 without approval from the Board, violating the IRCA. ¶¶5, 89, 90, 92, 93, 95-97, 100, 128, 132-34, 144-46, 177, 185 |
| "FCCG historically made loan advances to Andrew A. Wiederhorn, its CEO and significant stockholder (the "Stockholder Loan")." ¶91 | 2021 10-K, filed March 23, 2022 | Did not disclose that the loans from FCCG to Wiederhorn were actually funded by cash transfers from FAT Brands. ¶92 |
| "The Company is cooperating with the government regarding these matters, and we believe that the Company is not currently a target of the U.S. Attorney's investigation." ¶98 | 2021 10-K, filed March 23, 2022 | Wiederhorn knew his self-dealing payments exposed FAT Brands to government prosecution, and his knowledge as CEO is imputed to FAT Brands. Therefore, the |

|  |  | Company had no basis for its belief that the Company was not a target of the investigation. ¶99 |
|---|---|---|
| "We are controlled by Fog Cutter Holdings LLC, whose interests may differ from those of our public stockholders." ¶102 | November 2022 Prospectus, filed November 14, 2022 | Conflict of interest was not a mere possibility, as it had already materialized in the form of Wiederhorn's self-dealing payments. ¶103 |
| "The Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from the U.S. Attorney and the SEC. We believe that the Company is not currently a target of the U.S. Attorney's investigation." ¶¶106, 114, 117, 120 | 2022 10-K, filed February 24, 2023; 1Q 2023 10-Q, filed May 9, 2023; 2Q 2023 10-Q, filed August 4, 2023; 3Q 2023 10-Q, filed October 31, 2023 | Wiederhorn, and FAT Brands by extension, did not intend to cooperate with the investigation, as evidenced by Wiederhorn disbanding the SRC and firing all independent directors when the board members learned the truth about the self-dealing payments. Additionally, Wiederhorn knew his self-dealing payments exposed FAT Brands to government prosecution, and his knowledge as CEO is imputed to FAT Brands. Therefore, the |

| | | Company had no basis for its belief that the Company was not a target of the investigation. ¶¶107, 115, 118, 121 |
|---|---|---|
| "The Company is continuing its efforts to cooperate with the SEC and maintains that its actions were appropriate, and intends to pursue the Wells Notice process, including submitting a formal response to the SEC." ¶123 | 2023 10-K, filed March 12, 2024 | Wiederhorn, and FAT Brands by extension, knew the $9.6 million self-dealing payments were not "appropriate", and therefore had no basis for the assertion that FAT Brands' "actions were appropriate". ¶¶107, 115, 118, 121 |