SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:   858.720.8900
Facsimile:   858.509.3691
E mail:       jstigi@sheppardmullin.com

POLLY TOWILL, Cal. Bar No. 120420
MADALYN A. MACARR, Cal. Bar No. 301539
TORI D. KUTZNER, Cal. Bar No. 334057
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:   213.620.1780
Facsimile:   213.620.1398
E mail:       ptowill@sheppardmullin.com
              mmacarr@sheppardmullin.com
              tkutzner@sheppardmullin.com

Attorneys for Defendants FAT BRANDS, INC.,
ANDREW A. WIEDERHORN, KENNETH J.
KUICK and ROBERT G. ROSEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL KATES, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>       v.<br><br>FAT BRANDS, INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN,<br><br>              Defendants. | Case No. 2:24-cv-04775-MWF-MAA<br><br>The Hon. Michael W. Fitzgerald<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing Date:  January 12, 2026<br>Time:            10:00 a.m.<br>Department:    5A<br>Trial Date:      None Set |

Case No. 2:24-cv-04775-MWF-MAA

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     THE SAC FAILS TO PLEAD FACTS SUFFICIENT TO SHOW FALSITY .................................................................................................. 2

    A.      The SAC Does Not Allege Facts to Alter the Court's Prior Holding That Its Opinion and Forward-Looking Statement Allegations Are Non-Actionable .......................................................... 2

        1.      Opinion Statements Regarding Government Investigations ........ 2

        2.      Forward-Looking Statements Regarding The Company's Intent to Cooperate With the Government's Investigations ......... 5

    B.      The SAC Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made ........... 5

        1.      The SAC Lacks Particularized Facts Showing That Any Undisclosed Loan to FCCG Rendered Any Statement False or Misleading ..................................................................... 5

        2.      The Company's Risk Disclosures Were Not Misleading ........... 10

    C.      The Alleged Item 404, GAAP and Section 402 Disclosure Violations Do Not State a Section 10(b) Claim ................................. 11

    D.      The Alleged Failure to Disclose Contingent Losses Under GAAP Fails ................................................................................... 13

III.    THE SAC FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER .................................... 15

    A.      No Alleged Facts Give Rise to a Strong Inference That Kuick Knew About the Unauthorized Intercompany Loans, Much Less That Loan Proceeds Went To Wiederhorn ......................................... 16

    B.      No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation ................................................................... 19

IV.     THE COMPLAINT FAILS TO STATE A CONTROLLING PERSON LIABILITY CLAIM FOR VIOLATION OF SECTION 20(a) ..................... 20

V.      PLAINTIFF'S "EXHIBIT 1" SHOULD BE DISREGARDED .................... 21

VI.     CONCLUSION ...................................................................................... 21

SMRH:4898-4807-1556.4

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Barron v. Reich*
13 F.3d 1370 (9th Cir.1994) ...................................................................................21

*Branch v. Tunnell*
14 F.3d 449 (9th Cir. 1994) ....................................................................................21

*Brody v. Transitional Hosps. Corp.*
280 F.3d 997 (9th Cir. 2002) ...............................................................................3, 4

*ESG Capital Partners, LP v. Stratos*
2013 WL 12131355 (C.D. Cal. June 26, 2013) .....................................................17

*In re Fusion-io, Inc. Sec. Litig.*
2015 U.S. Dist. LEXIS 18304 (N.D. Cal. Feb. 12, 2015) ....................................12

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*
601 U.S. 257 (2024) ..................................................................................11, 12, 13

*Medhekar v. United States Dist. Ct.*
99 F.3d 325, 328 (9th Cir. 1996) .............................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*
575 U.S. 175 (2015) .................................................................................................2

*Prodanova v. H.C. Wainwright & Co., LLC*
993 F.3d 1097 (9th Cir. 2021) ..........................................................................16, 19

*S. Ferry LP, No. 2 v. Killinger*
542 F.3d 776 (9th Cir. 2008) .................................................................................17

*S.G. Cowen Secs. Corp. v. U.S. Dist. Ct.*
189 F.3d 909 (9th Cir. 1999) ...................................................................................9

*In re Silicon Graphics Sec. Litig.*
183 F.3d 970 (9th Cir. 1999) .............................................................................4, 19

*Steinberg v. Schmitt Indus., Inc.*
2024 U.S. Dist. LEXIS 43245 (D. Or. Feb. 2, 2024) ...........................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
551 U.S. 308 (2007) ....................................................................................15, 19, 20

*In re VeriFone Holdings, Inc. Sec. Litig.*
704 F.3d 694 (9th Cir. 2012) ..........................................................................13, 16

*Wanca v. Super Micro Computer, Inc.*
2018 U.S. Dist. LEXIS 107758 (N.D. Cal. June 27, 2018) ..................................12

-ii-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Statutes, Rules and Regulations

Federal Rules of Civil Procedure
    Rule 9(b) .................................................................................................... 1, 7

Private Securities Litigation Reform Act of 1995 ............................................ *passim*

Sarbanes-Oxley Act of 2002
    § 402 ................................................................................................. 1, 10, 12

Securities and Exchange Act of 1934
    § 10(b) ............................................................................................. 10, 11, 12
    § 20(a) ............................................................................................................ 20

SEC Rule 10b-5 ......................................................................................... 11, 12

SMRH:4898-4807-1556.4

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

In their opening memorandum, defendants demonstrated that plaintiff's SAC still fails to satisfy the heightened pleading standards governing securities fraud claims.[1]  Specifically, defendants showed that: (1) the SAC's new allegations do not alter the Court's prior conclusion that the opinion and forward-looking statements are not actionable as a matter of law; (2) the SAC still does not adequately allege facts with the particularity required to establish falsity as required by Rule 9(b) and the PSLRA because plaintiff does not allege any undisclosed Intercompany Loan to FCCG that rendered any statement false or misleading; (3) plaintiff's attempts to invoke technical violations of GAAP, Item 404 and/or Section 402 as the basis for securities fraud liability are meritless in light of recent Supreme Court authority and its progeny; and (4) the SAC, as with the AC, still falls "far short" of alleging particularized facts giving rise to a strong inference that each defendant acted with the requisite scienter as required by the PSLRA.

