SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN P. STIGI III, Cal. Bar No. 208342
12275 El Camino Real, Suite 100
San Diego, California 92130
Telephone:  858.720.8900
Facsimile:  858.509.3691
Email:       jstigi@sheppardmullin.com

POLLY TOWILL, Cal. Bar No. 120420
MADALYN A. MACARR, Cal. Bar No. 301539
TORI KUTZNER, Cal. Bar No. 334057
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone:  213.620.1780
Facsimile:  213.620.1398
Email:       ptowill@sheppardmullin.com
             mmacarr@sheppardmullin.com
             tkutzner@sheppardmullin.com

Attorneys for Moving Defendants
ANDREW A. WIEDERHORN, KENNETH J.
KUICK and ROBERT G. ROSEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL KATES, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FAT BRANDS, INC., ANDREW A. WIEDERHORN, KENNETH J. KUICK, and ROBERT G. ROSEN,<br><br>Defendants. | Case No. 2:24-cv-04775-MWF-MAA<br><br>The Hon. Michael W. Fitzgerald<br><br>CLASS ACTION<br><br>**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>[*Request for Judicial Notice and Declaration of Madalyn Macarr filed concurrently herewith; [Proposed] Order submitted concurrently herewith*]<br><br>Hearing Date:  May 18, 2026<br>Time:          10:00 a.m.<br>Department:     5A<br>Trial Date:    None Set |

Case No. 2:24-cv-04775-MWF-MAA

## NOTICE OF MOTION AND MOTION

TO LEAD PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 18, 2026, at 10:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 5A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, in the courtroom of the Honorable Michael W. Fitzgerald presiding, individual defendants Andrew A. Wiederhorn, Kenneth J. Kuick and Robert G. Rosen will and hereby do move the Court pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, *et seq.*, for an order dismissing plaintiff Mitchell Kates's Second Amended Complaint for Violation of the Federal Securities Laws (Dkt. 36) (the "SAC").[1]

This motion is brought on the grounds that plaintiff fails to meet the PSLRA and Rule 9(b) heightened requirements for pleading a claim for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, due to plaintiff's continued failure to (a) specify actionable misstatements, (b) allege sufficient facts demonstrating the reasons defendants' statements were false or the alleged omissions misleading at the time they were made and (c) allege particularized facts giving rise to a strong inference that defendants made the allegedly false or misleading statements with scienter. Plaintiff's claim for violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), falls with plaintiff's Section 10(b) claim.

---

[1] On January 26, 2026, defendant FAT Brands, Inc. ("FAT Brands" or the "Company") filed a voluntary Petition of Bankruptcy under Chapter 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Texas. (*See* ECF No. 41) (Notice of Bankruptcy). On January 29, 2026, the Court entered an order staying the action pursuant to 11 U.S.C. § 362. (ECF No. 42.) On April 2, 2026, the Court entered an order lifting the stay as against the individual defendants, the moving parties here. The Court granted leave for the individual defendants to file a renewed motion to dismiss the SAC. (ECF No. 46.)

-1-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

This motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on November 19, 2025 and again on April 15, 2026.  (Declaration of Madalyn Macarr ¶ 2.)  Counsel for defendants met and conferred telephonically with plaintiff's counsel regarding the deficiencies in the SAC and explained the reasons why the SAC's claims are subject to dismissal.  (*See id.*)  Plaintiff declined to amend or dismiss any portion of his SAC. (*Id.*)

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, defendants' Request for Judicial Notice and the Declaration of Madalyn Macarr filed in support thereof, as well as the pleadings and papers on file in this action, any other matters of which this Court may or must take judicial notice and such other oral and/or documentary evidence or argument as may be presented to the Court at or before the time of the hearing.

Dated:  April 16, 2026          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:    _____
                */s/ John P. Stigi III*
              JOHN P. STIGI III
              POLLY TOWILL
              MADALYN A. MACARR
              Attorneys for Defendants
        ANDREW A. WIEDERHORN, KENNETH J.
          KUICK and ROBERT G. ROSEN

-2-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................1

II. RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY .................2

    A. FAT Brands, Its Management and Ownership .......................................2

    B. The Alleged Wrongdoing at the Core of the SAC ................................3

    C. The Allegedly False and/or Misleading Statements and Omissions ....................................................................................................4

    D. The Alleged Corrective Disclosures .....................................................6

III. LEGAL STANDARDS ...................................................................................6

IV. ARGUMENT ..................................................................................................8

    A. Plaintiff Ignores The Court's Ruling That The Complaint's Opinion and Forward-Looking Statement Allegations Are Non-Actionable ..............................................................................................8

    B. The SAC Still Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made .........10

        1. No Undisclosed Intercompany Loan to FCCG Rendered Any Statement False or Misleading .............................................10

        2. The Company's Risk Disclosures Were Not Misleading ...........14

    C. The Alleged Item 404 and GAAP Disclosure Violations and Alleged Section 402 Violation Do Not State a Section 10(b) Claim .....................................................................................................14

    D. The Alleged Failure to Disclose Contingent Losses Under GAAP Still Fails ..............................................................................................16

    E. The SAC Still Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter .............................................................17

        1. The Alleged Facts Still Fall Far Short of Giving Rise to a Strong Inference That Kuick Knew About the Unauthorized Loans, Much Less That Loan Proceeds Went To Wiederhorn ...................................................................17

        2. No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation ........................................................19

    F. The SAC Fails to State a Controlling Person Liability Claim for Violation of Section 20(a) .....................................................................21

-i-

V.    CONCLUSION ..................................................................................................21

SMRH:4901-1305-5648.2

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................................... 6, 7

*Brody v. Transitional Hosps. Corps*
  280 F.3d 997 (9th Cir. 2002) ........................................................................ 9

*DSAM Global Value Fund v. Altris Software*
  288 F.3d 385 (9th Cir. 2002) ...................................................................... 18

*Ebner v. Fresh, Inc.*
  838 F.3d 958 (9th Cir. 2016) ........................................................................ 7

