UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 24-4775-MWF(MAAx)** **Date: July 14, 2026**

Title: Mitchell Kates v. FAT Brands, Inc., et al.

---

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):** ORDER GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS [47]

Before the Court is Defendants' Andrew A. Wiederhorn, Kenneth J. Kuick, and Robert G. Rosen's Motion to Dismiss Second Amended Complaint for Violations of the Federal Securities Laws (the "Motion"), filed on April 16, 2026. (Docket No. 47). Plaintiff Mitchell Kates filed an Opposition on May 21, 2026. (Docket No. 51). Defendants filed a Reply on June 1, 2026. (Docket No. 53).

The Court has read and considered the papers on the Motion and held a hearing on **June 17, 2026.**

The Motion is **GRANTED** ***without leave to amend*** for the same reasons that the Amended Complaint was dismissed: (1) the challenged statements regarding the government investigations are opinion or forward-looking statements; (2) Plaintiff failed to adequately plead falsity as to the statements regarding related party transactions in the 2021 Annual Report and 2022 Prospectus; and (3) Plaintiff cannot state a § 20(a) claim against the individual Defendants without a predicate § 10(b) violation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 24-4775-MWF(MAAx)** **Date: July 14, 2026**

Title: Mitchell Kates v. FAT Brands, Inc., et al.

## I. BACKGROUND

The parties are by now quite familiar with the factual background of this action, which is largely set forth in the Court's Order Granting Defendants' Motion to Dismiss Amended Complaint (the "Prior Order"). (Docket No. 35). Therefore, the Court does not repeat all of those facts here but incorporates by reference the background from the Prior Order.

In the Prior Order, the Court made a few key rulings: (1) the challenged statements regarding government investigations are opinion or forward-looking statements; (2) Plaintiff failed to sufficiently allege falsity in the 2021 Annual Report and the Risk Disclosures in the 2022 Prospectus; and (3) because Plaintiff failed to allege claims under § 10(b), their claims for individual liability under § 20(a) also failed. (*See generally* Prior Order). The Court granted leave to file a Second Amended Complaint ("SAC"), but warned that any future successful motions to dismiss would be granted without leave to amend. (Prior Order at 29).

## II. REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice or deem incorporated by reference several documents attached to the Motion. (Docket No. 47-1 ("RJN")). Plaintiff opposes the RJN as to Exhibits E-G, I, and J, and the objections will be considered below. (Docket No. 51-1 ("Opp. to RJN")).

Defendants first request that the Court take judicial notice of several other court filings, two of which the Court took judicial notice of in the Prior Order: the complaint from *Harris,* the complaint filed by the SEC, and the dismissal of the SEC pleading. (RJN at 2). Because the Court has already taken notice of the first two filings, the Court **GRANTS** the RJN with respect to these documents, attached as Exhibits A and B to the RJN. Plaintiff only opposes the RJN with respect to Exhibit J, which is a filing that dismisses the SEC complaint against FAT Brands. (Opp. to RJN at 3). While it is well-established that courts may take judicial notice of outside court filings,

the Court does not rely on this dismissal in its analysis below and thus the RJN is **DENIED *as moot***.

Next, Defendants request the Court deem certain documents incorporated by reference into the SAC because they are referred to in the SAC and relied upon for Plaintiff's claims: the *Harris* complaint, the SEC complaint, the IRCA, and the 2021 Annual Report (the 2021 10-K filing). (RJN at 3). Plaintiff does not oppose Defendants' request as to these documents. The Court agrees that Plaintiff extensively relies on these documents in the SAC, and thus the RJN is **GRANTED** and Exhibits A-D are deemed incorporated by reference.

Finally, Defendants request judicial notice of seven of FAT Brands' filings with the SEC. The Court may properly take judicial notice of SEC filings, and thus the RJN is **GRANTED** as to Exhibits C-I. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (holding that judicial notice of SEC filings was proper). Plaintiff's principal opposition is that the Court may not consider the documents for the truth of the matter asserted therein, and the Court agrees, but that does not preclude judicially noticing the documents. (*See* Opp. at 1-3).