In his opposition, plaintiff fails to directly confront the various (and still persisting) deficiencies the Court identified in its prior Order.  Instead, plaintiff attempts to sidestep them.  He does so primarily by conceding the adequacy of FAT Brands' disclosures regarding the IRCA while now speculating that the allegedly undisclosed transfers of $9.6 million from FAT Brands to FCCG occurred not under the IRCA but under some other separate, unrelated and unidentified lending arrangement between FAT Brands and FCCG.  But the SAC contains no alleged facts showing the existence of any such separate non-IRCA lending arrangement.  To the contrary, the facts as alleged directly tie the alleged $9.6 million in intercompany transfers to the fully disclosed IRCA.  This improper theory-shifting underscores the fundamental defects in plaintiff's case: rather than supporting his allegations with parti-

---

[1]  Capitalized terms herein have the same meaning as defined in defendants' opening memorandum (ECF No. 37).

cularized facts, plaintiff seeks to leverage discovery to learn basic information he should have had already before attempting to plead securities fraud.  (*See* ECF No. 38, Opposition ("Opp.") at 3 n.3.)  Such shifting and speculative theories are precisely what the PSLRA's stringent standards are designed to prevent.  Plaintiff's opposition thus confirms that his claims remain predicated upon hindsight and speculation about what defendants should have known.  It does not and cannot cure the SAC's failure to plead actual facts, rather than bare conclusions, showing falsity or scienter.  In the end, none of plaintiff's arguments provides a basis for departing from the settled pleading standards imposed by the PSLRA, Rule 9(b) and recent Supreme Court authority, and the Court's prior holdings, all of which mandate dismissal here.

For these reasons and those set forth more fully below, the Court should grant defendants' motion and dismiss the SAC, without further leave to amend.

## II.    THE SAC FAILS TO PLEAD FACTS SUFFICIENT TO SHOW FALSITY

**A.    The SAC Does Not Allege Facts to Alter the Court's Prior Holding That Its Opinion and Forward-Looking Statement Allegations Are Non-Actionable**

**1.    Opinion Statements Regarding Government Investigations**

Plaintiff concedes that the statement "we believe that the Company is not currently a target of the U.S. Attorney's investigation" is an opinion statement subject to the standard outlined in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184-86 (2015).  Under *Omnicare*, an opinion statement — such as the "we believe" statement plaintiff challenges here — is actionable only if plaintiff pleads facts showing that the speaker did not truly hold the opinion or if the statement misleadingly conveys facts regarding how the speaker formed the opinion or the basis for the opinion. *Id.*  Plaintiff fails to meet this standard.

-2-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

The opposition repeats that Kuick and Rosen were aware the Company faced "exposure" as a target of government action based upon their respective roles at the Company as co-CEOs and CFO and purported oversight over the Company's document productions as a result thereof. (Opp. at 12 ("Kuick and Rosen, as co-CEOs and CFO, oversaw and reviewed the Company's response to government investigations. Therefore, they were aware of the Company's exposure to government action.").)[2] This is the exact argument the Court already considered and rejected.[3] (Order at 16 ("Plaintiff's allegations that Kuick and Rosen oversaw the Company's response to the investigation does not call into question the basis for the Company's opinion that the Company was not the subject of the investigation.").) Likewise, plaintiff's new allegations regarding mere purported "access" to information do not call into question the basis for the opinion statements. (*See* Mot. at 9-10.) As defendants explained in their opening memorandum, even assuming allegations showed such access occurred, none identify the information that would have called into question the absence of a factual basis for the opinion statement regarding the Company's statement about its then-*current* status as a target or non-target of any government investigation. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiff fails to address, and so concedes, this point.

Plaintiff also argues that Kuick and Rosen stated that "they believed that FAT Brands was not a target of the government's investigation" despite "all evidence to the contrary." (Opp. at 12.) But once again, neither the SAC nor the opposition

---

[2] The SAC does not allege that Kuick or Rosen "reviewed" any portion of the Company's response to government investigations. It merely alleges that they "had an opportunity to investigate the truth behind the allegations herein" in the "course of overseeing the Company's response to the government investigation." (SAC ¶ 187.)

[3] Even assuming Kuick and Rosen reviewed the production (which is not alleged), plaintiff still fails to address that his SAC does not allege what documents the government requested, what documents defendants provided in response or what those documents supposedly showed. Under *Omnicare*, to state a claim, the complaint must allege such "real facts" regarding defendants' supposed inquiry that were not disclosed and facts from which the Court could infer defendants did not truly believe their temporally qualified "we believe" statement.

allege any actual facts then known to Kuick or Rosen "to the contrary." Instead, plaintiff argues in conclusory terms that "it beggars belief" that the Company would be aware of government investigations into *Wiederhorn* yet not believe *itself* to be a target of the investigation, and that the "sheer scale of the amount stolen in 2020 beggars belief that the CFO and co-CEOs were innocently, rather than deliberately recklessly, unaware of the issue by the time of the government investigations." (Opp. at 11-12.) Plaintiff's conclusory remarks do not alter the fact that the SAC does not — and cannot — allege particularized facts showing that any defendant actually had any information regarding the then-current status of the Company — the alleged victim of Wiederhorn's conduct — as a target or non-target of any government investigation that would have called into question the absence of a factual basis for this opinion statement.