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*
  751 F.3d 990 (9th Cir. 2014) ........................................................................ 7

*ESG Capital Partners, LP v. Stratos*
  2013 WL 12131355 (C.D. Cal. June 26, 2013) ........................................... 18

*In re Fusion-io, Inc. v. Sec. Litig.*
  2015 U.S. Dist. LEXIS 18304 (N.D. Cal. Feb. 12, 2015) ............................ 15

*Glazer Cap. Mgmt., LP v. Magistri*
  549 F.3d 736 (9th Cir. 2008) ................................................................. 17, 18

*Hausberg v. CompUSA*
  1995 U.S. Dist. LEXIS 20333 (N.D. Tex. Oct. 30, 1995) ........................... 11

*Kates v. FAT Brands Inc.*
  2025 U.S. Dist. LEXIS 203673 (C.D. Cal. Oct. 15, 2025) ...................... 1, 6, 7

*Levi v. Atossa Genetics, Inc.*
  868 F.3d 784 (9th Cir. 2017) ...................................................................... 15

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*
  601 U.S. 257 (2024) ................................................................................... 15

*Mendoza v. HF Foods Grp., Inc.*
  2021 U.S. Dist. LEXIS 1690982 (C.D. Cal. Aug. 25, 2021) ....................... 14

*Nguyen v. Endologix, Inc.*
  962 F.3d 405 (9th Cir. 2020) ...................................................................... 21

*In re NVIDIA Corp. Sec. Litig.*
  768 F.3d 1046 (9th Cir. 2014) .................................................................... 21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*
  135 S. Ct. 1318 (2015)................................................................................... 8

-iii-

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*
  759 F.3d 1051 (9th Cir. 2014) ................................................................... 17

*Prodanova v. H.C. Wainwright & Co., LLC*
  993 F.3d 1097 (9th Cir. 2021) .............................................................. 17, 20

*Purple Mt. Trust v. Wells Fargo & Co.*
  432 F. Supp. 3d 1095 (N.D. Cal. 2020) ..................................................... 21

*In re Rigel Pharms., Inc. Sec. Litig.*
  697 F.3d 869 (9th Cir. 2012) ...................................................................... 7

*SEC v. Dunn*
  587 F. Supp. 2d 486 (S.D.N.Y. 2008) ...................................................... 13

*Somers v. Apple, Inc.*
  729 F.3d 953 (9th Cir. 2013) ...................................................................... 6

*South Ferry LP, No. 2 v. Killinger*
  542 F.3d 776 (9th Cir. 2008) .................................................................... 18

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................................... 7

*Webb v. SolarCity Corp.*
  884 F.3d 844 (9th Cir. 2018) .................................................................... 19

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009) .............................................................. 16, 18

Statutes, Rules and Regulations

15 U.S.C.
  § 78t(a) ....................................................................................................... 20
  § 78u-4(b)(2) .............................................................................................. 17
  § 78u-5(c)(1)(A)-(B) .................................................................................... 9

Private Securities Litigation Reform Act of 1995 ................................... *passim*

Sarbanes-Oxley Act
  § 402 ...................................................................................................... 6, 14

Securities Exchange Act of 1934
  § 10(b) .................................................................................................. *passim*
  § 20(a) ............................................................................................. 1, 20, 21

17 C.F.R. § 229.404 ............................................................... 1, 6, 14, 15, 16

17 C.F.R. § 240.10b-5 .......................................................... 1, 6, 14, 15, 16

Fed. R. Civ. P. Rule 8 ................................................................................... 7

Fed. R. Civ. P. Rule 9(b) .................................................. 1, 6, 7, 12, 13

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 6, 7

-iv-

Defendants Andrew Wiederhorn ("Wiederhorn"), Kenneth Kuick ("Kuick") and Robert Rosen ("Rosen") respectfully submit this memorandum in support of their motion to dismiss lead plaintiff's Second Amended Class Action Complaint (Dkt. 36) (the "SAC") for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq*.

## I. INTRODUCTION

The SAC, like the previously dismissed Amended Class Action Complaint (the "AC"), purports to allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Like the AC, the SAC again alleges that statements regarding FAT Brands' status as a target of, and its cooperation with, government investigations are false.  It also again alleges that defendants made misleadingly incomplete disclosures regarding certain purportedly unauthorized intercompany loans between FAT Brands and its former parent entity and Wiederhorn, allegedly orchestrated to serve Wiederhorn's personal financial interests.

In dismissing the AC, this Court deemed the alleged misstatements regarding government investigations to be nonactionable opinion or forward-looking statements.  As to the allegedly misleading or incomplete related party transaction statements, this Court held that plaintiff failed to sufficiently plead falsity. *Kates v. FAT Brands Inc.*, 2025 U.S. Dist. LEXIS 203673 (C.D. Cal. Oct. 15, 2025), Dkt. 35 (the "Order"), at 2.  Specifically, plaintiff failed to explain why the disclosures that were made were false or misleading in light of defendants' remaining disclosures.  "For purposes of Plaintiff's possible amendment," the Court also addressed defendants' argument that plaintiff had not sufficiently alleged scienter under the PSLRA. *Id.* at 26.  In that regard, it explained that the AC's allegations "f[ell] far short of alleging a strong inference of scienter" as to Kuick and Rosen with respect to the alleged related party transactions. *Id.* at 27.

The SAC fails to remedy the material deficiencies identified in the Court's Order granting defendants' motion to dismiss the AC.  As to the statements regarding FAT Brands' status as a target of and its cooperation with government investigations, plaintiff offers no new well-pled facts to convert opinion statements about the status of government investigations, and forward-looking statements about cooperating with government investigations, into actionable securities fraud.  Nor does plaintiff allege any facts showing that the Company's stated belief was actually false at the time the statements were made, or that any defendant knew at any time during the Class Period of any existing facts that should have been but were not disclosed to make the statements not misleading.  As to the related party transactions, the amendments do not adequately address the core analytical and factual gaps the Court highlighted. Plaintiff still fails to explain why the related party transactions that *were* disclosed in the Company's filing were insufficient to make later statements not false or misleading, and so "fails to identify what related party transactions took place that should have been, but were not, disclosed." (Dkt. 22.)  If anything, the SAC's new and self-contradictory allegations underscore why the SAC should be dismissed without leave to amend:  plaintiff lacks the facts needed to plead the statement's falsity with the requisite specificity.  The SAC's minimal attempts to rectify the deficiencies with respect to the AC's scienter allegations likewise fall short.