## III. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny. "To survive a motion to dismiss, a complaint must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Allegations of fraud must also meet a higher pleading standard. *See* Fed. R. Civ. P. 9(b) (requiring the pleading party to "state with particularity the circumstances constituting fraud or mistake"). It is well-established that "[a]t the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b–5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act []." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). "Thus, a plaintiff must plead falsity with particularity: a plaintiff must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1164 (9th Cir. 2009) (quoting 15 U.S.C. § 78u–4(b)(1)). The PSLRA further requires plaintiffs to plead scienter with particularity: "a plaintiff must 'state with particularity facts giving

rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).

## IV. DISCUSSION

### A. Opinion and Forward-Looking Statements

In the Prior Order, the Court held that the statements made by the Company that "we believe the Company is not currently a target of the U.S. Attorney's investigation" and that "[t]he Company intends to cooperate with the U.S. Attorney and the SEC regarding these matters" were non-actionable opinion and forward-looking statements, respectively. (*See* Prior Order at 15-19). Defendants renew their challenges in this Motion. (Motion at 8-10).

As to the former statement of opinion, the Supreme Court has held that opinion statements are actionable only when the "investor [] identif[ies] particular (and material) facts going to the basis for the issuer's opinion … whose omissions make the opinion statement at issue misleading to a reasonable person." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). In the Opposition, Plaintiff asserts that the statement about the Company not "currently" being a target of the investigation is an opinion that misleads by omission because "the real facts [were] otherwise but not provided." (Opp. at 12 (quoting *Omnicare,* 575 U.S. at 188)). Plaintiff again argues in a conclusory fashion that it "beggars belief" that the Company would be aware of an investigation into Wiederhorn and not believe the Company itself would be implicated. (Opp. at 12). Plaintiff further argues that at the least Wiederhorn would have known his actions exposed the Company to liability. (*Id.*).

But these arguments are the same as those that were rejected by the Court in the Prior Order. (*See* Prior Order at 15-17). Again, the challenged statement was made about the existence of an investigation into the Company, as opposed to Wiederhorn, and not the potential that the Company could face liability for Wiederhorn's actions. (*Id.*). And Plaintiff never alleges when the Company did in fact become a target of the

investigation, nor does Plaintiff respond to this argument from Defendants' Motion. (*See* Motion at 10, n.6).

As to the forward-looking statement about the intention to cooperate with the government, the Court again rejects Plaintiff's argument that the disbanding of the Special Review Committee ("SRC"), formed to internally investigate Wiederhorn's actions, is sufficient to render this statement actionable. (*See* Opp. at 51). A forward-looking statement will only lead to liability where it is made with "actual knowledge that it is false or misleading." *See In re Quality Sys's, Inc. Secs. Litig.,* 865 F.3d 1130, 1141 (9th Cir. 2017). Plaintiff argues that disbanding the SRC suffices to allege the intention not to cooperate with the government's investigation, making the statement "objectively false." (Opp. at 13). But the issue remains that disbanding the Company's own internal investigation body does not necessarily imply that the Company was not complying with the government's investigation or any requests made by the government. (*See* Opp. at 13; Prior Order at 19). Indeed, the Court notes that this argument is somewhat in tension with Plaintiff's assertion that Kuick and Rosen had to have known about Wiederhorn's fraud and the Company's role in it because the Company was actively compiling and turning over documents to the government. (*See* SAC ¶ 115). These latter allegations are thus inconsistent with the idea that the Company never intended to cooperate with the government, as they suggest the Company was complying with the investigation.

The Motion is therefore **GRANTED** as to the claims regarding these two statements made about the government investigation.