Finally, defendants consistently qualified that they did not "currently" believe FAT Brands was a target of the investigation. (SAC ¶¶ 98, 106, 114, 117, 120.) The opposition does not confront the SAC's failure to allege facts showing *when* the Company in fact became a target of the government's investigation. The fact remains that the first and only alleged disclosure that FAT Brands was an actual target came in May 2024, with the unsealing of the now-dismissed Indictment. (*Id.* ¶¶ 127, 136.) Plaintiff's reverse-engineered theory that the earlier omission was false in hindsight, simply because of later events, is precisely the type of "fraud by hindsight" theory that courts uniformly reject. *See*, *e.g.*, *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). This pleading deficiency remains critical because without such factual allegations, plaintiff cannot show the Company's "we believe" statement suggested a state of affairs inconsistent with the one that actually existed at the time the statement was made. *See Brody*, 280 F.3d at 1006.

-4-

**2.**    **Forward-Looking Statements Regarding The Company's Intent to Cooperate With the Government's Investigations**

Plaintiff insists that the Company's statements that it "intends to cooperate with the U.S. Attorney and the SEC regarding these matters" are actionable because defendants supposedly created, but subsequently disbanded, a special review committee ("SRC"), and Wiederhorn replaced independent directors with several of his family members. (Opp. at 12-13.) The Court considered and flatly rejected this exact argument. (Order at 19 ("Plaintiff's allegations that the SRC was disbanded and independent directors were removed is not enough to establish that these forward-looking statements were false.").) Neither plaintiff's SAC nor his opposition offers anything more purporting to show that any defendant had actual knowledge that these forward-looking statements were false or misleading at the time they were made (*i.e.*, then-existing facts showing that defendants did not truly intend to cooperate, much less that the Company was in fact not cooperating with the investigations).[4]

**B.**    **The SAC Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made**

**1.**    **The SAC Lacks Particularized Facts Showing That Any Undisclosed Loan to FCCG Rendered Any Statement False or Misleading**

The SAC challenges the adequacy of FAT Brands' 2021 Annual Report disclosures regarding the IRCA, an alleged $35 million revolving credit facility between FAT Brands and FCCG. (SAC ¶¶ 94-95.) The SAC points to the Form 10-K's alleged

---

[4] Plaintiff argues, without factual support, that "Wiederhorn actively took steps to obstruct the investigation." (Opp. at 13.) To the extent this bald accusation is premised upon the disbanding of the SRC or replacement of independent directors, the Court already concluded that this alleged conduct, even if true, is not on its own sufficient to show that the Company was not cooperating with investigations. (Order at 19.)

-5-

failure to disclose $9.6 million in transfers from FAT Brands to FCCG in 2020 under the IRCA.  (*See* SAC ¶¶ 95, 97.)  But, as demonstrated in defendants' opening memorandum, FAT Brands, in a series of earlier Form 10-Q filings, disclosed the IRCA's outstanding balance receivables, which showed IRCA borrowings increasing in 2020 from an initial opening balance of $21 million to $33.3 million as of September 27, 2020.  (Mot. at 10-11.)  The IRCA terminated effective with a merger between FAT Brands and FCCG in December 2020, a consolidation that eliminated all IRCA balance receivables.  (SAC ¶ 94 (quoting 2021 Annual Report, which disclosed that "Effective with the Merger with FCCG, the Intercompany Agreement was terminated and intercompany balances were eliminated in consolidated.").)  By the filing of its 2021 Annual Report on March 23, 2022, FAT Brands had no duty to provide investors with stale and previously disclosed 2020 IRCA draw-down and outstanding balance information.  In his opposition, plaintiff does not argue otherwise, and so concedes the adequacy of FAT Brands' 2021 Annual Report disclosures regarding the IRCA.

Instead, plaintiff pivots by denying that the SAC challenges the adequacy of those disclosures.  Plaintiff instead speculates the SAC alleges that the $9.6 million in transfers between FAT Brands and FCCG occurred not under the IRCA as disclosed, but rather under some different and separate debt financing facility or other arrangement between FAT Brands and FCCG.  (*See* Opp. at 3 ("[t]he $9.6 million self-dealing transfers were outside the scope of the IRCA" and "while the Company disclosed loans pursuant to the IRCA, those disclosures were insufficient as there was another undisclosed stream of money going from FAT Brands to FCCG"); *id.* at 8 ("the $9.6 million self-dealing payments were outside the scope of the IRCA").)

The problem with this is twofold.  First, nowhere in the SAC is this second non-IRCA borrowing arrangement identified or alleged.  Second, this sudden effort to recharacterize the $9.6 million in transfers between FAT Brands and FCCG as somehow occurring "outside" the IRCA contradicts the SAC's express allegations.  This is because the SAC identifies one, and only one, credit facility in place between

-6-

FAT Brands and FCCG in 2020 period — the IRCA — and alleges facts showing the IRCA's terms governed the $9.6 million transfer at issue. Specifically, the SAC alleges that, in April 2020, FAT Brands and FCCG entered into a 5-year $35 million revolving credit facility, which facility ratified, replaced and subsumed approximately $21 million in pre-existing borrowings under an earlier intercompany promissory note and other intercompany arrangements. (*See* SAC ¶¶ 57-58; RJN Ex. C.)  The SAC identifies this superseding facility as the IRCA. (*Id*.)  The SAC alleges that FAT Brands' 2021 Annual Report failed to disclose the $9.6 million in transfers from FAT Brands to FCCG in 2020 because, instead of revealing IRCA loan balances for 2020, "the figures given only discuss the IRCA loan balance as of ***December 29, 2019***." (*See* SAC ¶ 58 (emphasis in original).)  Hence, the SAC expressly ties the alleged $9.6 million in borrowings to the IRCA and no other facility.