For these reasons, as well as the additional reasons detailed herein, the SAC fails to state a claim upon which relief can be granted, and should be dismissed in its entirety, without leave to amend.

## II. RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY[2]

### A. FAT Brands, Its Management and Ownership

FAT Brands is a restaurant franchisor that generates revenues by charging its

---

[2] Plaintiff made no material changes to his factual background allegations. (*Compare* SAC ¶¶1-70 *with* AC ¶¶1-70.)

-2-

franchisees an initial franchise fee and ongoing royalty fees. (SAC ¶¶2, 25.) Wiederhorn served as FAT Brands' CEO beginning in 2006. (*Id.* ¶36.)

Before FAT Brands' 2017 initial public offering ("IPO"), Fog Cutter Capital Group Inc. ("FCCG"), a privately held company controlled by Wiederhorn, owned 100 percent of FAT Brands' common stock and voting power. (*Id*. ¶¶29, 36, 42.) Following the IPO, FCCG retained 80 percent of FAT Brands' common stock and voting power. (*Id*. ¶¶43.) FCCG merged with FAT Brands in December 2020 (the "Merger"). (*Id*. ¶¶36, 42, 63.)

**B.    The Alleged Wrongdoing at the Core of the SAC**

The SAC alleges that Wiederhorn "looted" FAT Brands by causing "FCCG to loan him tens of millions of dollars" (the "Shareholder Loans"), and then caus[ing] FAT Brands to loan the money to FCCG to cover those debts" (the "Intercompany Loans"), and "then caus[ing] the merger of FAT Brands and FCCG to dissolve the intercompany loans" without repayment from FCCG. (SAC ¶¶54, 61, 67; *see also id.* ¶88 ("Effective with the Merger with FCCG, the Intercompany Agreement was terminated and intercompany balances were eliminated in consolidation").)

In April 2020, the companies entered into an Intercompany Revolving Credit Agreement ("IRCA") which, to reflect — and ratify — FCCG's already then outstanding indebtedness to FAT Brands, carried an initial balance of $21.1 million, measured as of December 29, 2019. (SAC ¶88; RJN Ex. C.) As disclosed, this balance receivable under the IRCA had, by March 29, 2020, increased to $26,854,000 and, by September 27, 2020, FAT Brands was owed more than $38 million from its "affiliates." (RJN, Ex. A, ¶¶7, 50; *see also* RJN, Ex E at 26; Ex. G at 25; *see infra*, Section IV.B.1.)

Plaintiff nonetheless focuses the SAC on a small subset of the overall alleged "looting" allegations, namely approximately $9.6 million in alleged Intercompany Loans made in 2020 which, contrary to certain terms in the IRCA, allegedly were not approved by FAT Brands' Board of Directors in advance. (*Id.* ¶¶126, 128.) From

-3-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

there, the SAC alleges that "Wiederhorn's misuse of corporate funds" resulted in investigations by the Department of Justice ("DOJ") and the SEC (*id.* ¶4), which investigations ultimately resulted in the U.S. Attorney's Office indicting FAT Brands and Wiederhorn, and the SEC filing a complaint against FAT Brands and Wiederhorn in May 2024 (the "Indictment" and the "SEC Complaint," respectively).  (SAC ¶¶8, 127, 136.)  On July 29, 2025, the DOJ filed an unopposed motion to dismiss the Indictment without prejudice against all defendants.  (*Id.* ¶139 n.2.)  Plaintiff speculates, "[u]pon information and belief" but without specifying any basis for such information or belief, that the "DOJ's dismissal of the Indictment was not because the factual allegations therein were untrue or inaccurate but was politically motivated." (*Id.*)[3]  On March 27, 2026, the SEC similarly stipulated to dismiss the SEC Complaint "based on the facts and circumstances of this case and in light of the evidence developed in discovery."  (RJN, Ex. J).

**C.      The Allegedly False and/or Misleading Statements and Omissions**

Plaintiff first challenges the Company's statement that, other than the transactions disclosed in specific notes to the Company's audited consolidated financial statements in its annual report for the fiscal year ended December 26, 2021 filed on March 23, 2022 (the "2021 Annual Report"):

> [S]ince December 29, 2019, there has not been, nor is there currently proposed, any transaction or series of similar transactions to which we were or will be a party: in which the amount involved exceeds $120,000; and in which any director, executive officer, shareholder who beneficially owns 5% or more of our common stock or any member of their immediate family had or will have a direct or indirect material interest.

(SAC ¶88.)  Plaintiff contends this statement was false or misleading because FAT Brands did not disclose the approximately $9.6 million in alleged Intercompany

---

[3] By making this conclusory and speculative allegation, Plaintiff attempts to sidestep "acknowledg[ing] critical fact developments that contradict the incorporated allegations" from the DOJ's Indictment upon which he so heavily relies.  (Order at 21.)

-4-

Loans FAT Brands made to FCCG in 2020 that were ultimately routed to Wiederhorn's personal accounts. (*Id.* ¶89.)

Plaintiff next contends that a disclosed "Risk Factor" in the Company's Form 424B5 Prospectus Supplement filed on November 14, 2022, was misleading for the same reason. Specifically, the Company disclosed that FAT Brands was "controlled by [FCCG]" and warned that FCCG's interests "may differ from those of our public stockholders." (SAC ¶102.) Plaintiff nevertheless attacks this "Risk Factor" as misleading because it did not tell investors that Wiederhorn had already been using FCCG to "loot[] the Company." (*Id.* ¶103.)