Because the Court grants the Motion as to these two disclosures, the Court does not reach the separate claim that the Company failed to disclose threatened government litigation as a loss contingency under GAAP, as this claim rests on the same theory that Defendants were aware of an investigation into the Company. (*See* SAC ¶¶ 153-54; Opp. at 14-15). But even if the Court were to reach this issue, the Court agrees with Defendants that such a claim would depend on Plaintiff identifying when the Company

became aware of a government investigation into the Company, which Plaintiff has failed to allege in the SAC. (*See* Motion at 16).

### B. Falsity of Disclosures

Defendants next argue that Plaintiff has not sufficiently alleged falsity with respect to statements made in SEC filings. The Court will address each in turn.

#### 1. Disclosures Regarding Intercompany Loans from FAT Brands to FCCG

Defendants first argue that Plaintiff still has not sufficiently alleged that the disclosures made regarding intercompany loans between FAT Brands and FCCG were either false or misleading sufficient to state a claim. (Motion at 10-14). In the Prior Order, the Court granted Defendants' Motion as to these claims because the Company ***did*** disclose numerous related party transactions in their SEC filings, and Plaintiff had not adequately demonstrated that those disclosed transactions did not encompass the allegedly undisclosed $9.6 million loan to FCCG in 2020 that forms the basis for Plaintiff's claims. (*See* Prior Order at 22-24).

In the Opposition, Plaintiff argues that its theory of liability is that there were $9.6 million in cash transfers from FAT Brands to FCCG, which Wiederhorn then directed into his own pockets. (Opp. at 9). Thus, the argument goes, while the SEC filings disclose certain transactions made between FAT Brands and FCCG pursuant to an Intercompany Revolving Credit Agreement ("IRCA"), Plaintiff alleges that there were separate transactions made outside of the IRCA between these entities. (*Id.*). Defendants argue in the Reply that the existence of transactions made outside of the IRCA is "pure speculation" and is undermined by the SAC's own allegations, and moreover that Plaintiff has still not adequately explained why the disclosures that ***were*** made of the balance receivables in intercompany loans did not encompass the $9.6 million figure cited by Plaintiff. (Reply at 5-10).

The Court largely agrees with Defendants' points, and further agrees that Plaintiff appears to be shifting the goal posts on his theories between his SAC and Opposition, leaving Defendants and the Court guessing as to what Plaintiff intends to pursue. Again, Plaintiff's argument in the Opposition seems to be that the $9.6 million in loans were not encompassed in the 2021 Annual Report, as they were made entirely separate from the IRCA, and thus they were never disclosed as they should have been. (Opp. at 9). Yet Defendants are correct that the theory appearing in the SAC is inconsistent with this argument in the Opposition. (*See* Reply at 6-8). The theory in the SAC rather appears to be that Wiederhorn directed FAT Brands to make loans to FCCG in contravention of the terms of the IRCA — seemingly by bypassing board approval — and it was ***that*** failure of complying with the IRCA's procedures that was omitted in the disclosures. (*See* SAC ¶¶ 129-134). Such a theory would thus not depend on the disclosures that were undisputedly made in the 2021 Annual Report about the IRCA balance receivable, (*see* SAC ¶ 88), but would depend on the failure to disclose that these loans were made without following IRCA.

But as Defendants argue, such a theory would fail as a § 10(b) claim because "whether a company violated its own internal policy is a matter of internal management" rather than a securities violation. *See Mendoza v. HF Foods Group Inc.*, CV 20-2929-ODW (JPRx), 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021) (citing cases holding that corporate mismanagement cannot form a basis for a § 10(b) claim). Plaintiff does not dispute this argument as a matter of law, and thus has seemingly conceded this issue. Rather, Plaintiff's Opposition again seems to shift the theory of liability to arguing that the "crux of the claim here" is that Wiederhorn "secretly funneled $9.6 million from FAT Brands to himself." (Opp. at 10). But as Defendants respond, Plaintiff has provided no authority that the Company had "a continuing obligation to further disclose what FCCG did with the Intercompany Loans after it received them." (Reply at 8-9).