The SAC further alleges that the $9.6 million transferred to FCCG in 2020 failed to conform to, and so violated, the IRCA's provisions requiring that FAT Brands' board approve IRCA transfers.  (*See* SAC ¶¶ 95, 126  ("The unapproved 'loans' in 2020, which the Company still had not disclosed to the public, *violated the Intercompany Revolving Credit Agreement ("IRCA")*, created on or about April 14, 2020.") (emphasis added); *id.* ¶ 128 (describing the SEC's complaint as charging FAT Brands and Wiederhorn "with violating the terms of the IRCA")).)  This allegation can only mean that the $9.6 million in intercompany borrowings in fact fell within the IRCA's applicable and governing terms and conditions.[5]  The Court should reject plaintiff's effort to escape his own allegations and FAT Brands' concededly adequate 2021 Annual Report IRCA disclosures by now speculating that the alleged $9.6 million transfers occurred under a different, separate credit facility wholly unrelated to the IRCA.

_____

[5] Plaintiff's assertion that the alleged "violation of the IRCA is incidental to Plaintiff's claims" also is belied by his SAC.  (SAC ¶¶ 126, 128, 139, 157 (all focusing on alleged IRCA violations).)

-7-

The SEC Complaint upon which plaintiff so heavily relies also does not support the existence of a second, non-IRCA borrowing facility.  Plaintiff relies exclusively on the SEC Complaint for his allegation that $9.6 million was "funnel[ed]" from FAT Brands to FCCG and, ultimately, to Wiederhorn in 2020.  (SAC ¶ 128).[6] But the SEC Complaint does not describe any second mechanism outside of the IRCA pursuant to which FAT Brands loaned funds to FCCG.  On the contrary, the SEC Complaint confirms that the transfers, including the so-called "Wiederhorn Personal Cash Transfers," were pursuant to the IRCA.  (RJN, Ex. B, SEC Complaint ¶ 31 (alleging that Wiederhorn "directed FAT to continue transferring millions of dollars to FCCG . . . through what the company disclosed as intercompany lending from FAT to FCCG"); *id.* ¶ 32 (alleging that Wiederhorn had a direct or indirect material interest in "the funds" transferred to FCCG because he borrowed a substantial portion of "those funds from FCCG" for his personal expenses in what the SEC Complaint calls the "Wiederhorn Personal Cash Transfers."); *see also id.* ¶ 43 (alleging $9.6 million in Wiederhorn Personal Cash Transfers in 2020.))  In other words, the SEC Complaint, if anything, confirms that the $9.6 million at issue here constitutes a portion of Intercompany Loans between FAT Brands and FCCG pursuant to the IRCA (as admittedly disclosed).

Faced with full periodic disclosures from FAT Brands regarding the balance of Intercompany Loans to FCCG, and full disclosure regarding the Shareholder

---

[6] Defendants noted in their opening memorandum that the problem with plaintiff's reliance upon the SEC Complaint as the *sole* source for his allegation that Wiederhorn "pocketed" $9.6 million in Intercompany Loans in 2020 is amplified because the SEC is not required to satisfy Rule 9(b) or PSLRA pleading standards. (Mot. at 12 n.8.) Plaintiff insists that he "can rely on other pleadings" in order to satisfy Rule 9(b) and the PSLRA. (Opp. at 7.) Plaintiff's argument misses the mark. He can rely upon other pleadings, but he still must satisfy particularized pleading requirements. The SEC Complaint upon which he relies itself does not contain — and need not contain — particularized facts to support the SEC's conclusion that there were $9.6 million in undisclosed Wiederhorn Personal Cash Transfers in 2020. Plaintiff's SAC simply reprints that unparticularized allegation without pleading *any* additional supporting facts as required by Rule 9(b) and the PSLRA.

-8-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Loans from FCCG to Wiederhorn (*see* Mot. at 12 n.7), plaintiff next complains that FAT Brands' SEC filings did not specifically disclose that "FAT Brands transferred money to FCCG to fund the stockholder loans to Wiederhorn." (Opp. at 8; *see also* SAC ¶ 132 (alleging that "[n]one of the $9.6 million cash transfers are disclosed in the 2021 10-K as going directly into Defendant Wiederhorn's pockets.").)[7] Plaintiff does not explain why such a specific disclosure was required. Given that all Intercompany Loans from FAT Brands to FCCG were concededly disclosed, FAT Brands did not have a continuing obligation to further disclose what FCCG did with the Intercompany Loans after it received them. Requiring redundant disclosure of historical cash flows already subsumed in detailed public filings does not constitute securities fraud. Plaintiff does not cite any law to the contrary.

Plaintiff also vaguely references a $9.6 million figure allegedly transferred from FCCG to Wiederhorn, but does not identify any specific transactions that occurred outside of the IRCA, the dates and amounts of such transfers, or how these supposed payments were concealed from investors in light of the Company's robust disclosures regarding the Intercompany Loans. Plaintiff admits he does not currently have the necessary facts to cure these pleading deficiencies, hoping to gain them through discovery in contravention of the PSLRA. (Opp. at 3 n.3.) *See S.G. Cowen Secs. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 912 (9th Cir. 1999) (vacating order granting plaintiffs "leave to conduct discovery so that they might uncover facts sufficient to satisfy the [PSRLA]'s pleading requirements"). As the Ninth Circuit has confirmed, "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Id.* (quoting *Medhekar v. United States Dist. Ct.*, 99 F.3d 325, 328 (9th Cir. 1996). Plaintiff's

---

[7] This alternative theory implicitly — and rightfully — concedes that the underlying $9.6 million in Intercompany Loans was disclosed.