With respect to governmental investigations, the Company allegedly disclosed that the U.S. Attorney's Office and the SEC informed it in December 2021 that they had opened investigations relating to the Company and Wiederhorn concerning, among other things, the companies' Merger and transactions between these entities and Wiederhorn. (*Id.* ¶¶98, 106, 114, 117, 120, 123.) The Company further disclosed that it "intends to cooperate with the U.S. Attorney and the SEC regarding these matters and is continuing to actively respond to inquiries and requests from [them]." (*Id.*)[4] Finally, the Company advised investors that "[w]e believe that the Company is not currently a target of the U.S. Attorney's investigation." (*Id.*)[5] Plaintiff contends these disclosures were false or misleading because, assuming defendants were indeed cooperating with the government's requests, they "should have known, or were reckless in not knowing, that FAT Brands was a target of the investigation for its role in funneling money from investors to [Wiederhorn]." (*Id.* ¶¶99, 107, 115, 118, 121, 124.) Plaintiff contends that the Company misled investors by "assur[ing] investors that the Company was not the target of the investigation" and by "stating that the

---

[4] The iteration of this statement in the 2021 Annual Report stated that "[t]he Company is cooperating with the government regarding these matters." (SAC ¶98.)

[5] This statement was repeated in the Company's 2021 Annual Report and in various annual and quarterly reports. (SAC ¶¶106, 114, 117, 120, 123.)

-5-

Company was not a target of the investigation," when in fact it was. (*Id.*) In the alternative, plaintiff alleges that defendants misled investors by stating that the Company was cooperating with the governmental investigation, when "in truth they were not cooperating." (*Id.*)

As a separate theory of omissions-based liability, plaintiff alleges that, by failing to disclose the Intercompany Loans as "material related party transactions," defendants violated their duty to disclose under Item 404(a) of Regulation S-K, 17 C.F.R. § 229.404 ("Item 404"), and U.S. Generally Accepted Accounting Principles ("GAAP"), and violated the Sarbanes-Oxley Act Section 402. (SAC ¶¶142-152.)

Lastly, plaintiff alleges that defendants also violated GAAP by failing to disclose "contingent losses" relating to and arising out of the U.S. Attorney's and SEC's investigations. (*Id.* ¶153.)

**D.    The Alleged Corrective Disclosures**

Plaintiff alleges that defendants partially "revealed the truth" starting on March 12, 2024, when the Company filed its annual report for the fiscal year ended December 31, 2023 and excluded the language included in its prior SEC filings that "[w]e believe that the Company is not currently a target of the U.S. Attorney's investigation." (*Id.* ¶¶123, 124.) Plaintiff construes this as an admission that the Company had previously been a target of that investigation. (*Id.*) According to plaintiff, the truth became "fully exposed" on May 10, 2024, when the SEC announced that it had filed the (now-dismissed) SEC Complaint against FAT Brands and Wiederhorn. (*Id.* ¶127.)

### III.    LEGAL STANDARDS

"'Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.'" *Kates*, 2025 U.S. Dist. LEXIS 203673, at *21 (citing *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is

-6-

entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In ruling on the Motion under Rule 12(b)(6), *Twombly, Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny control.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

"The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief." *Kates*, 2025 U.S. Dist. LEXIS 203673, at **21-22 (citations omitted).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Allegations of fraud must also meet a higher pleading standard.  *See* Fed. R. Civ. P. 9(b) (requiring the pleading party to "state with particularity the circumstances constituting fraud or mistake").  It is well-established that "[a]t the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b-5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of

-7-

both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). The PSLRA further requires plaintiffs to plead scienter with particularity: "a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)).

## IV.    ARGUMENT

**A.    Plaintiff Ignores The Court's Ruling That The Complaint's Opinion and Forward-Looking Statement Allegations Are Non-Actionable**

Defendants moved to dismiss the AC to the extent it sought to premise liability on the statement "*we believe* that the Company is not *currently* a target of the U.S. Attorney's investigation." (SAC ¶¶98, 106, 114, 117, 120) (emphasis added).)  Relying upon *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1322-26 (2015), defendants argued that this "[w]e believe" statement is a classic and unmistakable opinion statement which is actionable only if the speaker did not truly hold the opinion or when it misleadingly convey facts regarding how the speaker formed the opinion or the basis for the opinion.  The Court agreed that plaintiff did not allege facts calling into question the factual basis of any of defendants' opinions.  (Order at 16.)  Specifically, the Court observed that Kuick's or Rosen's involvement in turning Company documents over in a government investigation of *Wiederhorn* would not "obviously imply" that Kuick or Rosen were aware that *FAT Brands* would become a target of the investigation, such that the factual basis for the challenged opinion statement could be called into question.  (*Id.*)  Even as to Wiederhorn, the Court held that the absence of any facts that he or any other executives "knew that the government's investigation targeted the Company itself when it made these opinion statements" meant that the factual basis for the Company's opinion statement could not be called into question.  (*Id.*)

Plaintiff purports to address this deficiency in paragraphs 187 through 189 of the SAC.  The new allegations, however, add only that in the course of overseeing the

-8-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Company's response to the government investigation, Kuick and Rosen "had an opportunity to investigate" the allegations therein, "had access to" certain alleged cash reports prepared for Wiederhorn by FAT Brands' cash managers, and "had access to the [Special Review Committee's] findings" regarding Wiederhorn's alleged conduct. (SAC ¶187; *see also id.* ¶189 (concluding that Kuick and Rosen "had access to facts that showed the Company's involvement — and therefore culpability — in Wieder-horn's self-dealing cash transfers").)   But these allegations regarding purported "access" are themselves not particularized because they fail to show Kuick and Rosen availed themselves of such access.   And, even assuming allegations showed such access occurred, none identify the information that would have called into question the absence of a factual basis for the opinion statement regarding the Company's statement about its then-*current* status as a target or non-target of any government investigation.   *Brody v. Transitional Hosps. Corps.*, 280 F.3d 997, 1006 (9th Cir. 2002) (holding that to survive dismissal, a plaintiff must specify why the defendant's statements were misleading or untrue, not simply why they were incomplete).