At the hearing, Plaintiff clarified that the theory he intends to pursue is that in 2020, there were $9.6 million in undisclosed self-dealing payments from FAT Brands to Wiederhorn outside of the transactions concededly disclosed in the reports.

Defendants responded at the hearing that the allegations in the SAC are nonetheless insufficient to establish that this amount went undisclosed given the requirement that a plaintiff under the PSLRA "'state with particularity all facts' on which [his] belief is based." *See In re Silicon Graphics Inc. Secs. Litig.,* 183 F.3d 970, 983 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP,* 542 F.3d 776, 784 (9th Cir. 2008). The Ninth Circuit has explained that this standard requires a plaintiff to "provide, in great detail, all the relevant facts forming the basis of [his] belief. It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate [his] claim." *Id.* This deficiency is precisely the one plaguing Plaintiff's SAC here: as to the putative $9.6 million in payments made outside of the IRCA, Plaintiff has alleged only the fact that these payments were ***made,*** in conclusory terms, rather than the "corroborating details" forming the basis for this belief. *Id.*

At the hearing, Plaintiff reiterated his reliance on the DOJ Indictment to establish the facts underlying the alleged $9.6 million in unauthorized payments, and pointed the Court to paragraphs 100-102 of the Indictment to support this assertion. But even these paragraphs shed no more light on the facts that corroborate the assertion of undisclosed payments. As an initial matter, the paragraphs only recount approximately $6.2 million in payments between FAT and FCCG in 2020, rather than the $9.6 million figure alleged in the SAC, and only about $3 million of these were explicitly said in the Indictment to be over the limit approved by the Board, underscoring the tenuous connection even between the allegations in the Indictment and those in the SAC.

Next, these paragraphs again reiterate allegations that payments were made from FAT Brands to FCCG that went beyond the limit approved by the Board. And again, Plaintiff references no corroborating sources of these allegations in the SAC, nor did Plaintiff at the hearing point the Court to the sources of information underlying his belief that there were undisclosed transactions. Without more, these allegations are akin to the type of "information and belief" allegations that the Ninth Circuit disapproved of, at least without accompanying supporting facts that form the basis for

the plaintiff's belief, in *In re Silicon Graphics*. *See* 183 F.3d at 984; *see also id.* at 998, n.21 (Browning, J., concurring in part and dissenting in part) (explaining that where a plaintiff's allegations were pled on the basis of an investigation of her counsel rather than her own "direct personal knowledge," they were pled on information and belief and thus plaintiff must "state with particularity all facts on which that belief is formed").

And, of course, it bears noting that the DOJ — and the SEC, for that matter — are not subject to the heightened requirements of the PSLRA, and so do not need to reach the level of specificity required by private plaintiffs to bring a civil suit. Indeed, while recognizing the role of private actions as "an essential supplement" to criminal prosecutions and civil enforcement actions, the Supreme Court has recognized that the "[e]xacting pleading requirements" are precisely one such "control measure[]" implemented by Congress to ensure that only meritorious private actions can proceed. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007).

**2. Risk Disclosures**

Defendants next challenge the claim premised on the statement in the November 2022 Prospectus that FAT Brands was controlled by FCCG, and disclosed that FCCG's "interests may differ from those of our public shareholders." (SAC ¶ 102; Motion at 14). Plaintiff's theory of this claim is that such a statement was misleading because it was phrased as a conditional ("may") when the conflict of interest had already materialized as a result of Wiederhorn's self-dealing payments. (Opp. at 14).

Defendants respond that the Company did disclose the facts surrounding the intercompany loans between FAT Brands and FCCG, and thus these transactions cannot form the basis of a claim that those statements were misleading. (Reply at 10-11). The Court agrees. Put another way, there was no information that was withheld from potential investors because the transactions forming the putative conflict of interest had been disclosed to shareholders, and indeed, the Prospectus incorporated the 2021 Annual Report discussed above.