-9-

attempt to disavow the SAC's allegations and shift the theory of liability from previously disclosed Intercompany Loans to vaguely described "self-dealing payments" pursuant to some unalleged second credit facility directly undermines the requirement of pleading falsity with specificity.

Finally, plaintiff argues that the judicially noticeable materials defendants submitted reflecting the Company's extensive disclosures regarding the Intercompany Loans should not be accepted for the truth of the underlying disclosures contained therein.[8] But defendants submitted these materials for the fact that certain disclosures were made, not for the truth of the underlying disclosures. The fact remains that cited risk factors and related-party disclosures in the Company's SEC filings addressed the existence of longstanding transactions with FCCG, even without accepting as true the underlying disclosed facts (*e.g.*, the dollar amounts contained in each disclosure).

**2.    The Company's Risk Disclosures Were Not Misleading**

The Company's risk disclosures fully addressed FCCG's control, the potential for conflicts and related party transactions. Plaintiff nevertheless argues the risk disclosure in the November 2022 Prospectus that FCCG's interests "may differ" from those of the Company's public stockholders was misleading because it referenced only the potential for FCCG's interests to diverge from those of public shareholders, allegedly when the "conflict" via Wiederhorn's alleged misconduct had already occurred. (Opp. at 13.) Plaintiff's conclusory assertion that this disclosed risk had "materialized" fails. First, as shown above, plaintiff fails to plead with particularity that any such undisclosed conflict actually existed or that defendants' disclosures concealed material information. (*See* Section II.B.1, *supra*.) Rather, the extensive transactions between FAT Brands and FCCG had for years been repeat-

---

[8] The Court already determined that Exhibits A (*Harris* Complaint), B (SEC Complaint), C (IRCA), and D (2021 Annual Report) are incorporated by reference. (Order at 10-13.)

-10-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

edly disclosed in detail.  Plaintiff's attempt to recast his theory as one involving loans pursuant to some second, unalleged borrowing facility "outside the scope of the IRCA" (Opp. at 14) is rank speculation.  Second, plaintiff's cited cases where disclosure of hypothetical risk was found misleading because the risk had in fact already come to pass are inapposite here, as plaintiff fails to plead with the requisite specificity that defendants were aware of, yet concealed, a specific, material, realized conflict rather than a hypothetical one.  In other words, plaintiff does not point to any contemporaneous facts showing that defendants were aware of an actual conflict beyond those already described in the Company's disclosures. Without particularized facts showing that concrete, undisclosed events rendered defendants' risk disclosures misleading, plaintiff's theory cannot stand.

**C.    The Alleged Item 404, GAAP and Section 402 Disclosure Violations Do Not State a Section 10(b) Claim**

The SAC asserts the Company's 2021 Annual Report was misleading because the Company "was required to, but did not, disclose" certain "related party transactions" under Item 404, GAAP, and Section 402. (SAC ¶¶ 141, 143, 148.) Defendants showed this "pure omissions" theory fails to state a claim under the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024), which requires plaintiffs to point to "affirmative statements made misleading" by the alleged omission.  (Mot. at 14-15.)  In his opposition, plaintiff attempts to avoid application of the *Macquarie* rule by arguing that: (1) Item 404 and GAAP nevertheless created an independent duty to disclose; (2) *Macquarie* is inapposite because this is "not a pure omissions case"; and (3) by "volunteer[ing]" to disclose information regarding related party transactions under the IRCA, defendants created an obligation to "speak the full truth" regarding related party transactions.  (Opp. at 9-11.)  His efforts all fail.

Plaintiff attempts to sidestep *Macquarie* because Regulation S-X states that financial statements that are not prepared in accordance with GAAP are "presumed

-11-

to be misleading or inaccurate." (Opp. at 9 (citing 17 C.F.R. § 210.4-01(a)(1)).) But plaintiff again does not explain how Regulation S-X can supersede the Supreme Court's clear holding in *Macquarie* that "[p]ure omissions are not actionable under Rule 10b-5(b)." *Macquarie*, 601 U.S. at 260. Accordingly, plaintiff fails to show his Item 404 and GAAP allegations state a claim under Section 10(b) based on an alleged failure to disclose under those rules. Plaintiff's argument that violations of GAAP or Item 404 are per se actionable remains squarely foreclosed by *Macquarie* and by Ninth Circuit law, which require that a regulatory violation only gives rise to a Section 10(b) claim if the failure to comply renders a specific statement to investors misleading.

Plaintiff next argues that *Macquarie*'s prohibition on a "pure omissions" theory to support a Section 10(b) violation does not apply because this is not a "pure omissions" case. (Opp. at 10.) If that is so, then plaintiff does not identify any specific, affirmative statement made misleading by the alleged failure to disclose. Plaintiff's only attempt to do so is his claim that the alleged disclosure violations rendered the SOX Certification attached to the 2021 Annual Report false. (Opp. at 11-12; SAC ¶ 100.) Standard and broad certifications, like SOX attestations, do not constitute an affirmative statement. *Wanca v. Super Micro Computer, Inc.*, 2018 U.S. Dist. LEXIS 107758 (N.D. Cal. June 27, 2018) (describing as the "principle that ultimately governs the analysis here: that SOX Certifications were not intended to create a per se violation of securities laws" and holding that, to "successfully plead falsity [with respect to a SOX certification], Plaintiff must also allege facts explaining why the declarants knew the financial reporting was false at the time it was made"). Moreover, plaintiff's allegations confirm that his focus is on a pure disclosure omission. (*Compare* SAC ¶ 71 (alleging defendants violated Section 10(b) by violating "duty to disclose," which "arose out of" Item 404 and GAAP) *with Macquarie*, 601 U.S. at 261 (rejecting theory that company violated Section 10(b) because it "violated" its "duty to disclose" arising under Item 303)); *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 U.S. Dist.