Defendants also moved to dismiss the AC's challenge as to the statement that the "Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters" (SAC ¶¶106, 114, 117, 120) because it constitutes a statement of future intent and the Company clearly designated it as a forward-looking statement.   The Court agreed, holding that the "phrasing that the Company 'intends to cooperate' is clearly forward looking," and as such, would "only give rise to liability if it was made with actual knowledge that it is false or misleading."   (Order at 19; *see also* 15 U.S.C. § 78u-5(c)(1)(A)-(B).)   The only new allegation in the SAC purporting to make this showing emphasizes that Wiederhorn disbanded the Special Review Committee (SRC) after it discovered the "truth" about his transactions.   (SAC ¶¶115, 118, 121.) But this Court already held that "Plaintiff's allegations that the SRC was disbanded

-9-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

and independent directors were removed is not enough to establish that these forward-looking statements were false." (Order at 19.)[6]

## B. The SAC Still Fails to Plead Sufficient Facts Showing Why Defendants' Statements Were False or Misleading When Made

### 1. No Undisclosed Intercompany Loan to FCCG Rendered Any Statement False or Misleading

Plaintiff concedes that the 2021 Annual Report disclosed that "[s]ubsequent to the issuance of the Original Note, the Company and certain of its direct or indirect subsidiaries made additional intercompany advances" and that "[e]ffective with the [December 2020] Merger with FCCG, the Intercompany Agreement was terminated and intercompany balances were eliminated in consolidation."[7]  (SAC ¶¶89, 94.) Plaintiff nevertheless complains that the Company's disclosures in the 2021 Annual Report filed in March 2022 regarding its related party transactions were false or misleading because they did not sufficiently describe the dollar amount of the historical underlying transactions in 2020 which were eliminated as part of the December 2020 Merger, or that "most, if not all" of the intercompany loans ultimately went to Wiederhorn. (*Id.* ¶89.)

As a preliminary matter, plaintiff does not — and cannot — allege that the Company failed to accurately disclose the balance of the Intercompany Loans it made to FCCG in its public filings. It did, as illustrated below:

---

[6] Even assuming that the Company's statement that it "believed" it was not "currently" a target of the U.S. Attorney's investigation is actionable, the allegation fails to state a claim because the SAC conspicuously still alleges no facts showing *when* FAT Brands actually became a target of that investigation.  The SAC, the *Harris* Complaint, the Indictment and the SEC Complaint shed no light on when the Company, as distinct from Wiederhorn, became an investigation target.  Thus, no alleged facts show that the Company's stated belief was actually false at the time the statements were made, or that defendants knew at any time during the Class Period of any existing facts that should have been disclosed to make the statements not misleading.

[7] Identical disclosures were also made in the 2020 Annual Report, filed on March 29, 2021 for the period ended December 27, 2020.  (RJN, Ex. D at F-27 [Note 13].)

-10-

| Filing | Filing Date | Disclosures |
|---|---|---|
| Form 10-Q for 2020 Q1, RJN Ex E at p. 26 | Filed on May 29, 2020, for the period ended March 29, 2020 | **NOTE 12.  RELATED PARTY TRANSACTIONS**. "As of March 29, 2020, the balance receivable under the Intercompany Agreement was $26,854,000." |
| Form 10-Q for 2020 Q2, RJN Ex F at p. 25 | Filed on August 7, 2020, for the period ended June 28, 2020 | **NOTE 12.  RELATED PARTY TRANSACTIONS**. "As of June 28, 2020, the balance receivable under the Intercompany Agreement was $29,529,000." |
| Form 10-Q for 2020 Q3, RJN Ex G at p. 28 | Filed on November 12, 2020, for the period ended September 27, 2020 | **NOTE 12.  RELATED PARTY TRANSACTIONS**. "As of September 27, 2020, the balance receivable under the Intercompany Agreement was $33,382,000." |

Plaintiff does not explain why the Company needed to re-disclose historical information regarding transactions that took place in 2020 in order to make the disclosures in the 2021 Annual Report not misleading, particularly long after that already disclosed information was rendered moot by the fact that all intercompany balances were eliminated as of December 2020 (as disclosed repeatedly).  Ordinarily, the securities laws do not require the disclosure (much less re-disclosure) of stale, historical information.  *See Hausberg v. CompUSA*, 1995 U.S. Dist. LEXIS 20333 (N.D. Tex. Oct. 30, 1995) ("When discussing accurate historical information, there is no obligation to disclose additional information merely because it is material or would amplify what was said, unless omission of the additional information would cause the underlying statement to be materially misleading.").

In any event, in the context of the events and prior disclosures leading to the Company's fiscal year ended December 26, 2021, the descriptions of related party

-11-

transactions under the Notes to the Company's audited consolidated financial statements set forth in the 2021 Annual Report accurately and in sufficient detail disclosed the key material terms of the IRCA between the Company and FCCG. The description in Note 15 to the 2021 Annual Report, for example, includes the IRCA's initial balance of $21.1 million, its maximum $35 million capacity, and that effective with the December 2020 Merger, the IRCA "was terminated and the intercompany balances were eliminated in the consolidation." (SAC ¶88; RJN Ex. D at F-30.) As with the AC, the SAC never explains why this description did not sufficiently disclose in sufficient, relevant detail the IRCA as a related party transaction as of the date the disclosure was made: March 23, 2022.

Further, plaintiff's allegations regarding the alleged underlying transactions are now even less particularized than in the AC. Plaintiff now asserts that "most, if not all" of the intercompany loans were ultimately deposited into Wiederhorn's personal accounts, yet identifies no specific amount allegedly transferred to him. (SAC ¶89.)[8] Plaintiff likewise alleges that Wiederhorn caused FAT Brands to make cash advances "to FCCG and himself" in contravention of the IRCA, but again fails to allege what portion was purportedly received by Wiederhorn, or what portion of any advances to FCCG were undisclosed (particularly given the quarterly disclosures regarding the then-outstanding balances under the IRCA). (*Id.*) And although plaintiff alleges that the "majority of Wiederhorn's $9.6 million self-dealing cash transfers were done without board approval" (*id.* ¶95), the allegation lacks particularity and is conclusory.