Therefore, the Motion is **GRANTED** as to the claims premised on the statements in the 2021 Annual Report and November 2022 Prospectus because Plaintiff has not adequately alleged why these statements were false.

### C. Item 404 and GAAP Disclosures; Section 402 Violation

As in the prior Amended Complaint, Plaintiff attempts to state a violation of Item 404 of Regulation S-K and GAAP premised on the failure to disclose the $9.6 million in transactions allegedly funneled from FAT Brands to Wiederhorn. Again, Plaintiff represents in the Opposition that such a theory relies upon the failure to disclose that Wiederhorn funneled money to himself that was loaned from FAT Brands to FCCG, which Plaintiff alleges violates the independent obligations to disclose related party transactions under Item 404 of Regulation S-K and GAAP. (Opp. at 11).

Plaintiff does not dispute that § 10(b) and Rule 10b-5(b) do not provide a claim in cases of pure omissions under securities regulations as the Court noted in the Prior Order, *see Macquarie Infrastructure Corp. v. Moab Partners, L. P.,* 601 U.S. 257*,* 264 (2024), but rather casts his theories as actionable half-truths. Plaintiff's theory here is that SEC filings stated that Defendants had disclosed all related party transactions as of December 29, 2019, but that they had failed to disclose that "Wiederhorn had funneled $9.6 million from FAT Brands to himself in 2020." (Opp. at 11). But again, because the Court rejected Plaintiff's theory above that the related party transactions between FAT Brands and FCCG were not sufficiently disclosed, there is no factual basis for the claim that Defendants stated an actionable half-truth by failing to disclose certain transactions between the two entities.

As to the newly added alleged violation of the Sarbanes-Oxley Act ("SOX") Section 402, Plaintiff argues that the SOX certifications attached to the 2021 Annual Report were rendered false because Defendants failed to disclose the putatively fraudulent self-dealing to Wiederhorn. (Opp. at 11). But as Defendants counter, courts have held that SOX certifications were not intended to form "per se violations" of securities laws, and courts typically require allegations explaining why declarants

knew the disclosures were false or misleading when made. *See Wanca v. Super Micro Computer, Inc.,* No. 5:15-CV-04049-EJD, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018) (dismissing similar claim where plaintiff did not plausibly allege why the certifications were false at the time they were made and collecting cases where courts require more than bare fact of certifications). Therefore, without pleading the falsity of the disclosures made in the SEC filings, the SOX certifications by themselves are insufficient to make out a claim.

The Motion is therefore **GRANTED** as to the claims made under Item 404 and GAAP, and as to the SOX certifications. Because the Court grants the Motion as to the falsity arguments discussed above, the Court does not reach the allegations of scienter challenged by Defendants.

**D. <u>Section 20(a) Liability</u>**

As in the Prior Order, because the individual Defendants' liability under § 20(a) depends on a predicate violation of § 10(b), the Motion is thus **GRANTED** as to the § 20(a) claims against the individual Defendants. (*See* Prior Order at 28).

## V. LEAVE TO AMEND

In considering whether to grant leave to amend, the Court must consider five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

The Court indicated in the Prior Order that while leave to amend would be granted as to a Second Amended Complaint, any future successful motions to dismiss would be granted without leave to amend. (Prior Order at 29). As discussed above, Plaintiff has added little to the SAC that would support the plausibility of his claims under the exacting standards of the PSLRA. While the Court gave Plaintiff the opportunity to conduct more investigation that may have supported his claims about the $9.6 million in putatively undisclosed payments, Plaintiff has largely failed to supplement his pleading with any material allegations. Given that Plaintiff has still failed to allege a § 10(b) claim despite the warning in the Prior Order that the SAC would be his final chance, the Court concludes that further amendment would be futile. The Motion is **GRANTED** ***without leave to amend***.

Because the Motion was only brought on behalf of the individual Defendants, and the case is stayed as to Defendant FAT Brands, judgment on the dismissed claims will be entered as part of a final judgment at the conclusion of this action.

IT IS SO ORDERED.