-12-

LEXIS 18304, at *54 (N.D. Cal. Feb. 12, 2015) ("In the Ninth Circuit, '[it] is well established that violation of an exchange rule will not support a [Section 10(b) or Rule 10b-5] claim.'") (quoting *In re Verifone Sec. Litig.*, 11 F. 3d 865, 870 (9th Cir. 1993)).)

Finally, plaintiff argues that defendants created a duty to "speak the full truth" by disclosing information regarding the balance of the Intercompany Loans pursuant to the IRCA. (Opp. at 10.) In doing so, plaintiff undercuts his new theory that this case is "About Undisclosed Payments, NOT Loans Pursuant to the IRCA." (Opp. at 8.) Plaintiff cannot argue that the IRCA is "irrelevant" to the $9.6 million pursuant to the Unalleged Second Credit Facility, yet simultaneously rely upon defendants' IRCA-related disclosures to create a duty to disclose the wholly unrelated $9.6 million pursuant to the Unalleged Second Credit Facility.

In short, plaintiff's opposition fails to overcome the dispositive legal bar imposed by Supreme Court precedent and binding circuit authority regarding claims premised on Item 404, GAAP and Section 402 of SOX. As *Macquarie* established, Section 10(b) and Rule 10b-5 do not impose liability for a company's failure to disclose information merely because a regulatory provision requires disclosure; rather, liability attaches only where a pure omission renders an affirmative statement misleading. Plaintiff does not identify and such statement and so cannot rely on mere alleged violation to state a claim for securities fraud.

**D.    The Alleged Failure to Disclose Contingent Losses Under GAAP Fails**

The SAC alleges defendants also violated a duty to disclose a "loss contingency associated with the SEC and DOJ investigations" under GAAP. (SAC ¶ 153.) As a preliminary matter, as before, because the challenged statements regarding government investigations are subject to dismissal, this argument fails. (*See* Order at 26.)

In their opening memorandum, defendants demonstrated that this theory also fails because, as with plaintiff's other GAAP-based theory, the SAC fails to specifically identify any "affirmative statements made misleading" by the Company's

-13-

alleged non-disclosure of contingent losses. (Mot. at 14.) In his opposition, plaintiff argues only generically and vaguely that defendants' "statements in the 'Commitments and Contingencies' section" of "all 10-Ks" are false and misleading. (Opp. at 14.) Plaintiff claims that within the "Commitments and Contingencies" section of every 10-K filed during the Class Period, "Defendants discussed, *inter alia*, the then-ongoing government investigations." (Opp. at 14.) But plaintiff still identifies no specific affirmative statement in the "Commitments and Contingencies" section or elsewhere that was rendered misleading. For example, the Company disclosed in the "Commitments and Contingencies" section of the 2021 Annual Report that, "At this early stage, the Company is not able to reasonably estimate the outcome or duration of the government investigations." (RJN, Ex. D, ECF No. 37-1, at 156.) No alleged facts show that any aspect of this statement was false or misleading when made. The generalized claim that defendants failed to disclose contingent losses, without linking it to an actionable misrepresentation, constitutes a pure omissions theory foreclosed by *Macquarie.*

Defendants further demonstrated that even if plaintiff had pointed to an affirmative statement, he still failed to allege facts sufficient to show that "FAT Brands was required to disclose a loss contingency associated with the SEC and DOJ investigations at the beginning of the Class Period" under GAAP. (Mot. at 16.) Plaintiff's only response is that because the SAC alleges Wiederhorn had knowledge of the "illicit self-dealing payments" and Kuick's and Rosen's supposed role in overseeing the government response, the possibility of a loss from a government claim was "more than remote," thus triggering ASC 450's requirement to disclose the contingent loss. (Opp. at 14.) But plaintiff does not even apply this standard correctly, as he again ignores that where, as here, there has been no manifestation by a potential claimant (*i.e.*, the SEC and DOJ) of an awareness of a possible claim, disclosure is not required unless it is both *probable* a claim will be asserted and there is a reasonable possibility that the outcome will be unfavorable. ASC 450-20-50-6; *Steinberg v. Schmitt Indus.,*

-14-

*Inc.*, 2024 U.S. Dist. LEXIS 43245, at *18-19 n.2 (D. Or. Feb. 2, 2024). Yet, nowhere does the SAC allege with particularity that it was probable during the Class Period a claim would be asserted against the Company and that an unfavorable outcome from such a claim was reasonably possible. In other words, plaintiff fails to identify any contemporaneous facts at the time of the disclosures that would have led defendants to determine a loss was "probable" or "reasonably estimable," the standard under GAAP for requiring specific disclosure. In fact, the SAC provides no indication as to when the Company, as opposed to Wiederhorn, became a target of the government investigation, let alone when any defendant became aware of that development. This failure, paired with the Company's clear disclosures about the investigations as they related to Wiederhorn and the subsequent dismissal of the Indictment (confirming no cognizable "loss" caused thereby), dooms plaintiff's loss contingency theory.[9]

## III. THE SAC FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER

In their opening memorandum, defendants challenged the SACs allegations as insufficient to give rise to a strong inference that (1) Kuick knew about the unauthorized Intercompany Loans between FAT Brands and FCCG, much less that the loan proceeds went to Wiederhorn, and (2) any defendant knew during the Class Period that the Company was a target of the U.S. Attorney's investigation.