---

[8] Following the Merger, on March 12, 2021, the Company filed a Form 8-K/A which provides the audited and unaudited historical financial statements of FCCG, which disclose a $16,803,000 "Loan to Stockholder" as of December 29, 2019 and $5,606,000 "Loan to Stockholder" as of September 27, 2020, and further describes in relevant part, in Note 4, that: "FCCG has made advances to Andrew A. Wiederhorn, the Company's CEO and significant stockholder (the "Stockholder Loan"). . . During the thirty-nine weeks ended September 27, 2020, FCCG forgave a portion of the Stockholder Loan and recorded a loss on forgiveness of loan to stockholder in the amount of $16,948,000. As of September 27, 2020, the balance outstanding on the Stockholder Loan was $5,606,000." (RJN, Ex. I.) The SAC contains no allegations purporting to show that these disclosures were false.

-12-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Indeed, to support this assertion (lifted entirely from the now-dismissed SEC Complaint),[9] plaintiff does not identify when FCCG transferred any portion of the Intercompany Loans to Wiederhorn, relative to when FCCG received the loans from FAT Brands.[10]  Moreover, the IRCA was instituted in late April 2020.  (SAC ¶ 88.) The $9.6 million referenced in the SAC purportedly reflects funds Wiederhorn "pocketed throughout 2020." (*Id.* ¶90.)  Yet, plaintiff does not allege what portion of that total amount was advanced after the IRCA, such that the transfers could plausibly be "in contravention of the [IRCA]."  (*Id.* ¶89.)  Nor does the SAC allege that FAT Brands intended or knew, at the time it made any Intercompany Loan, that the funds would be subsequently lent by Wiederhorn's controlled entity to Wiederhorn personally.    As the Court previously observed, "the purpose of requiring a particularized showing of falsity is that it 'prevents a plaintiff from skirting dismissal by filing a complaint with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful.'"  (Order at 24 (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)) (emphasis in original).)

Plaintiff also again alleges that the Company violated the IRCA by failing to obtain prior board approval for all of the Intercompany Loans made in 2020.  (SAC

---

[9] Plaintiff has diminished his reliance upon the now-dismissed Indictment, but still relies heavily upon the now-dismissed SEC Complaint as the *sole* source for his allegation that Wiederhorn "pocketed" $9.6 million of Intercompany Loans in 2020. Although, as this Court previously noted, "as a general matter, Plaintiff can rely on other complaints and proceedings in order to meet Rule 9(b) and PSLRA requirements" (Order at 21; RJN Ex. J), plaintiff's simple reprinting of the SEC's allegation does not satisfy the PSLRA here.  The problem with plaintiff's reliance is amplified because the SEC is not required to satisfy the same level or Rule 9(b) particularity demanded of private plaintiffs.  *See SEC v. Dunn*, 587 F. Supp. 2d 486, 501 (S.D.N.Y. 2008)

[10] The Court observed that the amounts in Paragraph 103 of the AC (unchanged in Paragraph 139 of the SAC) did not add up to $9.6 million, so it was unclear whether those amounts were subsumed into plaintiff's claim.  (Order, at 22.)  The additional problem is that, here too, plaintiff vaguely and imprecisely alleges only that the "majority" of the $6,201,101 identified therein as purportedly unapproved loans personally went to Wiederhorn.

-13-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

¶126.)  But these corporate governance provisions plainly constituted and operated as an internal FAT Brands corporate governance policy only.  "[W]hether a company violated its own internal policy is a matter of internal management and 'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'"  *Mendoza v. HF Foods Grp., Inc.*, 2021 U.S. Dist. LEXIS 1690982, at *20-22 (C.D. Cal. Aug. 25, 2021) (citation omitted).

The SAC thus still "fails to identify what related party transactions took place that should have been, but were not, disclosed" in light of the Company's other disclosures.  (Order at 22.)

### 2.    The Company's Risk Disclosures Were Not Misleading

Plaintiff contends the Company's disclosure of the risk that FCCG's interests "may differ from those of our public stockholders" given that FAT Brands was "controlled by [FCCG]" was misleading because it did not warn investors that Wiederhorn had already been "looting the Company" through the Intercompany Loans.  (SAC ¶103.)  The Court concluded that plaintiff had "not established why the Risk Disclosure statement was misleading in light of the disclosures of other intracompany transactions between FCCG and the Company" and demanded that plaintiff "allege with more specificity what transactions went undisclosed."  (Order at 25.)  For the same reasons discussed above (Section IV.B.1), plaintiff has failed to do so.  Accordingly, the Section 10(b) claim similarly fails to the extent premised upon this omissions-based statement.

### C.    The Alleged Item 404 and GAAP Disclosure Violations and Alleged Section 402 Violation Do Not State a Section 10(b) Claim

Having failed to allege any disclosure that was necessary to make any of defendants' challenged statements not misleading, plaintiff again relies upon Item 404 and GAAP as the sources of independent duties to disclose approximately $9.6 million in Intercompany Loans made in 2020 as well as alleged "round-tripping" of Company funds as "related party transactions" in the Company's SEC filings during the Class

-14-

Period. (SAC ¶141.) In the SAC, plaintiff adds a new — but equally deficient — theory of liability based upon the Company's alleged violation of Section 402 of the Sarbanes-Oxley Act of 2002 ("SOX"). (*Id.* ¶¶149-152.) The SAC asserts that the 2021 Annual Report was misleading because the Company "did not disclose" these transactions or violations. (*Id.* ¶¶144, 148.) Plaintiff's "pure omissions" theory fails under recent Supreme Court authority.