Plaintiff again employs a shotgun approach to attempt to persuade the Court that his scienter allegations, when viewed "holistically," pass muster. (Opp. at 15-16.) But even when so viewed, the SAC's allegations do not give rise to the "cogent and compelling" inference of scienter as required by the PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). In fact, they still fall

---

[9] Plaintiff concedes that the PSLRA requires a plaintiff to "state with particularity all facts on which [an allegation made on information and] belief is formed." (Opp. at 5.) Yet, neither the SAC nor the opposition provide any basis for plaintiff's speculation that the DOJ voluntarily dismissed its Indictment "due to political reasons." (Opp. at 4; SAC ¶ 139 n.2.)

-15-

"far short." (Order at 27.) First, plaintiff simply aggregates a series of conclusory assertions — such as generalized assertions about access to information, corporate roles or the "simplicity" of the alleged scheme — none of which, individually or collectively, gives rise to a strong inference that any defendant acted with intent to defraud or with deliberate recklessness. *See VeriFone*, 704 F.3d at 708-09 (mere position or access to records, without particularized allegations showing actual knowledge or conscious disregard, is not enough). Second, plaintiff's continued speculation that defendants must have known or were reckless in not discovering alleged accounting improprieties, simply because they purportedly had oversight over the Company's response to government investigations or based on sheer magnitude of transactions, still does not bridge the gap between mere negligence and scienter. The PSLRA requires facts alleging an actual intent to mislead, or deliberate recklessness, which is "an *extreme departure* from standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (emphasis added).

**A.    No Alleged Facts Give Rise to a Strong Inference That Kuick Knew About the Unauthorized Intercompany Loans, Much Less That Loan Proceeds Went To Wiederhorn**

The entirety of Plaintiff's scienter theory against Kuick is premised on his role as CFO, presumed "access" to reports containing unspecified information, and his participation in the Company's response to government investigations. Plaintiff's opposition does not cure the critical deficiency that the SAC contains no particularized allegations supporting a strong inference that defendant Kuick had actual knowledge of, or was deliberately reckless in not discovering and disclosing, the purportedly unauthorized Intercompany Loans (whether pursuant to the IRCA or any pur-

-16-

ported non-IRCA borrowing facility) that are at the core of plaintiff's theory.[10]

First, plaintiff does not allege that Kuick orchestrated or participated in the underlying allegedly undisclosed transactions, or even knew about them contemporaneously. Instead, plaintiff argues that Kuick became aware of the loans only at some unspecified time after the government began investigating Wiederhorn, allegedly through his supposed role supervising the Company's document production(s) in response to government investigations. (Opp. at 17.) But the SAC does not allege any specific facts actually supporting that Kuick had any role in supervising any document production or response to government inquiries. Rather, plaintiff relies upon generalities about Kuick's position to assume that he must have at some point during the Class Period become aware of these historical transactions and the circumstances surrounding them. Such "position-based" or "should have known" theories have been uniformly rejected in the Ninth Circuit as insufficient to plead scienter under the PSLRA's rigorous standard. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (where a complaint "relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short" of the PSLRA standard). In such cases, the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware. *Id.*; *see also ESG Capital Partners, LP v. Stratos*, 2013 WL 12131355, at *5 (C.D. Cal. June 26, 2013) (conclusory allegations that defendant "knew about" the alleged misconduct insufficient to allege scienter).

Here, however, the SAC contains no allegations showing that upon reviewing such materials Kuick actually discovered or was made aware of the unauthorized

---

[10] Rosen is not alleged to have any liability with respect to the Company's alleged failure to disclose related party transactions in the 2021 Annual Report or 2022 Prospectus. (SAC ¶¶ 87, 101.) To the extent plaintiff shifts his theory, the same arguments herein apply equally with respect to Rosen. (*See* Mot. at 17 n.10.)

-17-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

nature or true beneficiaries of the Intercompany Loans.  Plaintiff fails to allege, for example, that Kuick actually received, reviewed or understood specific information about the alleged unauthorized loans to FCCG, much less that they would at some unspecified point in time thereafter be routed to Wiederhorn.[11]  The fact remains that, as defendants argued in their opening memorandum but plaintiff fails to address in opposition, the SAC does not contain the necessary allegations regarding Kuick's alleged exposure to information rendering his alleged statements and omissions false or misleading.  The SAC's allegations thus do not support a *strong* (*i.e.*, cogent and compelling) inference that Kuick knowingly or recklessly intended to mislead investors by failing to disclose a scheme about which the alleged facts do not indicate he knew existed.  Plaintiff's argument that "Defendants attempted to cover up the self-dealing payments" thus cannot even come into play where, as here, the SAC's allegations do not first show that the defendant had knowledge *to* conceal. (Opp. at 18.)

Plaintiff also fails to allege any personal benefit, motive, or concrete facts showing that Kuick intended to deceive investors or participated in affirmatively concealing information about the loans.  His assertion that "Kuick, and Rosen attempted to conceal the fraud, including by creating then disbanding the SRC" is unsupported by any allegation in the SAC.  (Opp. at 16.)  Wiederhorn's alleged disbanding of the SRC and firing independent directors also do not help establish Kuick's or Rosen's scienter, because no alleged facts show that the SRC actually communicated any purported findings to Kuick or Rosen.  (*See* SAC ¶ 187.)