The Supreme Court's opinion in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024), forecloses plaintiff's "pure omissions" theories based on a putative duty to disclose information arising from Item 404, GAAP, or alleged SOX violations. In *Macquarie*, the Supreme Court held that there is no language in Section 10(b) or Rule 10b-5 that provides liability for pure omissions, or the failure to speak on a subject at all, even when there is a duty to disclose information. *Id.* at 264-65. Accordingly, there was no liability for failure to disclose information required by Item 303, unless the plaintiff could show that the "omission renders affirmative statements made [by the issuer] misleading." *Id.* at 265. *Macquarie*'s holding is based upon Rule 10b-5's "[l]ogic[] and plain text" and so applies whether the alleged source of the disclosure duty is Item 303 or, as is the case here, Item 404, SEC regulations imposing GAAP-related disclosure obligations, or an alleged SOX violation. *Id.* at 264.

Because the Court held that plaintiff had not demonstrated with the requisite specificity that the statements in the 2021 Annual Report were actionable false or misleading statements, it rejected plaintiff's previous argument that the putative failure to disclose the $9.6 million loans to Wiederhorn made the statements in the 2021 Annual Report misleading under *Macquarie*. (Order at 26.)

Here, again, the SAC lacks allegations showing any "affirmative statements made misleading" by the Company's alleged failure to disclose "related party transactions." *See Macquarie*, 601 U.S. at 265; *see also Levi v. Atossa Genetics, Inc.*, 868 F.3d 784, 800 (9th Cir. 2017). This "pure omissions" theory cannot form the basis of

-15-

a Rule 10b-5 claim. *See Macquarie*, 601 U.S. at 264; *see also In re Fusion-io, Inc. v. Sec. Litig.*, 2015 U.S. Dist. LEXIS 18304, at *54-55 (N.D. Cal. Feb. 12, 2015) ("[E]ven if Defendants had a duty [to disclose] under [Regulation S-K] . . . , their failure to do so cannot form a basis for Plaintiffs' § 10(b) claim."). Plaintiff thus fails to state a Section 10(b) claim to the extent he relies on a "duty to disclose" arising out of Item 404, GAAP or SOX.

**D.     The Alleged Failure to Disclose Contingent Losses Under GAAP Still Fails**

Plaintiff alleges that defendants violated a duty to disclose "contingent losses" relating to and arising out of the U.S. Attorney's and SEC's investigations, as allegedly required by GAAP. (SAC ¶153.) However, plaintiff's theory runs into the same issue as its other GAAP-based theory, which is that he fails to specifically identify any "affirmative statements made misleading" by the Company's alleged non-disclosure of contingent losses, instead relying on a "pure omissions" theory that cannot support a Rule 10b-5 claim. (*See* Section IV.C, *supra*.) And even if plaintiff had pointed to an affirmative statement, he again fails to allege sufficient facts to show that "FAT Brands was required to disclose a loss contingency associated with the SEC and DOJ investigations at the beginning of the Class Period" under GAAP. (*Id.*) Plaintiff's assertion that defendants could "reasonably estimate" the amount of any loss resulting from the Intercompany Loans "as soon as the DOJ and SEC had manifested an awareness of a possible claim against FAT Brands as part of its investigation" is not supported by any facts in the SAC. (*Id*. ¶172.) In fact, nowhere does the SAC provide any indication as to when the Company, as opposed to Wiederhorn, became an investigation target, let alone when any defendant became aware of that development. Plaintiff thus fails to allege that a loss arising from the investigations and the Intercompany Loans was "reasonably possible." *See* ASC 450-20-55-13 Absent such facts, plaintiff has failed to show that defendants were required to disclose a loss contingency under GAAP.

-16-

**E.**     **The SAC Still Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter**

A defendant acts with scienter only if he makes false or misleading statements either intentionally or with deliberate recklessness. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). A plaintiff must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). "To qualify as 'strong' within the intendment of . . . the PSLRA . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. To meet the PSLRA's high burden for pleading scienter, a complaint cannot rely on "mere motive and opportunity or recklessness, but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). Allegations the defendants "should have known" of the violations are insufficient. *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). Instead, plaintiffs must allege facts "linking specific reports and their contents to the executives." *See Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (mere access to reports, without discussions of the reports' contents, insufficient to establish a strong inference of scienter).

**1.**     **The Alleged Facts Still Fall Far Short of Giving Rise to a Strong Inference That Kuick Knew About the Unauthorized Loans, Much Less That Loan Proceeds Went To Wiederhorn**

With respect to the Company's alleged failure to disclose the unauthorized Intercompany Loans, plaintiff continues to fail to plead particularized facts giving rise

-17-

to a strong inference that Kuick (or Rosen) acted with scienter.[11]  The Court previously held that the AC fell "far short" of alleging a strong inference of scienter. (Order at 27.)  The new allegations in the SAC purporting to show Kuick's scienter with respect to related party transactions do not bridge the gap.

Plaintiff's scienter theory against Kuick rests upon the alleged GAAP violation, his SOX certification, and his "access" to information as CFO of the Company. (SAC ¶¶183-190.)

First, plaintiff does not allege that Kuick knew any disclosure constituted a GAAP violation at the time it was made.  Further, it is well established in this Circuit that "a failure to follow GAAP, without more, does not establish scienter."  *DSAM Global Value Fund v. Altris Software*, 288 F.3d 385, 390 (9th Cir. 2002) (internal quotation marks omitted).

Second, "Sarbanes-Oxley certifications [by the individual defendants] are not sufficient, without more, to raise a strong inference of scienter."  *Glazer*, 549 F.3d at 747-48.  The standard language required in such certifications "add[s] nothing substantial to the scienter calculus."  *Zucco*, 552 F.3d at 1003-04.  And as discussed above, plaintiff does not adequately plead any actual SOX violation.