---

[11] In his opposition, plaintiff fabricates facts that are not alleged in the SAC.  (*See, e.g.*, Opp. at 17 (arguing without citation to the SAC that records provided to the government included purported "cash reports" that Wiederhorn instructed "cash managers" at FAT Brands to prepare for him); *id.* at 18 (similarly arguing, without support, that "Defendants produced, in part, the daily cash reports prepared per Wiederhorn's instructions").)  Even assuming, *arguendo*, that the cash reports were provided to the government, there still are no facts showing: (1) what exactly those cash reports would have revealed; or (2) that Kuick or Rosen reviewed them.

-18-

Plaintiff's fallback argument that Kuick and Rosen were at a minimum "reckless" for *not* uncovering the alleged historical misconduct during the course of government responses is mere speculation unsupported by particularized facts. (Opp. at 17, 20.) Such conclusory allegations fall far short of establishing that "danger of misleading buyers or sellers was either known to the defendant or so obvious that the actor must have been aware of it." *Prodanova*, 993 F.3d at 1106.

**B.      No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation**

Plaintiff conflates knowledge of the existence of a government inquiry with knowledge that the Company itself faced potential liability. As defendants demonstrated, no allegations in the SAC actually allege *when* FAT Brands became a target of any government investigation, much less when specifically any defendant found that out. The opposition, as with the SAC, fails to point to any particularized allegation in the SAC that FAT Brands was in reality a target of the U.S. Attorney's investigation at the time any of the challenged statements was made. Instead, plaintiff continues to speculate — without supporting facts — that defendants should have known that FAT Brands was a target by virtue of their purported roles in document production or oversight of government requests. (Opp. at 15-16.)

The opposition's suggestion that defendants "should have known" due to the scope of the requests or the nature of the investigation is precisely the type of generalized, hindsight-driven theory disfavored by both Supreme Court and Ninth Circuit authority. *See Tellabs*, 551 U.S. at 323; *Silicon Graphics*, 183 F.3d at 988. Simply holding an officer or director position, or having some unspecified responsibility for responding to regulatory inquiries (even if actually alleged in the SAC, which it is not), cannot establish that any defendant knew FAT Brands had become a target of the government's criminal investigation. Plaintiff points to no communication, document, government notice or former employee allegation suggesting the Company was a target at any earlier point. Nor does plaintiff identify a single

-19-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

meeting, correspondence or specific event during the Class Period at which any defendant was apprised that the investigation had shifted focus to the Company itself, as opposed to Wiederhorn individually. Without such allegations, all reasonable competing inferences — such as that defendants believed the investigation focused on Wiederhorn individually or that status as a "target" remained ambiguous — are at least as compelling as plaintiff's theory of scienter. Absent any well-pled, particularized facts indicating that any defendant actually knew or deliberately disregarded information about the Company's status as a target, plaintiff cannot satisfy the heightened scienter requirement under the PSLRA. In sum, the SACs scattered allegations — taken together or separately — do not permit (let alone compel) an inference of scienter that is "at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 324.

## IV.    THE COMPLAINT FAILS TO STATE A CONTROLLING PERSON LIABILITY CLAIM FOR VIOLATION OF SECTION 20(a)

Defendants demonstrated that plaintiff failed to plead facts sufficient to state a controlling person claim under Section 20(a) by failing to plead both (1) a primary violation of the securities laws and (2) facts showing that Kuick or Rosen had the actual power to control the primary violator. (*See* Mot. at 21.) With respect to the first element, as explained above, plaintiff's allegations of falsity and scienter fall far short. Plaintiff wholly ignores the second element and incorrectly assumes that if he adequately alleges a primary violation by FAT Brands (he does not), then he automatically "also alleges Section 20(a) claims against the Individual Defendants." (Opp. at 20.) Although it is not necessary to plead scienter to state a Section 20(a) claim, plaintiff still must plead facts showing that each defendant, at a minimum, had the ability to control the violator's alleged fraudulent act. As defendants argued (and as plaintiff failed to address in his opposition), the SAC does not do so.

//

//

-20-

## V.    PLAINTIFF'S "EXHIBIT 1" SHOULD BE DISREGARDED

In an apparent attempt to circumvent Local Rule 11-6.1's 7,000 word limit, which excludes "any indices or exhibits," plaintiff attached to his opposition "Exhibit 1," a purported "Table of False Statements."  (ECF No. 38-1.)  The table's first two columns reflect the allegedly false or misleading statements alleged in the SAC and their respective sources.  The third column, however, titled "Reason for Falsity," consists of legal argument and is improper.  In ruling on a motion to dismiss, the Court may consider only the factual allegations as pled in the complaint, additional facts in materials of which it may take judicial notice, and documents that are incorporated by reference. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  "Exhibit 1" exceeds the scope of what may be considered and should be disregarded.

## VI.    CONCLUSION

The Court should grant the motion to dismiss the SAC, without further leave to amend.  (Order at 29 ("While there may be a Second Amended Complaint, there will be no Third.  Any future successful motion to dismiss will be granted without leave to amend.").)

Dated:  December 29, 2025  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____
                              */s/ John P. Stigi III*
                              JOHN P. STIGI III
                              POLLY TOWILL
                              Attorneys for Defendants

-21-

DEFENDANTS' REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

# CERTIFICATION OF WORD COUNT

The undersigned, counsel of record for FAT Brands, Inc., Andrew Wiederhorn, Kenneth Kuick and Robert Rosen, certifies that this brief contains 6,894 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  December 29, 2025  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____
    */s/ John P. Stigi III*
    JOHN P. STIGI III
    POLLY TOWILL
    Attorneys for Defendants

-22-