Third, plaintiff's new allegations that in the course of overseeing the Company's response to the government investigation, Kuick and Rosen "had an opportunity to investigate" the allegations therein, "had access to" certain alleged cash reports prepared for Wiederhorn by FAT Brands' cash managers, and "had access to the [Special Review Committee's] findings" regarding Wiederhorn's alleged conduct (SAC ¶187) do not establish their "actual exposure" to any information.  Where a complaint "does not contain additional detailed allegations about the defendants'

---

[11] Nothing in the SAC changes the fact that Rosen, who allegedly served as the Company's co-CEO from May 1, 2023 to the present (SAC ¶19), is not alleged to have any liability with respect to the Company's alleged failure to disclose related party transactions in the 2021 Annual Report or 2022 Prospectus. (*Id.* ¶¶ 87, 101.)

-18-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

actual exposure to information, it will usually fall short" of the PSLRA standard. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). In such cases, the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware. *Id.*; *see also ESG Capital Partners, LP v. Stratos*, 2013 WL 12131355, at *5 (C.D. Cal. June 26, 2013) (conclusory allegations of knowledge are insufficient). With no allegations regarding Kuick's or Rosen's actual exposure to information rendering their alleged statements and omissions false or misleading, the claim fails.

Fourth, as the Court noted, plaintiff had "failed to point to any allegation in the Amended Complaint that suggests that Kuick and Rosen actually possessed these motives, or had any role in the disbanding of SRC or firing of the independent directors." (Order at 28.) The SAC similarly lacks such allegations.[12]

As a whole, the SAC's allegations do not support a *strong* (*i.e.*, cogent and compelling) inference that Kuick (or Rosen) knowingly or with deliberate recklessness intended to mislead investors by failing to disclose a scheme which they may not even have known about.

### 2. No Alleged Facts Give Rise to a Strong Inference That Any Defendant Knew That the Company Was a Target of U.S. Attorney's Investigation

Putting aside the facts that the statements regarding government investigations are not actionable and that the SAC does not allege any facts showing when the Company purportedly became a target of the U.S. Attorney's investigation, the SAC still does not contain any facts purporting to show the point at which — if ever — any

---

[12] There are no allegations that Kuick or Rosen stood to benefit in any way from Wiederhorn's alleged scheme, much less from deceiving investors. The SAC does not contain *any* allegations that Kuick or Rosen personally or financially benefited from the alleged inflation in the Company's stock price or otherwise bought or sold stock during the alleged class period. The Ninth Circuit has recognized that "a lack of stock sales can detract from a scienter finding." *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

-19-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

defendant actually learned, or even should have learned, that the Company had become a target.  This is fatal to plaintiff's ability to establish any defendant's scienter.

Instead, the SAC relies entirely upon a "should have known or were reckless in not knowing" theory to establish defendants' scienter with respect to the existence of government investigations.  (*Id.* ¶¶99, 107, 115, 118, 121.)  As the Ninth Circuit has made clear, "[d]eliberate recklessness is not '*mere* recklessness.'  Instead, it is 'an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant of so *obvious* that the actor must have been aware of it." *Prodanova*, 993 F.3d at 1106 (citation omitted) (emphasis added).

The SAC, like its predecessor, does not include any allegations identifying (1) what documents or materials relating to the transactions the government requested; (2) what documents defendants provided in response; or (3) what those documents supposedly showed.[13]  Without such alleged facts, the SAC raises no inference that the danger of misleading buyers or sellers was so obvious that *any* defendant *must* have been aware of it.

The SAC is even more barren as to Kuick's or Rosen's scienter regarding the Company's alleged status as a target of government investigations.  Their alleged scienter is based on "access" to certain documents and information but, critically, no allegations show that the materials to which they had access could have illuminated Kuick or Rosen (much less did illuminate them) regarding the Company's alleged and non-descript "role in funneling money from investors to Defendant Wiederhorn" that purportedly occurred before they joined the Company.  (SAC ¶¶99, 107, 115, 118, 121; *see also id.* ¶¶18, 19.)  As there are no facts showing that Kuick or Rosen

---

[13] Plaintiff concedes implicitly that he does not have any such necessary facts by alleging in the alternative that defendants in truth were *not* cooperating with the government's investigation.  (SAC ¶¶107, 115, 118, 121.)

-20-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

actually knew or even suspected that the Company had any such role, there can be no inference that they acted with scienter.

**F.      The SAC Fails to State a Controlling Person Liability Claim for Violation of Section 20(a)**

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), creates liability for "controlling persons." 15 U.S.C. § 78t(a). "To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (citation omitted). As demonstrated above, plaintiff fails to state a primary violation of Section 10(b) and Rule 10b-5. Accordingly, plaintiff also again fails to state a secondary controlling person liability claim under Section 20(a). *Kates*, 2025 U.S. Dist. LEXIS 203673, at *45; *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020).

Further, with respect to plaintiff's claim against Kuick and Rosen, the SAC contains nothing but barebones and generic allegations of control and "access" to information. (SAC ¶¶21, 187, 189). These allegations are insufficient to show actual control over the Company. *Purple Mt. Trust v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020).

## V.      CONCLUSION

The Court should grant the motion to dismiss the SAC, with prejudice. (Order at 29 ("While there may be a Second Amended Complaint, there will be no Third. Any future successful motion to dismiss will be granted without leave to amend.").)

-21-

Dated:  April 16, 2026          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____ /s/ John P. Stigi III _____
                    JOHN P. STIGI III
                    POLLY TOWILL
                    MADALYN A. MACARR
                 Attorneys for Moving Defendants
          ANDREW A. WIEDERHORN, KENNETH J.
            KUICK and ROBERT G. ROSEN

-22-

INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

## CERTIFICATION OF WORD COUNT

The undersigned, counsel of record for Andrew Wiederhorn, Kenneth Kuick and Robert Rosen, certifies that this brief contains 6,998 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  April 16, 2026          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____*/s/ John P. Stigi III*_____
JOHN P. STIGI III
POLLY TOWILL
MADALYN A. MACARR
Attorneys for Defendants
ANDREW A. WIEDERHORN, KENNETH J.
KUICK and ROBERT G. ROSEN

-23-